# EXHIBIT A

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

| | |
|---|---|
| **In the Matter of** **CERTAIN VIDEO PROCESSING DEVICES, COMPONENTS THEREOF, AND DIGITAL SMART TELEVISIONS CONTAINING THE SAME** | **Investigation No. 337-TA-____** |

COMPLAINT OF DIVX, LLC
UNDER SECTION 337 OF THE TARIFF ACT OF 1930, AS AMENDED

**COMPLAINANT**

**DivX, LLC**
4350 La Jolla Village Drive
Suite 950
San Diego, California 92122
United States
Tel: (858) 869-9756

COUNSEL FOR COMPLAINANT

Michael T. Renaud
James W. Wodarski
Adam S. Rizk
Marguerite McConihe
Matthew A. Karambelas
Jessica L. Perry
Nana Liu
MINTZ LEVIN COHN FERRIS
 GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Fax: (617) 542-2241
www.mintz.com

Aarti Shah
MINTZ LEVIN COHN FERRIS
 GLOVSKY AND POPEO PC
701 Pennsylvania Avenue NW
Suite 900
Washington, DC 20004

**PROPOSED RESPONDENTS**

**Samsung Electronics Co., Ltd.**
129, Samsung-Ro, Maetan-3dong, Yeongtong-Gu
Suwon-si, Gyeonggi-do, 16677
Rep. of Korea
Tel: +82-312001114

**Samsung Electronics America, Inc.**
85 Challenger Road
Ridgefield Park, New Jersey 07660
United States
Tel: (855) 382-3353

**Samsung Electronics HCMC CE Complex, Co., Ltd.**
Lot I-11, D2 Road
Saigon Hi-Tech Park
Tang Nhon Phu B Ward
District 9
Ho Chi Minh City, 700000
Vietnam
Tel: +84 24 3553 8637

**LG Electronics Inc.**
LG Twin Tower
128, Yeoui-daero
Yeongdeungpo-gu, Seoul, 07336
Rep. of Korea
Tel: +82-264564337

**LG Electronics USA, Inc.**

Tel: (202) 434-7300
Fax: (202) 434-7400

1000 Sylvan Avenue
Englewood Cliffs, New Jersey 07632
United States
Tel: (888) 865-3026

**TCL Corporation**
TCL Technology Building
No. 17 Huifeng 3rd Road
Zhongkai High-Tech Development District
Huizhou, Guangdong, 516001
P.R. China
Tel: +86-75533311666

**TCL Technology Group Corporation**
TCL Technology Building
22/F, No. 17 Huifeng 3rd Road
Zhongkai High-Tech Development District
Huizhou, Guangdong, 516001
P.R. China
Tel: +86-75233311668

**TCL Electronics Holdings Limited**
9 Floor, TCL Electronics Holdings Limited
Building
TCL International E City
#1001 Zhongshan Park Road
Nanshan District
Shenzhen, Guangdong, 518067
P.R. China
Tel: +852-24377300

**TTE Technology, Inc.**
1860 Compton Avenue
Corona, CA 92881
Tel: (951) 268-1491

**Shenzhen TCL New Technologies Co. Ltd.**
9 Floor, TCL Electronics Holdings Limited
Building
TCL International E City
#1001 Zhongshan Park Road
Nanshan District
Shenzhen, Guangdong, 518067
P.R. China
Tel: +86-75526857277

**TCL King Electrical Appliances (Huizhou) Co. Ltd.**
No. 78, 4th Huifeng Rd
Zhongkai New & High-Tech Industries
Development Zone
Huizhou, Guangdong, 516006
P.R. China
Tel: +86-7522601888

**TCL MOKA International Limited**
7/F Hong Kong Science Park
Building 22 E
22 Science Park East Avenue
Sha Tin, New Territories
Hong Kong (SAR)
Tel: +852-24377300

**TCL Smart Device (Vietnam) Co., Ltd**
No. 26 VSIP II-A, Street 32
Vietnam Singapore Industrial Park II-A
Tan Binh Commune
Bac Tan Uyen District
Binh Duong Province, 75000
Vietnam
Phone: +84-082743743898

**MediaTek Inc.**
No. 1, Dusing 1st Road
Hsinchu Science Park
Hsinchu City, 30078
Taiwan (R.O.C.)
Tel: +886-35670766

**MediaTek USA Inc.**
2840 Junction Avenue
San Jose, California 95134
United States
Tel: (408) 526-1899

**MStar Semiconductor, Inc.**
4F-1, No. 26, Tai-Yuan St.
ChuPei City
Hsinchu Hsien 302
Taiwan (R.O.C.)
Tel: +886-35526006

**Realtek Semiconductor Corp.**
No. 2, Innovation Road II
Hsinchu Science Park
Hsinchu 300
Taiwan (R.O.C.)
Tel: +886-35780211

**TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................................1

II.     COMPLAINANT ...................................................................................................5

III.    PROPOSED RESPONDENTS ...............................................................................6

        A.      Digital Smart TV Respondents ...................................................................6

                1.      Samsung Respondents .....................................................................6

                2.      LG Respondents ..............................................................................8

                3.      TCL Respondents............................................................................10

        B.      Supplier Respondents.................................................................................16

                1.      MediaTek Respondents..................................................................16

                2.      Realtek Respondent .......................................................................20

IV.     THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTION OF
        THE INVENTIONS...............................................................................................22

        A.      Overview of the Patented Technology.......................................................22

        B.      U.S. Patent No. 8,832,297.........................................................................25

        C.      U.S. Patent No. 10,212,486.......................................................................26

        D.      U.S. Patent No. 10,412,141.......................................................................28

        E.      U.S. Patent No. 10,484,749.......................................................................30

        F.      Ownership, Licenses, and Foreign Counterparts of the Asserted
                Patents .......................................................................................................32

V.      UNFAIR ACTS OF PROPOSED RESPONDENTS – INFRINGEMENT AND
        IMPORTATION ...................................................................................................35

        A.      Direct Infringement....................................................................................35

                1.      U.S. Patent No. 8,832,297.............................................................35

                2.      U.S. Patent No. 10,212,486...........................................................35

                3.      U.S. Patent No. 10,412,141...........................................................36

                4.      U.S. Patent No. 10,484,749...........................................................36

        B.      Indirect Infringement .................................................................................37

                1.      Samsung .........................................................................................37

                2.      LG ..................................................................................................38

                3.      TCL ................................................................................................40

i

4.    MediaTek ................................................................................42

5.    Realtek ....................................................................................44

C.    Specific Instances of Importation and Sale................................47

1.    Samsung ..................................................................................47

2.    LG ..........................................................................................48

3.    TCL ........................................................................................49

4.    MediaTek ................................................................................50

5.    Realtek ....................................................................................51

VI.    HARMONIZED TARIFF SCHEDULE ITEM NUMBERS ................................52

VII.    THE DOMESTIC INDUSTRY ...........................................................................53

A.    The Economic Prong of the Domestic Industry Requirement
Is Satisfied ..............................................................................................54

B.    The Technical Prong of the Domestic Industry Requirement
Is Satisfied ..............................................................................................55

1.    Practice of the '297 Patent .....................................................55

2.    Practice of the '486 Patent .....................................................55

3.    Practice of the '141 Patent .....................................................55

4.    Practice of the '749 Patent .....................................................56

VIII.    RELATED LITIGATION ....................................................................................56

IX.    RELIEF REQUESTED ........................................................................................56

## EXHIBIT LIST

1.      Certified Copy of U.S. Patent No. 8,832,297

2.      Certified Copy of U.S. Patent No. 10,212,486

3.      Certified Copy of U.S. Patent No. 10,412,141

4.      Certified Copy of U.S. Patent No. 10,484,749

5.      Samsung Electronics Co., Ltd. – Bloomberg Company Profile

6.      Samsung's Website

7.      Samsung Electronics America Inc. – Bloomberg Company Profile

8.      Business Korea, Samsung Electronics HCMC Complex, Co., Ltd.

9.      Panjiva.com, Samsung HCMC Complex, Co., Ltd.

10.     LG's Website

11.     LG Electronics Inc. – Bloomberg Company Profile

12.     LG Electronics USA Inc. – Bloomberg Company Profile

13.     TCL Corporation's Website

14.     TCL Technology Group Corp – Bloomberg Company Profile

15.     TCL Technology Group Corp Profile _ Reuters

16.     TCL Electronics Holdings Ltd. – Bloomberg Company Profile

17.     TTE Technology Inc. – Bloomberg Company Profile

18.     Shenzhen TCL New Technology – Crunchbase Company Profile

19.     TCL King Electrical Appliances Huizhou Co. Ltd. – Bloomberg Company Profile

20.     https-panjiva.com-Tcl-Moka-International-Ltd-26640824

21.     https://panjiva.com/Tcl-Smart-Device-Vietnam-Co/71214654

22.     https://www.tcl.com/au/en/blogs/constructions-starts-on-new-tcl-integrated-
        manufacturing-base-in-vietnam.html

23.     About Mediatek

24.     MediaTek Website

25.     MStar Semiconductor Website

26.     MTEKUSA - Senior Technical Manager at MediaTek USA Inc

27.     MediaTek USA Inc. – Bloomberg Company Profile

28.     Realtek Website

29.     Certified Copy of Assignment Record at Reel-Frame No. 027896/0557

30.     Certified Copy of Assignment Record at Reel-Frame No. 031713-0032

31.     Certified Copy of Assignment Record at Reel-Frame No. 045310/0020

32.     Certified Copy of Assignment Record at Reel-Frame No. 045498-0560

33.     Certified Copy of Assignment Record at Reel-Frame No. 050407-0104

34.     Certified Copy of Assignment Record at Reel-Frame No. 043311/0887

35.     Certified Copy of Assignment Record at Reel-Frame No. 043311/0931

36.     Certified Copy of Assignment Record at Reel-Frame No. 050096/0715

37.     Certified Copy of Assignment Record at Reel-Frame No. 048545/0953

38.     Certified Copy of Assignment Record at Reel-Frame No. 048546/0126

39.     Certified Copy of Assignment Record at Reel-Frame No. 048546/0180

40.     Certified Copy of Assignment Record at Reel-Frame No. 048546/0284

41.     Certified Copy of Assignment Record at Reel-Frame No. 048546/0314

42.     Certified Copy of Assignment Record at Reel-Frame No. 048545/0506

43.     Certified Copy of Assignment Record at Reel-Frame No. 048546/0065

44.     Certified Copy of Assignment Record at Reel-Frame No. 048546/0161

45.     Certified Copy of Assignment Record at Reel-Frame No. 048546/0310

46.     CONFIDENTIAL – Purchase & Sale Agreement

47.     CONFIDENTIAL – List of Entities

48.     Claim Chart comparing claim 1 of the '297 Patent to the Representative Articles: [Samsung]

49.     Claim Chart comparing claim 1 of the '297 Patent to the Representative Articles: [LG]

50.     Claim Chart comparing claim 1 of the '297 Patent to the Representative Articles: [Realtek]

51.     Claim Chart comparing claim 1 of the '297 Patent to the Representative Articles: [TCL]

52.     Claim Chart comparing claim 1 of the '297 Patent to the Representative Articles: [MediaTek]

53.     Claim Chart comparing claim 1 of the '486 Patent to the Representative Articles: [Samsung]

54.     Claim Chart comparing claim 1 of the '486 Patent to the Representative Articles: [LG]

55.     Claim Chart comparing claim 1 of the '486 Patent to the Representative Articles: [Realtek]

56.     Claim Chart comparing claim 1 of the '486 Patent to the Representative Articles: [TCL]

57.     Claim Chart comparing claim 1 of the '486 Patent to the Representative Articles: [MediaTek]

58.     Claim Chart comparing claim 1 of the '141 Patent to the Representative Articles: [Samsung]

59.     Claim Chart comparing claim 1 of the '141 Patent to the Representative Articles: [LG]

60.     Claim Chart comparing claim 1 of the '141 Patent to the Representative Articles: [Realtek]

61.     Claim Chart comparing claim 1 of the '141 Patent to the Representative Articles: [TCL]

62.     Claim Chart comparing claim 1 of the '141 Patent to the Representative Articles: [Mediatek]

63.     Claim Chart comparing claim 1 of the '749 Patent to the Representative Articles: [Samsung]

64.     Claim Chart comparing claim 1 of the '749 Patent to the Representative Articles: [LG TVs]

65.    Claim Chart comparing claim 1 of the '749 Patent to the Representative Articles: [Realtek]

66.    Claim Chart comparing claim 1 of the '749 Patent to the Representative Articles: [TCL]

67.    Claim Chart comparing claim 1 of the '749 Patent to the Representative Articles: [MediaTek]

68.    2020-09-08 – Notice Letter from M. Renaud to Samsung regarding Patent Infringement

69.    2020-09-08 – Notice Letter from M. Renaud to LG regarding Patent Infringement

70.    CONFIDENTIAL – Letter to LG dated November 13, 2014

71.    2020-09-08 – Notice Letter from M. Renaud to TCL regarding Patent Infringement

72.    TV Technology Article – MediaTek Streaming Demo CES 2020

73.    2020-09-08 – Notice Letter from M. Renaud to MediaTek regarding Patent Infringement

74.    MediaTek Press Release – Video Streaming

75.    Realtek Press Release – CES 2020

76.    2020-09-08 – Notice Letter from M. Renaud to Realtek regarding Patent Infringement

77.    Realtek Annual Report (Apr. 2020)

78.    Purchase Receipt and Photographs of Samsung 65" Class Q90R QLED Smart 4K QLED TV

79.    Purchase Receipt and Photos of LG 43 Inch Class 4K HDR Smart LED TV

80.    Purchase Receipt and Photographs of TCL 43" CLASS 4-SERIES 4K UHD HDR ROKU Smart TV

81.    MediaTek Annual Report (Apr. 2020)

82.    Nikkei Asian Review Article

83.    CONFIDENTIAL – Element License Agreement

84.    Element Website – Our Story

85.    CONFIDENTIAL – Declaration of Confidential Declarant

86.    Visual representations of representative Protected Articles

87.    Domestic Industry Claim Chart for '297 Patent

88.    Domestic Industry Claim Chart for '486 Patent

89.    Domestic Industry Claim Chart for '141 Patent

90.    Domestic Industry Claim Chart for '749 Patent

**<u>APPENDICES</u>**

A.    Certified Prosecution History of U.S. Patent No. 8,832,297

B.    Technical references cited in the prosecution history for U.S. Patent No. 8,832,297

C.    Certified Prosecution History of U.S. Patent No. 10,212,486

D.    Technical references cited in the prosecution history for U.S. Patent No. 10,212,486

E.    Certified Prosecution History of U.S. Patent No. 10,412,141

F.    Technical references cited in the prosecution history for U.S. Patent No. 10,412,141

G.    Certified Prosecution History of U.S. Patent No. 10,484,749

H.    Technical references cited in the prosecution history for U.S. Patent No. 10,484,749

# I.     INTRODUCTION

1.1.    DivX, LLC ("DivX or "Complainant") requests that the U.S. International Trade Commission institute an investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337 ("Section 337"), to remedy the unlawful importation, sale for importation, and/or sale after importation by the proposed Respondents of certain video processing devices, components thereof, and digital smart televisions containing the same. Pursuant to Commission Rule 210.12(a)(9)(i), by importing, selling for importation and/or selling after importation these products, the proposed Respondents infringe, directly or indirectly, at least the following claims of U.S. Patent Nos. 8,832,297 (the "'297 Patent"); 10,212,486 (the "'486 Patent"); 10,412,141 (the "'141 Patent"); and 10,484,749 (the "'749 Patent") (collectively "the Asserted Patents").

| Respondents | Patent | Asserted Claims[1] |
|---|---|---|
| Samsung, LG, TCL, MediaTek, Realtek | 8,832,297 | **1**, 2-11, 14-17; **18**, 19-29, 32-39 |
| Samsung, LG, TCL, MediaTek, Realtek | 10,212,486 | **1**, 2-5, 7-10, 13, 14; **15**, 16-19, 21-25 |
| Samsung, LG, TCL, MediaTek, Realtek | 10,412,141 | **1**, 2, 3, 5-11; **20**, 21, 22, 26-30 |
| Samsung, LG, TCL, MediaTek, Realtek | 10,484,749 | **1**, 2-9; **10**, 11-18 |

1.2.    Pursuant to Commission Rule 210.12(a)(9)(i), certified copies of the '297 Patent, the '486 Patent, the '141 Patent, and the '749 Patent are included as Exhibit 1, Exhibit 2, Exhibit 3, and Exhibit 4, respectively. Pursuant to Commission Rule 210.12(a)(9)(ii), and 210.12(a)(7), DivX owns all rights, title, and interest in and to each of the Asserted Patents.

1.3.    Pursuant to Commission Rules 210.10(b)(1) and 210.12(a)(12), the Accused Products are video processing devices, consisting of printed circuit board assemblies for use in

---

[1] Independent claims in the chart are identified in **bold**.

video processing in digital smart televisions and associated software and/or firmware, components thereof, consisting of integrated circuits containing video processors and associated software and/or firmware, and digital smart televisions containing the same, consisting of digital smart televisions containing such video processing devices and/or components. The Accused Products are imported into the United States, sold for importation into the United States, and/or sold in the United States after importation, by or on behalf of Respondents.

1.4.    Pursuant to Commission Rule 210.12(a)(7), DivX is a U.S. company founded in 2000. Since its inception, DivX has set the bar for high-quality digital video. DivX is one of the first companies to enable successful delivery of high-quality digital video over the internet. For nearly 20 years, DivX has been developing innovative technology to deliver quality digital entertainment experiences for consumers—making internet video high-quality, secure, easy, and enjoyable for consumers to watch on any device.

1.5.    Continuing to this day, DivX® technology helps people around the world enjoy digital media on their own terms. Consumers expect to play high-quality video from the internet on any device at the touch of a button. However, when DivX's engineers accomplished this feat over a decade ago, they had to overcome significant technical obstacles to do so. Through those efforts, DivX engineers invented foundational technologies that made high-quality internet video possible long before smart televisions existed.

1.6.    For example, DivX's fundamental advances in video compression technology have made it possible to transmit large video files efficiently over the internet. DivX also created technology that allows those video files to be played on a wide variety of consumer electronics devices, and has licensed that technology to consumer electronics manufacturers. DivX further developed encryption technology (*e.g.*, Digital Rights Management) for video files, to protect

valuable video content so that content producers would be comfortable making their original works available on the internet. DivX's fundamental advances include innovations in multiphase adaptive bitrate streaming, playback of encrypted bitstreams, cryptographic material transport of bitstreams, and enabling seeking functionality during streaming playback. And DivX launched Stage6—one of the first platforms for streaming high-quality, user-created and professional video over the internet. All of this work by DivX paved the way (and provided a roadmap) for today's proliferation of internet video streaming on consumer devices.

1.7.    DivX has two distinct areas of business: (i) distributing consumer software (*e.g.*, the DivX Player) implementing its technologies, and (ii) licensing its software and/or patents to consumer electronics manufacturers and supply chain manufacturers. As a result of the many DivX innovations relating to internet video and streaming media, consumer electronics companies, including Element TV Company, LP ("Element"), have licensed DivX's technologies and integrated them into more than one billion, six hundred million devices worldwide. Consumers have downloaded DivX® consumer software more than one billion times, and created billions of files using DivX's proprietary ".divx" file format. DivX's investments in research and development for internet video led to technical innovations that shaped internet video as the world knows it today. DivX patented these inventions and today has a portfolio of over 400 issued patents and patent applications, and continues to invest in research and development to innovate in the area of video technology.

1.8.    Pursuant to Commission Rule 210.12(a)(6), a domestic industry as required by 19 U.S.C. § 1337(a)(2) and (3) exists in the U.S. relating to Complainant's licensee's investments in articles protected by the Asserted Patents and exploitation of the Asserted Patents. In the alternative, such a domestic industry is in the process of being established, as Complainant's

licensee is actively engaged in the steps leading to the exploitation of Complainant's intellectual property rights, and there is a significant likelihood that an industry will be established in the future.

1.9.    The proposed Respondents include Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Electronics HCMC CE Complex, Co., Ltd. (collectively, "Samsung"); LG Electronics Inc. and LG Electronics USA, Inc. (collectively, "LG"); TCL Corporation, TCL Technology Group Corporation, TCL Electronics Holdings Limited, TTE Technology, Inc., Shenzhen TCL New Technologies Co. Ltd., TCL King Electrical Appliances (Huizhou) Co. Ltd., TCL MOKA International Limited, and TCL Smart Device (Vietnam) Co., Ltd (collectively, "TCL"); MediaTek Inc., MediaTek USA Inc., and MStar Semiconductor, Inc. (collectively, "MediaTek"); and Realtek Semiconductor Corp. ("Realtek") (all proposed Respondents collectively, "Respondents").

1.10.    On information and belief, each of the Respondents currently designs, uses, tests, manufactures, imports into the U.S., sells for importation into the U.S., sells in the U.S. after importation, and/or contributes to, or instructs others regarding the use, manufacture, sale, and/or importation of, certain video processing devices, components thereof, and digital smart televisions containing the same (collectively, the "Accused Products") that infringe, literally or under the doctrine of equivalents, the Asserted Patents. Thus, on information and belief, each of the Respondents directly infringes, contributorily infringes, and/or induces the infringement of, the Asserted Patents.

1.11.    Pursuant to Commission Rule 210.12(a)(11), DivX seeks, as relief, a limited exclusion order barring from entry into the U.S. video processing devices, components thereof, and digital smart televisions containing the same that infringe and are manufactured by or on behalf

of, or imported by or on behalf of, the proposed Respondents and their subsidiaries, predecessors, affiliates, agents, successors, and assigns.

1.12.   DivX also seeks cease-and-desist orders prohibiting the Respondents and their subsidiaries, predecessors, affiliates, agents, successors, and assigns from selling for importation, importing, selling after importation, distributing, offering for sale, promoting, marketing, advertising, testing, demonstrating, warehousing inventory for distribution, soliciting sales, programming, repairing, maintaining, using, transferring, and/or other commercial activity relating to video processing devices, components thereof, and digital smart televisions containing the same that infringe.

1.13.   Further, DivX requests that the Commission impose a bond upon Respondents' importation of Accused Products during the 60-day Presidential review period pursuant to 19 U.S.C. § 1337(j) to prevent further injury to the domestic industry relating to each of the Asserted Patents.

## II.    COMPLAINANT

2.1.   Complainant DivX, LLC is a Delaware corporation, and has a principal place of business at 4350 La Jolla Village Drive, Suite 950, San Diego, California, 92122. As explained above, for nearly 20 years, DivX has been developing innovative technology to enable quality digital entertainment experiences for consumers—making internet video high-quality, secure, easy, and enjoyable for consumers to watch on any device. DivX's innovations relating to internet video and streaming media have been adopted by consumer electronics companies which have integrated them into more than one billion, six hundred million devices worldwide, and consumers have downloaded DivX® consumer software more than one billion times.

### III.   PROPOSED RESPONDENTS

#### A.   Digital Smart TV Respondents

##### 1.   Samsung Respondents

3.2.    Pursuant to Commission Rule 210.12(a)(4), proposed Respondent **Samsung Electronics Co., Ltd.** is a South Korean corporation with a principal place of business at 129 Samsung-Ro, Maetan-3dong, Yeongtong-Gu, Suwon, Gyeonggi, Korea 16677, and has as its wholly owned U.S. subsidiary proposed Respondents **Samsung Electronics America, Inc.**, a New York corporation with a principal place of business at 85 Challenger Rd, Ridgefield Park, New Jersey, 07660-2112, United States, and **Samsung Electronics HCMC CE Complex, Co., Ltd.**, a Vietnam corporation headquartered in Lot I-11, D2 Road, Saigon Hi-Tech Park, Tang Nhon Phu B Ward, District 9, Ho Chi Minh City 700000, Vietnam (collectively, "Samsung").

##### (a)   Samsung Electronics Co., Ltd.

3.3.    Upon information and belief, Samsung Electronics Co., Ltd. is engaged in the manufacturing, research, development, testing, marketing, distribution, shipping, importation, sale for importation, and/or sale within the United States after importation of, and/or contributing to (or instructing others regarding) the use, manufacture, sale, and/or importation of, digital smart TVs (and components thereof) that are manufactured outside of the United States. According to Bloomberg's Company Profile, "Samsung Electronics Co., Ltd. manufactures a wide range of consumer and industrial electronic equipment and products such as semiconductors, personal computers, peripherals, monitors, televisions, and home appliances including air conditioners and microwave ovens." Exhibit 5. Also, according to Samsung's website, "exceptional technology and innovative design have strengthened [its] unrivaled leadership in flat-panel TVs." Exhibit 6 (https://www.samsung.com/us/aboutsamsung/business-area/consumer-electronics/, accessed September 3, 2020).

3.4.    Upon information and belief, Samsung Electronics Co., Ltd. is engaged in the instruction or encouragement of others, including customers in the United States, to use, make, sell, and/or import such digital smart TVs and components thereof in a directly infringing manner.

**(b)    Samsung Electronics America, Inc.**

3.5.    Upon information and belief, Samsung Electronics America, Inc. is engaged in the manufacturing, research, development, testing, marketing, distribution, shipping, importation, sale for importation, and/or sale within the United States after importation of, and/or contributing to (or instructing others regarding) the use, manufacture, sale, and/or importation of, digital smart TVs (and components thereof) that are manufactured outside of the United States. According to Bloomberg's Company Profile, "Samsung Electronics America, Inc. manufactures electronic products," including "televisions, digital cameras, cell phones, storage devices, home appliances, security systems, smartwatches, and computer products." Exhibit 7.

3.6.    Upon information and belief, Samsung Electronics America, Inc. is engaged in the instruction or encouragement of others, including customers in the United States, to use, make, sell, and/or import such digital smart TVs and components thereof in a directly infringing manner.

**(c)    Samsung Electronics HCMC CE Complex, Co., Ltd.**

3.7.    Upon information and belief, Samsung HCMC CE Complex, Co., Ltd. is engaged in the manufacturing, research, development, testing, marketing, distribution, shipping, importation, sale for importation, and/or sale within the United States after importation of, and/or contributing to (or instructing others regarding) the use, manufacture, sale, and/or importation of, digital smart TVs (and components thereof) that are manufactured outside of the United States. According to Business Korea, Samsung Electronics HCMC Complex, Co., Ltd. "is in charge of televisions   and   home   appliances[.]"   Exhibit   8   (http://www.businesskorea.co.kr/news/

articleView.html?idxno=30610, accessed September 3, 2020). Further, according to Panjiva, Samsung HCMC Complex, Co., Ltd. made at least three imports of Samsung televisions into the United States on June 7, 2020 to Samsung Electronics America, Inc. Exhibit 9 (https://panjiva.com/Samsung-Electronics-Hcmc-Ce-Complex-Co-Ltd/61275345, accessed September 3, 2020).

3.8.    Upon information and belief, Samsung Electronics HCMC Complex, Co., Ltd. is engaged in the instruction or encouragement of others, including customers in the United States, to use, make, sell, and/or import such digital smart TVs and components thereof in a directly infringing manner.

## 2.    LG Respondents

3.9.    Pursuant to Commission Rule 210.12(a)(4), proposed Respondent **LG Electronics Inc.** is a South Korean corporation with a principal place of business at LG Twin Tower 128, Yeoui-daero, Yeongdeungpo-gu, Seoul, Korea 07336, and has as its wholly owned U.S. subsidiary proposed Respondent **LG Electronics USA, Inc.**, a Delaware corporation with a principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, NJ 07632, United States (collectively, "LG").

### (a)    LG Electronics Inc.

3.10.    Upon information and belief, LG Electronics Inc. is engaged in the manufacturing, research, development, testing, marketing, distribution, shipping, importation, sale for importation, and/or sale within the United States after importation of, and/or contributing to (or instructing others regarding) the use, manufacture, sale, and/or importation of, digital smart TVs (and components thereof) that are manufactured outside of the United States. According to LG's website, "LG Electronics, Inc. (KSE: 06657.KS) is a global leader and technology innovator in consumer electronics, home appliances and mobile communications." Exhibit 10. According to

Bloomberg's Company Profile, "LG Electronics Inc. manufactures and markets digital display equipment and home appliances" and "produces and markets flat panel televisions, A/V products, washing machines, air conditioners and refrigerators as well as telecommunications equipment such as smart phones and tablets." Exhibit 11.

3.11.   Upon information and belief, LG Electronics Inc. is engaged in the instruction or encouragement of others, including customers in the United States, to use, make, sell, and/or import such digital smart TVs and components thereof in a directly infringing manner.

### (b)    LG Electronics USA, Inc.

3.12.   Upon information and belief, LG Electronics USA, Inc. is engaged in the manufacturing, research, development, testing, marketing, distribution, shipping, importation, sale for importation, and/or sale within the United States after importation of, and/or contributing to (or instructing others regarding) the use, manufacture, sale, and/or importation of, digital smart TVs (and components thereof) that are manufactured outside of the United States. According to LG's website, "LG Electronics USA, Inc., (LGEUS) is the North American subsidiary of LG Electronics, Inc., a $48.5-billion global force in consumer electronics, home appliances and mobile communications." Exhibit 10. According to Bloomberg's Company Profile, "LG Electronics of USA manufactures and distributes consumer electronic products," and "offers light emission diode televisions, mobile phones, monitors, refrigerators, washing machines, dryers, air conditioners, and projectors." Exhibit 12.

3.13.   Upon information and belief, LG Electronics USA, Inc. is engaged in the instruction or encouragement of others, including customers in the United States, to use, make, sell, and/or import such digital smart TVs and components thereof in a directly infringing manner.

### 3.    TCL Respondents

3.14.   Pursuant to Commission Rule 210.12(a)(4), proposed Respondent **TCL Corporation**, also known as **TCL Technology Group Corporation**, is a Chinese corporation located at No. 26, the Third Road, Zhongkai Avenue, Huizhou City, Guangdong, P.R. China 516006, and has a place of business at 22/F, TCL Technology Building, No. 17, Huifeng 3rd Road, Zhongkai High-Tech Development District, Huizhou, Guangdong, 516001 P.R. China, and is the parent of: (1) **TCL Electronics Holdings Limited**, a Cayman Islands corporation with a principal place of business at 9 Floor, TCL Electronics Holdings Limited Building, TCL International E City, #1001 Zhongshan Park Road, Nanshan District, Shenzhen, Guangdong, 518067 P.R. China, and another location at 7F TCL Bldg 22 Sci Park E Avenue, 22E Hong Kong Science Park, New Territories Hong Kong (SAR); (2) **TTE Technology, Inc.**, a Delaware corporation with a principal place of business at 1860 Compton Avenue, Corona, CA 92881; (3) **Shenzhen TCL New Technologies Co. Ltd.**, a Chinese corporation with a principal place of business at 9 Floor, TCL Electronics Holdings Limited Building, TCL International E City, #1001 Zhongshan Park Road, Nanshan District, Shenzhen, Guangdong, 518067 P.R. China; (4) **TCL King Electrical Appliances (Huizhou) Co. Ltd.**, a Chinese corporation with a principal place of business located at No. 78, Huifeng 4 Rd, Zhongkai New & High-Tech Industries Development Zone, Huizhou, Guangdong, 516006 P.R. China; (5) **TCL MOKA International Limited**, a Hong Kong corporation with a principal place of business at 7/F Hong Kong Science Park, Building 22 E, 22 Science Park East Avenue, Sha Tin, New Territories, Hong Kong (SAR) or 13/F, TCL Tower, 8 Tai Chung Road, Tsuen Wan, New Territories, Hong Kong (SAR); and (6) **TCL Smart Device (Vietnam) Co., Ltd**, a Vietnam corporation with a principal place of business at No. 26 VSIP II-A, Street 32, Vietnam Singapore Industrial Park II-A, Tan Binh Commune, Bac Tan Uyen District, Binh Duong Province, 75000 Vietnam, (collectively, "TCL").

10

### (a)    TCL Corporation

3.15.    Upon information and belief, TCL Corporation is engaged in the manufacturing, research, development, testing, marketing, distribution, shipping, importation, sale for importation, and/or sale within the United States after importation of, and/or contributing to (or instructing others regarding) the use, manufacture, sale, and/or importation of, digital smart TVs (and components thereof) that are manufactured outside of the United States. According to TCL's website, "TCL is a registered trademark of TCL Corporation" and "[w]ith a lineup of award-winning televisions, audio products, mobile devices, and appliances, TCL takes pride in delivering meaningful experiences by combining thoughtful design and the latest technology." Exhibit 13 (https://www.tcl.com/us/en/press-releases/tcl-unveils-feature-packed-and-high-performance-premium-2020-tv-.html, accessed September 6, 2020).

3.16.    Upon information and belief, TCL Corporation is engaged in the instruction or encouragement of others, including customers in the United States, to use, make, sell, and/or import such digital smart TVs and components thereof in a directly infringing manner.

### (b)    TCL Technology Group Corporation

3.17.    Upon information and belief, TCL Technology Group Corporation is engaged in the manufacturing, research, development, testing, marketing, distribution, shipping, importation, sale for importation, and/or sale within the United States after importation of, and/or contributing to (or instructing others regarding) the use, manufacture, sale, and/or importation of, digital smart TVs (and components thereof) that are manufactured outside of the United States. According to Bloomberg's Company Profile, "TCL Technology Group Corporation manufactures electronic products, telecommunication products, and home appliances," as well as "produces and sells televisions, mobile phones, personal computers, air-conditioners, washing machines, refrigerators,

and other related products. TCL Technology Group markets its products worldwide." Exhibit 14. According to Reuters, TCL Technology Group Corporation was also "formerly TCL Corporation." Exhibit 15 (https://www.reuters.com/companies/000100.SZ, accessed September 2, 2020).

3.18.   Upon information and belief, TCL Technology Group Corporation is engaged in the instruction or encouragement of others, including customers in the United States, to use, make, sell, and/or import such digital smart TVs and components thereof in a directly infringing manner.

### (c)   TCL Electronics Holdings Limited

3.19.   Upon information and belief, TCL Electronics Holdings Limited is engaged in the manufacturing, research, development, testing, marketing, distribution, shipping, importation, sale for importation, and/or sale within the United States after importation of, and/or contributing to (or instructing others regarding) the use, manufacture, sale, and/or importation of, digital smart TVs (and components thereof) that are manufactured outside of the United States. According to Bloomberg's Company Profile, "TCL Electronics Holdings Limited manufactures televisions and display products" in addition to "produc[ing] and sell[ing] television sets, audio visual products, company monitors, and other products." Exhibit 16 (https://www.bloomberg.com/profile/company/1070:HK, accessed September 2, 2020).

3.20.   Upon information and belief, TCL Electronics Holdings Limited is engaged in the instruction or encouragement of others, including customers in the United States, to use, make, sell, and/or import such digital smart TVs and components thereof in a directly infringing manner.

### (d)   TTE Technology, Inc.

3.21.   Upon information and belief, TTE Technology, Inc. is engaged in the manufacturing, research, development, testing, marketing, distribution, shipping, importation, sale for importation, and/or sale within the United States after importation of, and/or contributing to

(or instructing others regarding) the use, manufacture, sale, and/or importation of, digital smart TVs (and components thereof) that are manufactured outside of the United States. According to Bloomberg's Company Profile, "TTE Technology Inc. designs and markets televisions" and "operates a network of research centers, manufacturing facilities, and sales offices that distribute its products. TTE Technology serves customers worldwide." Exhibit 17 (https://www.bloomberg.com/profile/company/0130113D:US, accessed September 2, 2020).

3.22.   Upon information and belief, TTE Technology, Inc. is engaged in the importation into the United States and sale in the United States of TCL branded Roku platform smart televisions, such as the TCL 55R617 - 55-Inch 4K Ultra HD Roku Smart LED TV.

3.23.   Upon information and belief, TTE Technology, Inc. is engaged in the instruction or encouragement of others, including customers in the United States, to use, make, sell, and/or import such digital smart TVs and components thereof in a directly infringing manner.

**(e)     Shenzhen TCL New Technologies Co. Ltd.**

3.24.   Upon information and belief, Shenzhen TCL New Technologies Co. Ltd. is engaged in the manufacturing, research, development, testing, marketing, distribution, shipping, importation, sale for importation, and/or sale within the United States after importation of, and/or contributing to (or instructing others regarding) the use, manufacture, sale, and/or importation of, digital smart TVs (and components thereof) that are manufactured outside of the United States. According to Crunchbase's Company Profile, Shenzhen TCL New Technologies Co. Ltd. is described as "manufacturing…radio and television broadcasting and communications equipment." Exhibit 18 (https://www.crunchbase.com/organization/shenzhen-tcl-new-technology, accessed September 6, 2020).

3.25.    Upon information and belief, Shenzhen TCL New Technologies Co. Ltd. designs TCL branded Roku platform smart televisions for importation and sale in the United States, such as the TCL 55R617 - 55-Inch 4K Ultra HD Roku Smart LED TV.

3.26.    Upon information and belief, Shenzhen TCL New Technologies Co. Ltd. is engaged in the instruction or encouragement of others, including customers in the United States, to use, make, sell, and/or import such digital smart TVs and components thereof in a directly infringing manner.

### (f)        TCL King Electrical Appliances (Huizhou) Co. Ltd.

3.27.    Upon information and belief, TCL King Electrical Appliances (Huizhou) Co. Ltd. is engaged in the manufacturing, research, development, testing, marketing, distribution, shipping, importation, sale for importation, and/or sale within the United States after importation of, and/or contributing to (or instructing others regarding) the use, manufacture, sale, and/or importation of, digital smart TVs (and components thereof) that are manufactured outside of the United States. According to Bloomberg's Company Profile, TCL King Electrical Appliances (Huizhou) Co. Ltd. "develops, produces and sells color televisions, liquid crystal display and plasma display panel" and "markets their products throughout the world." Exhibit 19 (https://www.bloomberg.com /profile/company/HIALRZ:CH, accessed September 2, 2020).

3.28.    Upon information and belief, TCL King Electrical Appliances (Huizhou) Co. Ltd. is involved in the manufacture of TCL branded Roku platform smart televisions for importation and sale in the United States, such as the TCL 55R617 - 55-Inch 4K Ultra HD Roku Smart LED TV.

3.29.    Upon information and belief, TCL King Electrical Appliances (Huizhou) Co. Ltd. is engaged in the instruction or encouragement of others, including customers in the United States,

to use, make, sell, and/or import such digital smart TVs and components thereof in a directly infringing manner. On information and belief, at least one TCL King Electrical Appliances (Huizhou) Co. Ltd. employee works in Corona, California as the Overseas Industrial Support Manager, and is involved in supporting clients in United States, such as Best Buy, Amazon, etc. with respect to the Accused Products.

### (g)    TCL MOKA International Limited

3.30.   Upon information and belief, TCL MOKA International Limited is engaged in the manufacturing, research, development, testing, marketing, distribution, shipping, importation, sale for importation, and/or sale within the United States after importation of, and/or contributing to (or instructing others regarding) the use, manufacture, sale, and/or importation of, digital smart TVs (and components thereof) that are manufactured outside of the United States. According to Panjiva, TCL MOKA International Limited's "[t]op products" include "led television[s]." Exhibit 20 (https://panjiva.com/Tcl-Moka-International-Ltd/26640824, accessed September 2, 2020).

3.31.   Upon information and belief, TCL MOKA International Limited is engaged in the instruction or encouragement of others, including customers in the United States, to use, make, sell, and/or import such digital smart TVs and components thereof in a directly infringing manner.

### (h)    TCL Smart Device (Vietnam) Co., Ltd

3.32.   Upon information and belief, TCL Smart Device (Vietnam) Co., Ltd ("TCL Vietnam") is engaged in the manufacturing, research, development, testing, marketing, distribution, shipping, importation, sale for importation, and/or sale within the United States after importation of, and/or contributing to (or instructing others regarding) the use, manufacture, sale, and/or importation of, digital smart TVs (and components thereof) that are manufactured outside of the United States. According to Panjiva, TCL Vietnam, whose "[t]op products" include "led

television[s]," regularly imports led televisions, and parts of led televisions to TTE Technology

Inc. in the United States. Exhibit 21 (https://panjiva.com/Tcl-Smart-Device-Vietnam-

Co/71214654, accessed June 9, 2020 and September 3, 2020). These imports include the

representative TCL product, TCL 43" CLASS 4-SERIES 4K UHD HDR ROKU SMART TV,

Model No. 43S425, on May 27, 2020. Exhibit 21, at 2. Furthermore, according to TCL's website,

TCL Smart Device (Vietnam) Co., Ltd "will supply products to both the Vietnam market and other

overseas markets, including . . . the U.S. . . ., to meet the growing demand for superior quality

TVs." Exhibit 22 (https://www.tcl.com/au/en/blogs/constructions-starts-on-new-tcl-integrated-

manufacturing-base-in-vietnam.html, accessed September 2, 2020).

3.33.   Upon information and belief, TCL Smart Device (Vietnam) Co., Ltd is engaged in

the instruction or encouragement of others, including customers in the United States, to use, make,

sell, and/or import such digital smart TVs and components thereof in a directly infringing manner.

**B.   Supplier Respondents**

**1.   MediaTek Respondents**

3.34.   Pursuant to Commission Rule 210.12(a)(4), proposed Respondent **MediaTek Inc.**

is a Taiwanese corporation with a principal place of business at No. 1, Dusing 1st Rd., Hsinchu

Science Park, Hsinchu City, 30078 Taiwan, and has as its wholly owned subsidiaries: (1) **MStar**

**Semiconductor, Inc.**, a Taiwanese corporation with a principal place of business at 4F-1, No. 26,

Tai-Yuan St., ChuPei City, Hsinchu Hsien 302, Taiwan; and (2) **MediaTek USA Inc.**, a Delaware

corporation with a principal place of business at 2840 Junction Avenue, San Jose, California

95134, United States (collectively, "MediaTek").

**(a)   MediaTek Inc.**

3.35.   Upon information and belief, MediaTek Inc. designs, develops, manufactures, has

manufactured, sells, imports, has imported, sells for importation, and sells after importation into

16

the United States, and/or contributes to (or instructs others regarding) the use, manufacture, sale, and/or importation of video processing devices and components of digital smart televisions that are manufactured outside of the United States, including but not limited to printed circuit board assemblies for use in video processing in digital smart televisions (and associated software and/or firmware), as well as integrated circuits containing video processors (and associated software and/or firmware) for use in video processing in digital smart televisions. These video processing devices and components are incorporated into televisions sold by Respondents, such as TCL. According to its website, MediaTek Inc. is a "global market leader" in providing chipsets to "Home Entertainment products, including Digital and Smart TV, optical and Blu-ray players, routers and the newest Voice Assistant Devices (VAD)." Exhibit 23 (https://i.mediatek.com/about-mediatek, accessed September 2, 2020). Also, according to its website, MediaTek Inc. is the "#1 TV Chip Provider Globally" and that "[t]here are 2 billion MediaTek-powered TVs around the world," including "Smart TV Full HD (2K) Products." Exhibit 24 MTEKTV (https://www.mediatek.com/products/entertainment/digital-tv, accessed September 2, 2020).

3.36.   Upon information and belief, MediaTek Inc. is engaged in the instruction or encouragement of others, including its customers, such as digital smart TV companies (including the other Respondents), in the United States, to use, make, sell, and/or import video processing devices and components of such digital smart TVs in a directly infringing manner. On information and belief, MediaTek Inc. is itself a fabless entity, meaning that it employs the services of foreign third parties who manufacture printed circuit board assemblies for use in video processing in digital smart televisions (and associated software and/or firmware), as well as integrated circuits containing video processors (and associated software and/or firmware) designed by MediaTek Inc., for use in video processing in digital smart televisions. As will be demonstrated below, digital

smart televisions that incorporate such printed circuit board assemblies and integrated circuits, are manufactured and assembled by other Respondents (such as TCL) in foreign countries and imported into the United States.

**(b)     MStar Semiconductor, Inc.**

3.37.    Upon information and belief, MStar Semiconductor, Inc. designs, develops, manufactures, has manufactured, sells, imports, has imported, sells for importation, and sells after importation into the United States, and/or contributes to (or instructs others regarding) the use, manufacture, sale, and/or importation of, video processing devices and components of digital smart televisions that are manufactured outside of the United States, including but not limited to printed circuit board assemblies for use in video processing in digital smart televisions and associated software and/or firmware as well as integrated circuits containing video processors and associated software and/or firmware for use in video processing in digital smart televisions. These video processing devices and components are incorporated into televisions sold by Respondents, such as TCL. According to its website, MStar Semiconductor, Inc. "is a global leader in supplying application specific ICs (ASIC) for the consumer and Image processing product markets" and "has successfully built a diverse product portfolio that [has] propel[led] the company to become one of the fastest growing in the industry since its inception, with [a] worldwide leadership position in [providing ICs for] LCD monitor controller[s], analog and digital TV[s], [and] set-top box[es]." Exhibit 25 (https://www.mstarsemi.com, accessed September 2, 2020).

3.38.    Upon information and belief, MStar Semiconductor, Inc. is engaged in the instruction or encouragement of others, including customers, such as digital smart TV companies, in the United States, to use, make, sell, and/or import video processing devices and components of such digital smart TVs in a directly infringing manner. On information and belief, MStar

Semiconductor, Inc. is itself a fabless entity, meaning that it employs the services of foreign third parties who manufacture printed circuit board assemblies for use in video processing in digital smart televisions (and associated software and/or firmware), as well as integrated circuits containing video processors (and associated software and/or firmware) designed by MStar Semiconductor, Inc., for use in video processing in digital smart televisions. As will be demonstrated below, digital smart televisions that incorporate such printed circuit board assemblies and integrated circuits, are manufactured and assembled by other Respondents (such as TCL) in foreign countries and imported into the United States.

### (c)     MediaTek USA Inc.

3.39.   Upon information and belief, MediaTek USA Inc. designs, develops, manufactures, has manufactured, sells, imports, has imported, sells for importation, and sells after importation into the United States, and/or contributes to (or instructs others regarding) the use, manufacture, sale, and/or importation of, video processing devices and components of digital smart televisions that are manufactured outside of the United States, including but not limited to printed circuit board assemblies for use in video processing in digital smart televisions and associated software and/or firmware as well as integrated circuits containing video processors and associated software and/or firmware for use in video processing in digital smart televisions. According to a Senior Technical Manager at MediaTek USA Inc. based out of Wellesley Hills, Massachusetts, MediaTek USA Inc. is involved in the design of integrated circuits. *See* Exhibit 26 (https://www.linkedin.com/in/analogbb/, accessed September 3, 2020). According to a Director at MediaTek USA Inc. based out in San Jose, California, MediaTek USA Inc. is involved in providing customer designed system on a chip solutions, including TV chips and Wi-Fi chips. *See*

Exhibit 27 (https://www.linkedin.com/public-profile/in/oliver-chen-28666779, accessed September 3, 2020).

3.40.   Upon information and belief, MediaTek USA Inc. is engaged in the instruction or encouragement of others, including customers, such as digital smart TV companies (including the other Respondents), in the United States, to use, make, sell, and/or import video processing devices and components of such digital smart TVs in a directly infringing manner. On information and belief, MediaTek USA Inc. is itself a fabless entity, meaning that it employs the services of foreign third parties who manufacture printed circuit board assemblies for use in video processing in digital smart televisions (and associated software and/or firmware), as well as integrated circuits containing video processors (and associated software and/or firmware) designed by MediaTek USA Inc., for use in video processing in digital smart televisions. As will be demonstrated below, digital smart televisions that incorporate such printed circuit board assemblies and integrated circuits, are manufactured and assembled by other Respondents (such as TCL) in foreign countries and imported into the United States.

### 2.    Realtek Respondent

3.41.   Pursuant to Commission Rule 210.12(a)(4), proposed Respondent **Realtek Semiconductor Corp.** ("Realtek") is a Taiwanese corporation with a principal place of business at No. 2, Innovation Road II, Hsinchu Science Park, Hsinchu 300, Taiwan.

3.42.   Upon information and belief, Realtek designs, develops, manufactures, has manufactured, sells, imports, has imported, sells for importation, and sells after importation into the United States, and/or contributes to (or instructs others regarding) the use, manufacture, sale, and/or importation of, video processing devices and components of digital smart televisions that are manufactured outside of the United States, including but not limited to printed circuit board assemblies for use in video processing in digital smart televisions and associated software and/or

20

firmware as well as integrated circuits containing video processors and associated software and/or firmware for use in video processing in digital smart televisions. These video processing devices and components are incorporated into televisions sold by Respondents, such as LG. According to its website, Realtek "is a world-leading IC provider that designs and develops a wide range of IC products for communications network, computer peripheral, and multimedia applications" including "LCD Monitor/ATV/DTV Controllers, and Digital Home Center Controllers." Exhibit 28 (https://www.realtek.com/en/press-room/news-releases/item/realtek-to-demonstrate-full-range-of-connectivity-multimedia-and-consumer-electronics-solutions-at-2020-ces, accessed September 2, 2020).

    3.43. Upon information and belief, Realtek is engaged in the instruction or encouragement of others, including customers, such as digital smart TV companies (including the other Respondents), in the United States, to use, make, sell, and/or import video processing devices and components of such digital smart TVs in a directly infringing manner. On information and belief, Realtek is itself a fabless entity, meaning that it employs the services of foreign third parties who manufacture printed circuit board assemblies for use in video processing in digital smart televisions (and associated software and/or firmware), as well as integrated circuits containing video processors (and associated software and/or firmware) designed by Realtek, for use in video processing in digital smart televisions. As will be demonstrated below, digital smart televisions that incorporate such printed circuit board assemblies and integrated circuits, are manufactured and assembled by other Respondents (such as LG) in foreign countries and imported into the United States.

## IV.   THE ASSERTED PATENTS AND NON-TECHNICAL DESCRIPTION OF THE INVENTIONS

### A.   Overview of the Patented Technology

4.1.    Pursuant to Commission Rule 210.12(a)(9)(vi),[2] the Asserted Patents are directed to improvements to computer systems for streaming multimedia (such as video, audio, etc.). Specifically, the technologies at issue in the Asserted Patents relate to adaptive bitrate streaming of multimedia files to consumer electronics devices over the internet and protection of the multimedia content against piracy.

4.2.    Multimedia "streaming" refers to the computing process of delivering multimedia content to an end user through a network, and allowing the consumer to playback the media content while it is in the process of being delivered. Multimedia streaming is accomplished by providing multimedia files over the interconnected computer networks that make up the internet, from server computers that host (store) the multimedia files to client computers (consumer electronic devices, such as desktop computers, laptop computers, smartphones, tablets, and smart televisions) that can interpret the multimedia files and convert them to pixels displayed on the screen and/or audio played on the device during playback.

4.3.    The ability to perform multimedia streaming and the level of performance that can be provided to an end user (such as high-resolution, smooth playback, without stalls or errors), depends, in part, on the sheer computing resources of the computing devices used in the multimedia streaming system. Those computing resources include the processing power of the computers, the input/output (I/O) and data transmission capabilities of the computers, and the

---

[2] The non-technical description of the patented technology provided herein is provided solely for compliance with Commission Rule 210.12(a)(9)(vi) and is not intended to limit, define, or otherwise affect the construction and/or application of any of the Asserted Patents.

memory (storage) available on the computers. But even the world's most capable of supercomputers are performance constrained by the networks in which they operate. And the practical ability to perform multimedia streaming is further constrained by the willingness of content providers to entrust their high-value content to the security of the streaming system.

4.4.    Adaptive bitrate streaming ("ABS"), also known as adaptive streaming, is a streaming multimedia technique that can deliver multimedia to users in an efficient way and in high quality for each specific user. For example, ABS can involve detecting the streaming conditions in real time and adjusting the quality of the streamed media accordingly, so that the user does not experience stalls in video playback caused by changes in bandwidth or processing capabilities. For ABS, the playback server system encodes particular multimedia content in separate, multiple streams at different bitrates (*i.e.*, the number of bits that are processed in a given unit of time), to be streamed consistent with the capabilities of the network and playback device, including bandwidth. If available bandwidth reduces, for example, ABS allows the device to switch to a lower-resolution stream of the same content, which requires less data transmission and processing. This in turn allows the device to keep playing the video without any stall.



4.5.    Preventing piracy of digital media is a significant technical challenge for streaming multimedia. Digital rights management ("DRM") is an access control system that has been developed to protect digital media, allowing content providers to control who uses their content and how clients can use it. DRM is designed to prevent the end user that has obtained digital media from modifying, copying, converting, or using the digital media in any way other than that permitted by the digital content provider. DRM often includes encryption and decryption of digital multimedia data in specific ways using specific encryption and decryption mechanisms. Because multimedia streaming involves sending portions of files over a network for decryption and decoding on devices on which other software may be executing, multimedia streaming technology providers face unique technical challenges in providing adequate security of the video content and control over access rights, while at the same time reducing the burdens on the encoding and decoding computers relating to encryption and decryption.

4.6.    In sum, streaming digital multimedia data presents unique technical challenges relating to content protection and providing high quality streaming experience. As described in more detail below, DivX's patented inventions provide technical solutions, through computing improvements, to these technical challenges.

**B.      U.S. Patent No. 8,832,297**

4.7.    United States Patent No. 8,832,297, entitled "Systems and Methods for Performing Multiphase Adaptive Bitrate Streaming," issued on September 9, 2014, to inventors Kourosh Soroushian, Auke van der Schaar, Jason Braness, and William David Amidei.

4.8.    Pursuant to Commission Rule 210.12(a)(9)(xi), the '297 Patent expires on December 29, 2031. The '297 Patent issued from U.S. Patent App. Ser. No. 13/339,992, filed on December 29, 2011, and was previously published as U.S. Patent Pub. No. 2013-0007297 on January 3, 2013.

4.9.    The '297 Patent contains 41 claims, including 3 independent claims and 38 dependent claims.

4.10.   Pursuant to Commission Rule 210.12(a)(9)(vii), Complainant asserts that Respondents' video processing devices and components thereof as well as Samsung, LG, and TCL digital smart TVs containing the same (the "'297 Accused Products") infringe at least claims 1-11, 14-29, and 32-39 of the '297 Patent, literally or under the doctrine of equivalents, as described more fully below. The MediaTek and Realtek Respondents also infringe because they supply, and/or instruct others regarding the use, manufacture, sale, and/or importation of video processing devices and components incorporated in at least Samsung, LG, and/or TCL digital smart TVs.

4.11.   Pursuant to Commission Rule 210.12(a)(9)(vi), the '297 Patent generally relates to multiphase adaptive bitrate streaming. Conventional adaptive bitrate streaming systems used the same, fixed, set of conditions to determine whether to switch playback from a given multimedia

stream to a different resolution stream of the same content. Despite the significant improvement over non-adaptive streaming systems, conventional adaptive bitrate streaming nonetheless suffered from significant delays and glitches during multimedia playback.

4.12.   The inventors of the '297 Patent discovered that the significant delays and glitches afflicting conventional adaptive bitrate streaming systems could be mitigated or avoided altogether by varying the stream switching conditions themselves, depending on the operational phase. In this way, playback can start in one operational phase with one set of streaming conditions. However, when the situation changes, playback can switch to a different operational phase with a different set of streaming conditions. As a result, the invention disclosed by the '297 Patent strikes a balance between quality and user experience.

### C.    U.S. Patent No. 10,212,486

4.13.   United States Patent No. 10,212,486, entitled "Elementary Bitstream Cryptographic Material Transport Systems and Methods," issued on February 19, 2019, to inventors Francis Yee-Dug Chan, Kourosh Soroushian, and Andrew Jeffrey Wood.

4.14.   Pursuant to Commission Rule 210.12(a)(9)(xi), the '486 Patent expires on November 15, 2030. The '486 Patent issued from U.S. Patent App. Ser. No. 15/615,626, filed on June 6, 2017, and was previously published as U.S. Patent Pub. No. 2017-0280203 on September 28, 2017.

4.15.   The '486 Patent is the result of a continuation of U.S. Patent Application No. 14/839,783, filed on Aug. 28, 2015, now U.S. Patent No. 9,706,259, which is a continuation of U.S. Patent Application No. 14/306,146, filed on June 16, 2014, now U.S. Patent No. 9,124,773, which is a continuation of U.S. Patent Application No. 12/946,631, filed on Nov. 15, 2010, now U.S. Patent No. 8,781,122.

4.16.   The '486 Patent contains 25 claims, including 2 independent claims and 23 dependent claims.

4.17.   Pursuant to Commission Rule 210.12(a)(9)(vii), Complainant asserts that Respondents' video processing devices and components thereof as well as Samsung, LG, and TCL digital smart TVs containing the same (the "'486 Accused Products") infringe at least claims 1-5, 7-10, 13-19, and 21-25 of the '486 Patent, literally or under the doctrine of equivalents, as described more fully below. The MediaTek and Realtek Respondents also infringe because they supply, and/or instruct others regarding the use, manufacture, sale, and/or importation of video processing devices and components incorporated in at least Samsung, LG, and/or TCL digital smart TVs.

4.18.   Pursuant to Commission Rule 210.12(a)(9)(vi), the '486 Patent generally relates to improvements to secure decrypting and decoding encrypted video files in playback devices. The '486 Patent invention provides a new type of decryption for digital video files, and improved methods for decrypting and playing back those encrypted files, that improve the security of the digital video data by reducing the likelihood that an unauthorized user can access the data. Specifically, the '486 Patent is directed to a content security architecture that deciphers frame keys within a secure video decoder, efficiently enhancing content security. By allowing the decryption to occur on the decoder, the bitstream is protected even if the connection is compromised by an unauthorized component or process. The inventions recited in the '486 Patent thus enable digital television companies to improve the security of their video streaming systems, allowing them to obtain content from content providers, and to trust in the security of their own, home-grown content.

4.19.    In digital multimedia distribution systems that transmit unencrypted multimedia files downstream to the decoder, the transmission of unencrypted multimedia files can present a security problem because the unencrypted—but still encoded—bitstream can be captured during transmission. This unencrypted bitstream is considered high-value, since the encoded data is vulnerable to unprotected and unauthorized views and/or distribution with no loss in the quality of the data.

4.20.    The '486 Patent discloses specific ways to transmit "encrypted multimedia content over an unsecured connection" to improve security and enable efficient distribution and playback of multimedia content. The '486 invention packages cryptographic material with digital video in a "container file" and allows end to end encryption of the video stream transmitted to the video decoder. By allowing the decryption to occur on the decoder, the bitstream is protected even if the connection is compromised and an unauthorized component or process intercepts the bitstream. In addition to improving the security of the video data, the '486 Patent also reduces the processing resources required to decrypt and play back the video.

**D.    U.S. Patent No. 10,412,141**

4.21.    United States Patent No. 10,412,141, entitled "Systems and Methods for Seeking Within Multimedia Content During Streaming Playback," issued on September 10, 2019, to inventor Roland Osborne. Pursuant to Commission Rule 210.12(a)(9)(xi), the '141 Patent expires on January 7, 2028. The '141 Patent issued from U.S. Patent App. Ser. No. 16/136,149, filed on September 19, 2018, and was previously published as U.S. Patent Pub. No. 2019-0020704 on January 17, 2019.

4.22.    The '141 Patent is the result of a continuation of U.S. Patent Application No. 15/682,379, filed on Aug. 21, 2017, now U.S. Patent No. 10,574,716, which is a continuation of U.S. Patent Application No. 14/632,670, filed on Feb. 26, 2015, now U.S. Patent No. 9,794,318,

which is a continuation of U.S. Patent Application No. 12/982,413, filed on Dec. 30, 2010, now

U.S. Patent No. 8,977,768, which is a continuation of U.S. Patent Application No. 11/970,493,

filed on Jan. 7, 2008, now U.S. Patent No. 7,886,069.

4.23.   The '141 Patent contains 30 claims, including 3 independent claims and 27

dependent claims.

4.24.   Pursuant to Commission Rule 210.12(a)(9)(vii), Complainant asserts that

Respondents' video processing devices and components thereof as well as Samsung, LG, and TCL

digital smart TVs containing the same (the "'141 Accused Products") infringe at least claims 1-3,

5-11, 20-22, and 26-30 of the '141 Patent, literally or under the doctrine of equivalents, as

described more fully below. The MediaTek and Realtek Respondents' Accused Products also

infringe because they supply, and/or instruct others regarding the use, manufacture, sale, and/or

importation of video processing devices and components incorporated in at least Samsung, LG,

and/or TCL digital smart TVs.

4.25.   Pursuant to Commission Rule 210.12(a)(9)(vi), the '141 Patent generally relates to

the progressive playback of multimedia files over a network. Before the '141 Patent, conventional

digital video playback systems, such as DVD players, employed a so-called "trick play" mode of

operation. Upon receipt of certain commands, such as fast-forward, rewind, or skip, digital video

systems employed the trick play mode to mimic the visual feedback of fast-forwarding and

rewinding operations that were provided by older analog systems, such as VCRs.

4.26.   The industry faced significant obstacles to implement this "trick play" functionality

in streaming digital video players, such as internet browsers. Unlike their conventional

counterparts, streaming digital video players are required to play the digital video file while it is

being downloaded. When a long clip was started, it was impossible to seek or fast-forward to a

point in the file that had not already been downloaded. The '141 Patent resolved this issue by providing an advanced playback device that performs adaptive bitrate streaming and "trick play" functions on partially downloaded media files. Instead of sequentially downloading a media file and waiting until the required information has been downloaded to perform a "trick play" function, client applications can determine the specific portions of a media file that are required to support a specific "trick play" function and request those portions of the file from the server hosting such media file.

### E.      U.S. Patent No. 10,484,749

4.27.    United States Patent No. 10,484,749, entitled "Systems and Methods for Secure Playback of Encrypted Elementary Bitstreams," issued on November 19, 2019, to inventors Francis Yee-Dug Chan, Kourosh Soroushian, and Andrew Jeffrey Wood. Pursuant to Commission Rule 210.12(a)(9)(xi), the '749 Patent expires on November 15, 2030. The '749 Patent issued from U.S. Patent App. Ser. No. 16/136,170, filed on September 19, 2018, and was previously published as U.S. Patent Pub. No. 2019-0020928 on January 17, 2019.

4.28.    The '749 Patent is the result of a continuation of U.S. Patent Application No. 15/615,626, filed on June 6, 2017, now U.S. Patent No. 10,212,486, which is a continuation of U.S. Patent Application No. 14/839,783, filed on Aug. 28, 2015, now U.S. Patent No. 9,706,259, which is a continuation of U.S. Patent Application No. 14/306,146, filed on June 16, 2014, now U.S. Patent No. 9,124,773, which is a continuation of U.S. Patent Application No. 12/946,631, filed on Nov. 15, 2010, now U.S. Patent No. 8,781,122.

4.29.    The '749 Patent contains 18 claims, including 2 independent claims and 16 dependent claims.

4.30.    Pursuant to Commission Rule 210.12(a)(9)(vii), Complainant asserts that Respondents' video processing devices and components thereof as well as Samsung, LG, and TCL

digital smart TVs containing the same (the "'749 Accused Products") infringe at least claims 1-18 of the '749 Patent, literally or under the doctrine of equivalents, as described more fully below. The MediaTek and Realtek Respondents also infringe because they supply, and/or instruct others regarding the use, manufacture, sale, and/or importation of video processing devices and components incorporated in at least Samsung, LG, and/or TCL digital smart TVs.

4.31.   Pursuant to Commission Rule 210.12(a)(9)(vi), the '749 Patent generally relates to improvements to secure decrypting and decoding encrypted video files in playback devices. The '749 invention provides a new type of decryption for digital video files, and improved methods for decrypting and playing back those encrypted files, that improve the security of the digital video data by reducing the likelihood that an unauthorized user can access the data. Specifically, the '749 Patent is directed to a content security architecture that deciphers frame keys within a secure video decoder, efficiently enhancing content security. By allowing the decryption to occur on the decoder, the bitstream is protected even if the connection is compromised by an unauthorized component or process. The inventions recited in the '749 patent thus enable digital television companies to improve the security of their video streaming systems, allowing them to obtain content from content providers and to trust in the security of their own, home-grown content.

4.32.   In digital multimedia distribution systems that transmit unencrypted multimedia files downstream to the decoder, the transmission of unencrypted multimedia files can present a security problem because the unencrypted—but still encoded—bitstream can be captured during transmission. This unencrypted bitstream is considered high-value, since the encoded data is vulnerable to unprotected and unauthorized views and/or distribution with no loss in the quality of the data.

4.33.    The '749 Patent discloses specific ways to transmit "encrypted multimedia content over an unsecured connection" to improve security and enable efficient distribution and playback of multimedia content. The '749 invention packages cryptographic material with digital video in a "container file" and allows end to end encryption of the video stream transmitted to the video decoder. By allowing the decryption to occur on the decoder, the bitstream is protected even if the connection is compromised and an unauthorized component or process intercepts the bitstream. In addition to improving the security of the video data, the '749 Patent also reduces the processing resources required to decrypt and play back the video.

### F.    Ownership, Licenses, and Foreign Counterparts of the Asserted Patents

4.34.    DivX owns by assignment the entire rights, title, and interest in and to each of the Asserted Patents. Pursuant to Commission Rule 210.12(a)(9)(ii), certified copies of the assignment records for the '297 Patent to DivX are included as Exhibits 29 through 33 (Certified Reel-Frame Nos. 027896 / 0557, 031713 / 0032, 045310 / 0020, 045498 / 0560, 050407 / 0104). Certified copies of the assignment records for the '486 Patent to DivX are included as Exhibits 34, 35, 31, 32, and 36 (Certified Reel-Frame Nos. 43311 / 0887, 043311 / 0931, 045310 / 0020, 045498 / 0560, 050096 / 0715). Certified Copies of the assignment records for the '141 Patent to DivX are included as Exhibits 37 through 41 (Certified Reel-Frame No. 048545 / 0953, 048546 / 0126, 048546 / 0180, 048546 / 0284, 048546 / 0314). Certified Copies of the assignment records for the '749 Patent to DivX are included as Exhibits 42 through 45 (Certified Reel-Frame No. 048545 / 0506, 048546 / 0065, 048546 / 0161, 048546 / 0310). A copy of the confidential Purchase Agreement referenced in, *e.g.*, the assignment record attached as Exhibit 31, is attached hereto as Confidential Exhibit 46.

4.35.    Pursuant to Commission Rule 210.12(c), four copies of the certified prosecution histories of each of the Asserted Patents – the '297 Patent, the '486 Patent, the '141 Patent, and

the '749 Patent – have been submitted with this Complaint as Appendices A, C, E, and G, respectively. Pursuant to Commission Rule 210.12(c), the cited references for each of the Asserted Patents – the '297 Patent, the '486 Patent, the '141 Patent, and '749 Patent – have also been submitted with this Complaint as Appendices B, D, F, and H, respectively.

4.36.   Pursuant to Commission Rule 210.12(a)(9)(v), a list of known foreign patents and applications also claiming the same benefit of priority as the Asserted Patents is included in the following table.

| List of known related foreign counterparts for U.S. Patent No. 8,832,297 | | | | |
|---|---|---|---|---|
| Status | Publication Number | Application Number | File Date | Publication Date |
| Complete | WO2013002834 | PCT/US2011/068156 | 12/30/2011 | 1/3/2013 |

| List of known related foreign counterparts for U.S. Patent No. 10,212,486 and 10,484,749 | | | | |
|---|---|---|---|---|
| Status | Publication Number | Application Number | File Date | Publication Date |
| Granted/In Force | CA2782825 | CA2782825 | 11/15/2010 | 4/26/2016 |
| Withdrawn | EP2507995 | EP 10834935.8 | 11/15/2010 | 10/10/2012 |
| Granted/In Force | JP5723888 JP2013513298 | JP2012-542061 | 11/15/2010 | 4/3/2015 4/18/2013 |
| Granted/In Force | JP6078574 JP2015167357 | JP2015-068797 | 3/30/2015 | 2/8/2017 9/24/2015 |
| Complete | WO2011068668 (A1) | PCT/US2010/056733 | 11/15/2010 | 11/15/2010 |

| List of known related foreign counterparts for U.S. Patent Nos. 10,412,141 | | | | |
|---|---|---|---|---|
| Status | Publication Number | Application Number | File Date | Publication Date |
| Granted/In Force | CN101636726 | CN200880007014.9 | 1/7/2008 | 1/27/2010 |
| Granted/In Force | CN103559165 | CN201310429994.4 | 1/7/2008 | 8/17/2016 |
| Granted/In Force | CN103561278 | CN201310430673.6 | 1/7/2008 | 2/5/2014 |
| Granted/In Force | DE087057451 | 602008057889.5 | 1/7/2008 | 11/14/2018 |

| Granted/In Force | FR087057451 | 2122482 | 1/7/2008 | 11/14/2018 |
|---|---|---|---|---|
| Granted/In Force | GB087057451 | 2122482 | 1/7/2008 | 11/14/2018 |
| Granted/In Force | EP2122482 | EP08705745.1 | 1/7/2008 | 11/14/2018 |
| Pending/Published | EP3467666 | EP18206048.3 | 1/7/2008 | 4/10/2019 |
| Granted/In Force | IT087057451 | 502019000012037 | 1/7/2008 | 11/14/2018 |
| Granted/In Force | JP5559544 JP2010-516123 | JP2009-545012 | 1/7/2008 | 7/23/2014 5/13/2010 |
| Granted/In Force | JP5894220 JP2014-197879 | JP2014-117349 | 1/7/2008 | 3/23/2016 10/16/2014 |
| Complete | WO2008086313 | PCT/US2008/050440 | 1/7/2008 | 7/17/2008 |
| Granted/In Force | ES2709208 | ES20080705745 | 1/7/2008 | 4/15/2019 |
| Granted/In Force | SG2009045303 | 153621 | 1/7/2008 | 5/31/2012 |

4.37.    DivX is not aware of any other foreign counterpart applications or patents to the Asserted Patents that have been issued, abandoned, or rejected, or that remain pending.

4.38.    Complainant has attached as Confidential Exhibit 47 a list, which identifies certain entities who have obtained licenses to the Asserted Patents. Confidential Exhibit 47 additionally lists other entities who have obtained certain limited rights to incorporate certain DivX®-branded software development kits ("SDKs"), such as the "DivX Plus Streaming Profile," into certain of their own products. To the extent those entities have incorporated such particular DivX-supplied software products, they may have certain limited, non-exclusive rights under certain necessary intellectual property owned by DivX with respect to those DivX-supplied software products. DivX provides this list of Confidential Exhibit 47, which may be over-inclusive, for the sake of clarity and completeness, to ensure compliance with Commission Rule 210.12(a)(9)(iii). To the extent that this list identifies certain of the Respondents as having rights to use or incorporate DivX-supplied software products, none of the associated software licenses include rights to any DivX

intellectual property other than for the use or incorporation of the applicable DivX-supplied software into their own products. Furthermore, the Accused Products and features identified in the claim charts of Exhibits 48-67 are, upon information and belief, not covered by any DivX software license.

## V.   UNFAIR ACTS OF PROPOSED RESPONDENTS – INFRINGEMENT AND IMPORTATION

5.1.    On information and belief, each Respondent infringes, directly or indirectly, by importing, selling for importation, and/or selling after importation in the United States, Accused Products that infringe each Asserted Patent, literally or under the doctrine of equivalents.

### A.    Direct Infringement

#### 1.    U.S. Patent No. 8,832,297

5.2.    On information and belief, each Respondent imports, sells for importation, and/or sells after importation into the United States, Accused Products that directly infringe the '297 Patent, literally or under the doctrine of equivalents.

5.3.    Pursuant to Commission Rule 210.12(a)(9)(viii), exemplary claim charts comparing independent claims 1 and 18 of the '297 Patent to the representative articles are attached as Exhibit 48 (Samsung digital smart TV), Exhibit 49 (LG digital smart TV), Exhibit 50 (Realtek video processing device and components), Exhibit 51 (TCL digital smart TV), and Exhibit 52 (MediaTek video processing device and components).

#### 2.    U.S. Patent No. 10,212,486

5.4.    On information and belief, each Respondent imports, sells for importation, and/or sells after importation into the United States, Accused Products that directly infringe the '486 Patent, literally or under the doctrine of equivalents.

5.5.    Pursuant to Commission Rule 210.12(a)(9)(viii), exemplary claim charts comparing independent claims 1 and 15 of the '486 Patent to the representative articles are attached as Exhibit 53 (Samsung digital smart TV), Exhibit 54 (LG digital smart TV), Exhibit 55 (Realtek video processing device and components), Exhibit 56 (TCL digital smart TV), and Exhibit 57 (MediaTek video processing device and components).

### 3.    U.S. Patent No. 10,412,141

5.6.    On information and belief, each Respondent imports, sells for importation, and/or sells after importation into the United States, Accused Products that directly infringe the '141 Patent, literally or under the doctrine of equivalents.

5.7.    Pursuant to Commission Rule 210.12(a)(9)(viii), exemplary claim charts comparing independent claims 1 and 20 of the '141 Patent to the representative articles are attached as Exhibit 58 (Samsung digital smart TV), Exhibit 59 (LG digital smart TV), Exhibit 60 (Realtek video processing device and components), Exhibit 61 (TCL digital smart TV), and Exhibit 62 (MediaTek video processing device and components).

### 4.    U.S. Patent No. 10,484,749

5.8.    On information and belief, each Respondent imports, sells for importation, and/or sells after importation into the United States, Accused Products that directly infringe the '749 Patent, literally or under the doctrine of equivalents.

5.9.    Pursuant to Commission Rule 210.12(a)(9)(viii), exemplary claim charts comparing claim 1 of the '749 Patent to the representative articles are attached as Exhibit 63 (Samsung digital smart TV), Exhibit 64 (LG digital smart TV), Exhibit 65 (Realtek video processing device and components), Exhibit 66 (TCL digital smart TV), and Exhibit 67 (MediaTek video processing device and components).

B.      **Indirect Infringement**

1.      **Samsung**

5.10.    On information and belief, Samsung contributes to and induces direct infringement by others, including Samsung's customers, such as, *e.g.*, application companies, application developers, retailers, and end-users. Samsung induces and contributes to its customers' directly infringing acts, including those customers' importation, sales, use, and offers for sale of articles that are covered by the Asserted Patents. For example, on information and belief, retailers such as Best Buy provide floor demonstrations of the operation of Samsung televisions that infringe. Also for example, on information and belief, when an end-user connects Samsung televisions that infringe to the internet, such televisions download and/or activate software that facilitate the operation of the infringing systems and methods of those televisions and components thereof.

5.11.    Upon information and belief, Samsung had, and has, knowledge of, or was willfully blind to, the Asserted Patents. For example, Samsung has knowledge of the Asserted Patents as a result of the filing and/or service of this Complaint and/or the Related Litigations. Additionally, prior to, or contemporaneous with, the filing of this Complaint, Samsung had actual knowledge of the Asserted Patents by way of a notice letter. Exhibit 68 (Letter to Samsung dated Sept. 8, 2020). Furthermore, prior to the filing of this Complaint, Samsung had actual knowledge of at least the patents listed on the DivX Branding Guidelines, which includes at least one of the Asserted Patents, the '297 Patent. Also, as specified in Section VIII below, prior to the filing of this Complaint, Samsung had actual knowledge of the Asserted Patents through DivX's patent infringement action before the United States District Court for the Eastern District of Texas against Samsung.

5.12.    Upon information and belief, Samsung knowingly induced and induces direct infringing acts by others with specific intent to encourage infringement. For example, Samsung

37

actively induces customers' direct infringement by contracting with and encouraging customers to offer to sell, sell, and import in the United States products that infringe the Asserted Patents. Samsung knows, or should have known, that these induced acts directly infringe the Asserted Patents because of, for example, the infringement allegations and evidence provided in connection with this Complaint, and the aforementioned district court complaint and notice letters to Samsung.

5.13.   Samsung also contributes to the foregoing infringement by customers by offering to sell, selling, and importing in the United States Samsung products that constitute a material part of the articles that practice the Asserted Patents. Samsung knows, or should have known, that such Samsung products have no substantial non-infringing uses, are a material part of the invention of each Asserted Patent, especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

5.14.   Furthermore, Samsung has actively induced and contributed to, and continues to actively induce and contribute to the infringement of consumers and/or end users by the automatic download and/or activation of certain software to the video processing devices and digital smart televisions containing the same when the devices are, *e.g.*, turned on and connected to the internet for the first time, and by encouraging third party application developers to create software that enables the infringing behavior of Samsung's video processing devices, components thereof, and digital smart televisions containing the same.

## 2.    LG

5.15.   On information and belief, LG contributes to and induces direct infringement by others, including LG's customers, such as, *e.g.*, application companies, application developers, retailers, and end-users. LG induces and contributes to its customers' directly infringing acts, including those customers' importation, sales, use, and offers for sale of articles that are covered

by the Asserted Patents. For example, on information and belief, retailers such as Best Buy provide floor demonstrations of the operation of LG televisions that infringe. Also for example, on information and belief, when an end-user connects LG televisions that infringe to the internet, such televisions download and/or activate software that facilitate the operation of the infringing systems and methods of those televisions and components thereof.

5.16.   Upon information and belief, LG had, and has, knowledge of, or was willfully blind to, the Asserted Patents. For example, LG has knowledge of the Asserted Patents as a result of the filing and/or service of this Complaint and/or the Related Litigation. Additionally, prior to, or contemporaneous with, the filing of this Complaint, LG had actual knowledge of the Asserted Patents by way of a notice letter. Exhibit 69 (Letter to LG dated Sept. 8, 2020). Furthermore, prior to the filing of this Complaint, LG had actual knowledge of at least the patents listed on the DivX Branding Guidelines, which includes at least one of the Asserted Patents, the '297 Patent. Also, as specified in Section VIII below, prior to the filing of this Complaint, LG had actual knowledge of the Asserted Patents through DivX's patent infringement action before the United States District Court for the District of Delaware against LG. Finally, by way of a notice letter containing a list of issued patents provided to LG by DivX on or around November 13, 2014, LG had actual knowledge of the patents then-owned by DivX, including the '297 Patent, which issued on September 9, 2014, patents related to the '486 and '749 Patents (*e.g.*, U.S. Patent Application No. 12/946,631, filed on Nov. 15, 2010, now U.S. Patent No. 8,781,122), and patents related to the '141 Patent (*e.g.*, U.S. Patent Application No. 12/982,413, filed on Dec. 30, 2010, now U.S. Patent No. 8,977,768, and U.S. Patent Application No. 11/970,493, filed on Jan. 7, 2008, now U.S. Patent No. 7,886,069). Confidential Exhibit 70 (Letter to LG dated Nov. 13, 2014).

5.17.   Upon information and belief, LG knowingly induced and induces direct infringing acts by others with specific intent to encourage infringement. For example, LG actively induces customers' direct infringement by contracting with and encouraging customers to offer to sell, sell, and import in the United States products that infringe the Asserted Patents. LG knows, or should have known, that these induced acts directly infringe the Asserted Patents because of, for example, the infringement allegations and evidence provided in connection with this Complaint, and the aforementioned district court complaint and notice letters to LG.

5.18.   LG also contributes to the foregoing infringement by customers by offering to sell, selling, and importing in the United States LG products that constitute a material part of the articles that practice the Asserted Patents. LG knows, or should have known, that such LG products have no substantial non-infringing uses, are a material part of the invention of each Asserted Patent, especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

5.19.   Furthermore, LG has actively induced and contributed to, and continues to actively induce and contribute to the infringement of consumers and/or end users by the automatic download and/or activation of certain software to the video processing devices and digital smart televisions containing the same when the devices are, *e.g.*, turned on and connected to the internet for the first time, and by encouraging third party application developers to create software that enables the infringing behavior of LG's video processing devices, components thereof, and digital smart televisions containing the same.

### 3.   TCL

5.20.   On information and belief, TCL contributes to and induces direct infringement by others, including TCL's customers, such as, *e.g.*, application companies, application developers, retailers, and end-users. TCL induces and contributes to its customers' directly infringing acts,

including those customers' importation, sales, use, and offers for sale of articles that are covered by the Asserted Patents. For example, on information and belief, retailers such as Best Buy provide floor demonstrations of the operation of TCL televisions that infringe. Also for example, on information and belief, when an end-user connects TCL televisions that infringe to the internet, such televisions download and/or activate software that facilitate the operation of the infringing systems and methods of those televisions and components thereof.

5.21.   Upon information and belief, TCL had, and has, knowledge of, or was willfully blind to, the Asserted Patents. For example, TCL has knowledge of the Asserted Patents as a result of the filing and/or service of this Complaint and/or the Related Litigation. Additionally, prior to, or contemporaneous with, the filing of this Complaint, TCL had actual knowledge of the Asserted Patents by way of a notice letter. Exhibit 71 (Letter to TCL dated Sept. 8, 2020). Furthermore, prior to the filing of this Complaint, TCL had actual knowledge of at least the patents listed on the DivX Branding Guidelines, which includes at least one of the Asserted Patents, the '297 Patent. Also, as specified in Section VIII below, prior to the filing of this Complaint, TCL had actual knowledge of the Asserted Patents through DivX's patent infringement action before the United States District Court for the District of Delaware against TCL.

5.22.   Upon information and belief, TCL knowingly induced and induces direct infringing acts by others with specific intent to encourage infringement. For example, TCL actively induces customers' direct infringement by contracting with and encouraging customers to offer to sell, sell, and import in the United States products that infringe the Asserted Patents. TCL knows, or should have known, that these induced acts directly infringe the Asserted Patents because of, for example, the infringement allegations and evidence provided in connection with this Complaint, and the aforementioned district court complaint and notice letters to TCL.

5.23.    TCL also contributes to the foregoing infringement by customers by offering to sell, selling, and importing in the United States TCL products that constitute a material part of the articles that practice the Asserted Patents. TCL knows, or should have known, that such TCL products have no substantial non-infringing uses, are a material part of the invention of each Asserted Patent, especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

5.24.    Furthermore, TCL has actively induced and contributed to, and continues to actively induce and contribute to the infringement of consumers and/or end users by the automatic download and/or activation of certain software to the video processing devices and digital smart televisions containing the same when the devices are, *e.g.*, turned on and connected to the internet for the first time, and by encouraging third party application developers to create software that enables the infringing behavior of TCL's video processing devices, components thereof, and digital smart televisions containing the same.

### 4.    MediaTek

5.25.    On information and belief, MediaTek contributes to and induces direct infringement by others, including MediaTek's customers, such as Respondents TCL, and others, such as, *e.g.*, application companies, application developers, retailers, and end-users. MediaTek induces and contributes to its customers' (such as TCL's) directly infringing acts, including those customers' importation, sales, use, and offers for sale of articles that are covered by the Asserted Patents. For example, MediaTek performed demonstrations of "video streaming" to a "smart TV" at "MediaTek's booth, 3601 in the Tech West Pavilion" at the Consumer Electronics Show (CES) trade show in Las Vegas from January 7th to 10th, 2020. Exhibit 72, TV Technology Article (https://www.tvtechnology.com/news/5g-powers-wireless-8k-video-streaming-demo-at-ces-2020, accessed September 6, 2020). Also, for example, on information and belief, retailers such as

Best Buy provide floor demonstrations of the operation of televisions containing MediaTek components that infringe. Also for example, on information and belief, when an end-user connects televisions containing MediaTek components that infringe to the internet, such televisions download and/or activate software that facilitate the operation of the infringing systems and methods of those televisions and components thereof.

5.26.   Upon information and belief, MediaTek had, and has, knowledge of, or was willfully blind to, the Asserted Patents. For example, MediaTek has knowledge of the Asserted Patents as a result of the filing and/or service of this Complaint and/or the Related Litigation. Additionally, prior to, or contemporaneous with, the filing of this Complaint, MediaTek had actual knowledge of the Asserted Patents by way of the Related Litigation and a notice letter. Exhibit 73 (Letter to MediaTek dated Sept. 8, 2020). Furthermore, prior to the filing of this Complaint, MediaTek had actual knowledge of at least the patents listed on the DivX Branding Guidelines, which includes at least one of the Asserted Patents, the '297 Patent. Also, as specified in Section VIII below, prior to the filing of this Complaint, MediaTek had actual knowledge of the Asserted Patents through DivX's patent infringement action before the United States District Court for the District of Delaware against MediaTek.

5.27.   Upon information and belief, MediaTek knowingly induced and induces customers' (including TCL's) directly infringing acts with specific intent to encourage infringement. For example, MediaTek actively induces TCL's direct infringement by contracting with and encouraging TCL to offer to sell, sell, and import in the United States products that infringe the Asserted Patents. MediaTek knows, or should have known, that these induced acts directly infringe the Asserted Patents because of, for example, the infringement allegations and

evidence provided in connection with this Complaint, and the aforementioned district court complaint and notice letters to MediaTek.

5.28.    MediaTek also contributes to the foregoing infringement by TCL by offering to sell, selling, and importing in the United States MediaTek video processing devices and components that constitute a material part of the articles that practice the Asserted Patents. MediaTek knows, or should have known, that such MediaTek video processing devices and components have no substantial non-infringing uses, are a material part of the invention of each Asserted Patent, especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

5.29.    Furthermore, MediaTek has actively induced and contributed to, and continues to actively induce and contribute to the infringement of consumers and/or end users by the automatic download and/or activation of certain software to the video processing devices and digital smart televisions containing the same when the devices are, *e.g.*, turned on and connected to the internet for the first time, and by encouraging third party application developers to create software that enables the infringing behavior of MediaTek's video processing devices, components thereof, and digital smart televisions containing the same. For example, MediaTek's own press releases state that "[v]ideo streaming is…a principle use of smart TVs at home" and "MediaTek is working with some of the world's most popular streaming services such as YouTube…" Exhibit 74, MediaTek Press Release  (https://www.mediatek.com/blog/why-is-new-av1-video-streaming-such-a-game-changer?fbclid=IwAR2N9fu_QWcRH5RJ-9fLx2NfcyNlE_tD_WiD6rn3n68sBQx4HveXlri2Vz o, accessed September 6, 2020).

### 5.    Realtek

5.30.    On information and belief, Realtek contributes to and induces direct infringement by others, including Realtek's customers, Respondents LG, and others, such as, *e.g.*, application

companies, application developers, retailers, and end-users. Realtek induces and contributes to its customers' (such as LG's) directly infringing acts, including those customers' importation, sales, use, and offers for sale of articles that are covered by the Asserted Patents. For example, Realtek "[d]emonstrate[d] [f]ull [r]ange of [c]onnectivity, [m]ultimedia, and [c]onsumer [e]lectronics [s]olutions at 2020 CES" trade show in Las Vegas from January 7th to 10th, 2020. Exhibit 75, Realtek Press Release (http://www.realtek.com/en/press-room/news-releases/item/realtek-to-demonstrate-full-range-of-connectivity-multimedia-and-consumer-electronics-solutions-at-2020-ces, accessed September 6, 2020) (noting that "[t]he Realtek RTD2851M is a 4K TV SoC" and with companion RTD2893 can offer "a true 8K TV solution that features 8K60Hz decoding with AV1, VP9, and HEVC decoders, 12GHz HDMI2.1 input capable of receiving an 8K data stream, super resolution, 8K noise reduction, and all related 8K picture quality processes"). Also, for example, on information and belief, retailers such as Best Buy provide floor demonstrations of the operation of televisions containing Realtek components that infringe. Also for example, on information and belief, when an end-user connects televisions containing Realtek components that infringe to the internet, such televisions download and/or activate software that facilitate the operation of the infringing systems and methods of those televisions and components thereof.

5.31.   Upon information and belief, Realtek had, and has, knowledge of, or was willfully blind to, the Asserted Patents. For example, Realtek has knowledge of the Asserted Patents as a result of the filing and/or service of this Complaint and/or the Related Litigation. Additionally, prior to, or contemporaneous with, the filing of this Complaint, Realtek had actual knowledge of the Asserted Patents by way of the Related Litigation and a notice letter. Exhibit 76 (Letter to Realtek dated Sept. 8, 2020). Furthermore, prior to the filing of this Complaint, Realtek had actual knowledge of at least the patents listed on the DivX Branding Guidelines, which includes at least

one of the Asserted Patents, the '297 Patent. Also, as specified in Section VIII below, prior to the filing of this Complaint, Realtek had actual knowledge of the Asserted Patents through DivX's patent infringement action before the United States District Court for the District of Delaware against Realtek.

5.32.   Upon information and belief, Realtek knowingly induced and induces LG and TCL's directly infringing acts with specific intent to encourage infringement. For example, Realtek actively induces LG and TCL's direct infringement by contracting with and encouraging them to offer to sell, sell, and import in the United States products that infringe the Asserted Patents. Realtek knows, or should have known, that these induced acts directly infringe the Asserted Patents because of, for example, the infringement allegations and evidence provided in connection with this Complaint, and the aforementioned district court complaint and notice letters to Realtek.

5.33.   Realtek also contributes to the foregoing infringement by LG and TCL by offering to sell, selling, and importing in the United States Realtek video processing devices and components that constitute a material part of the articles that practice the Asserted Patents. Realtek knows, or should have known, that such Realtek video processing devices and components have no substantial non-infringing uses, are a material part of the invention of each Asserted Patent, especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

5.34.   Furthermore, Realtek has actively induced and contributed to, and continues to actively induce and contribute to the infringement of consumers and/or end users by the automatic download and/or activation of certain software to the video processing devices and digital smart televisions containing the same when the devices are, *e.g.*, turned on and connected to the internet

46

for the first time, and by encouraging third party application developers to create software that enables the infringing behavior of Realtek's video processing devices, components thereof, and digital smart televisions containing the same. For example, according to its own annual report published April 28, 2020, Realtek "is primarily engaged in researching, developing, manufacturing, selling of various integrated circuits and related application software." Exhibit 77 at 191 (https://www.realtek.com/images/ar/Annual_Report_2019__20200519.pdf, accessed September 6, 2020) (also noting that "…Smart TVs will become mainstream products this year, … Realtek will promote its products in key markets while providing customers with comprehensive solutions[.]" *id.* at 76-77).

### C.  Specific Instances of Importation and Sale

#### 1.  Samsung

5.35.  On information and belief, Samsung is importing, selling for importation, and/or selling within the United States after importation, certain video processing devices, components thereof, and digital smart televisions containing the same. The specific instance set forth below (the "Samsung Representative Article") is a representative example of Samsung's unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products ("Samsung Accused Products").

| Product Name | Model No. | Platform | Processor |
|---|---|---|---|
| Samsung 65" Class Q90R QLED Smart 4K QLED TV | QN65Q90RAFXZA | Tizen | Samsung Quantum Processor 4K |

5.36.  Prior to filing the Complaint, representatives for Complainant purchased in the United States the Samsung Representative Article. Pursuant to Commission Rule 210.12(a)(9)(x), Exhibit 78 (Samsung 65" Class Q90R QLED Smart 4K QLED TV) includes a series of photographs of the Samsung Representative Article and a receipt of purchase.

5.37.    Pursuant to Commission Rule 210.12(a)(3), Exhibit 78 (Samsung 65" Class Q90R QLED Smart 4K QLED TV) also contains a receipt of purchase of the Samsung Representative Article and photographs of the Samsung Representative Article's packaging labels, stating that it was "Made in Mexico." Accordingly, the Samsung Representative Article was imported into the United States.

5.38.    Thus, Samsung is violating Section 337 of the Tariff Act of 1930 by importing, selling for importation, and/or selling within the United States after importation, at least the Samsung Representative Article, as well as other Samsung Accused Products that infringe the Asserted Patents.

### 2.    LG

5.39.    On information and belief, LG is importing, selling for importation, and/or selling within the United States after importation, certain video processing devices, components thereof, and digital smart televisions containing the same. The specific instance set forth below (the "LG Representative Article") is a representative example of LG's unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products ("LG Accused Products").

| Product Name | Model No. | Platform | Processor |
|---|---|---|---|
| LG 43 Inch Class 4K HDR Smart LED TV | 43UM6910PUA | webOS | Realtek Digital Television Board "tv006" incorporating Realtek SoC RTD287o (also packaged as LGE9551) |

5.40.    Prior to filing the Complaint, representatives for Complainant purchased in the United States the LG Representative Article. Pursuant to Commission Rule 210.12(a)(9)(x),

Exhibit 79 (LG 43 Inch Class 4K HDR Smart LED TV) includes a series of photographs of the LG Representative Article and a receipt of purchase.

5.41.   Pursuant to Commission Rule 210.12(a)(3), Exhibit 79 (LG 43 Inch Class 4K HDR Smart LED TV) also contains a receipt of purchase of the LG Representative Article and photographs of the LG Representative Article's packaging labels, stating that it was "Made in Mexico." Accordingly, the LG Representative Article was imported into the United States.

5.42.   Thus, LG is violating Section 337 of the Tariff Act of 1930 by importing, selling for importation, and/or selling within the United States after importation, at least the LG Representative Article, as well as other LG Accused Products that infringe the Asserted Patents.

### 3.   TCL

5.43.   On information and belief, TCL is importing, selling for importation, and/or selling within the United States after importation, certain video processing devices, components thereof, and digital smart televisions containing the same. The specific instance set forth below (the "TCL Representative Article") is a representative example of TCL's unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products ("TCL Accused Products").

| Product Name | Model No. | Platform | Processor |
|---|---|---|---|
| TCL 43" CLASS 4-SERIES 4K UHD HDR ROKU SMART TV | 43S425 | Roku | MediaTek SoC Model No. MSDURN1801T |

5.44.   Prior to filing the Complaint, representatives for Complainant purchased in the United States the TCL Representative Article. Pursuant to Commission Rule 210.12(a)(9)(x), Exhibit 80 (TCL 43" CLASS 4-SERIES 4K UHD HDR ROKU SMART TV) includes a copy of the receipt for purchase in the United States of the TCL Representative Article and a series of photographs of the product.

5.45.   Pursuant to Commission Rule 210.12(a)(3), Exhibit 80 (TCL 43" CLASS 4-SERIES 4K UHD HDR ROKU SMART TV) also contains a receipt of purchase of the TCL Representative Article. Photographs of the packaging labels of the TCL Representative Article in Exhibit 80 (TCL 43" CLASS 4-SERIES 4K UHD HDR ROKU SMART TV) state that the TCL Representative Article was "Manufactured in Vietnam." Accordingly, the TCL Representative Article was imported into the United States.

5.46.   Thus, TCL is violating Section 337 of the Tariff Act of 1930 by importing, selling for importation, and/or selling within the United States after importation, at least the TCL Representative Article, as well as other TCL Accused Products that infringe the Asserted Patents.

### 4.   MediaTek

5.47.   On information and belief, MediaTek is importing, selling for importation, and/or selling within the United States after importation, certain video processing devices and components used by Respondents and other customers. The specific instance set forth below (the "MediaTek Representative Article") is a representative example of MediaTek's unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products ("MediaTek Accused Products").

5.48.   Prior to filing the Complaint, representatives for Complainant purchased a digital smart TV in the United States that incorporates the MediaTek Representative Article, comprising a printed circuit board assembly incorporating MediaTek SoC Model No. MSDURN1801T, and associated firmware and/or software. Pursuant to Commission Rule 210.12(a)(9)(x), Exhibit 80 includes a copy of receipt for purchase in the United States of the digital smart TV and a series of photographs of the MediaTek Representative Article.

5.49.   Pursuant to Commission Rule 210.12(a)(3), Exhibit 80 also contains a receipt of purchases of a smart TV containing the MediaTek Representative Article made and/or assembled

in a foreign country. Labels on Exhibit 80 state that the smart TV was "Made in Mexico." Furthermore, on information and belief, MediaTek sources their integrated circuits from locations outside of the United States. For example, according to its own annual report published on April 30, 2020, MediaTek outsources its fabrication of its integrated circuits to foundries such as Taiwan Semiconductor Manufacturing Corporation (TSMC) and United Microelectronics Corporation (UMC), both of which are based in Taiwan. Exhibit 81, MediaTek Annual Report at 65 (https://cdn-www.mediatek.com/posts/2019-MediaTek-Annual-Report.pdf, accessed September 6, 2020). Accordingly, the MediaTek Representative Article was imported into the United States.

5.50.    Thus, MediaTek is violating Section 337 of the Tariff Act of 1930 by importing, selling for importation, and/or selling within the United States after importation, at least the MediaTek Representative Article, as well as other MediaTek Accused Products that infringe the Asserted Patents.

### 5.    Realtek

5.51.    On information and belief, Realtek is importing, selling for importation, and/or selling within the United States after importation, certain video processing devices and components used by Respondents and other customers. The specific instance set forth below (the "Realtek Representative Article") is a representative example of Realtek's unlawful importation, sale for importation, and/or sale within the United States after importation of infringing products ("Realtek Accused Products").

5.52.    Prior to filing the Complaint, representatives for Complainant purchased a digital smart TV in the United States, comprising a Realtek Digital Television Board assembly "tv006" and Realtek RTD287o integrated circuit (packaged and marked as LGE9551), and associated firmware and/or software. Pursuant to Commission Rule 210.12(a)(9)(x), Exhibit 79 includes a

copy of receipt for purchase in the United States of the digital smart TV and a series of photographs of the Realtek Representative Article.

5.53.    Pursuant to Commission Rule 210.12(a)(3), Exhibit 79 also contains a receipt of purchases of the digital smart TV containing the Realtek Representative Article made and/or assembled in a foreign country. Labels on Exhibit 79 state that the digital smart TV is "Assembled in Mexico." Furthermore, on information and belief, Realtek sources their integrated circuits from locations outside of the United States. For example, according to the Nikkei Asian Review, Taiwan-based "UMC's clients include…Realtek." Exhibit 82, Nikkei Asian Review, "Exclusive: Taiwan's UMC to scale down chip project with Chinese partner" (Jan. 4, 2019) (https://asia.nikkei.com/Economy/Trade-war/Exclusive-Taiwan-s-UMC-to-scale-down-chip-project-with-Chinese-partner, accessed September 6, 2020). Accordingly, the Realtek Representative Article was imported into the United States.

5.54.    Thus, Realtek is violating Section 337 of the Tariff Act of 1930 by importing, selling for importation, and/or selling within the United States after importation, at least the Realtek Representative Article, as well as other Realtek Accused Products that infringe the Asserted Patents.

## VI.    HARMONIZED TARIFF SCHEDULE ITEM NUMBERS

6.1.    On information and belief, the Harmonized Tariff Schedule of the United States item numbers under which the infringing televisions and components thereof may be imported into the United States may be at least HTSUS 8471.49.00 (Other automatic data processing machines entered in the form of systems); 8471.50.01 (Processing units other than those of subheading 8471.41 or 8471.49, whether or not containing in the same housing one or two of the following types of unit: storage units, input units, output units); 8525 (Transmission apparatus for radio-broadcasting or television, whether or not incorporating reception apparatus or sound recording or

reproducing apparatus); 8529.10.21 (Television); 8529.90 (Other printed circuit assemblies of television apparatus); 8541.50.00 (Other semiconductor devices); 8542 (Electronic integrated circuits); and 8542.31.00 (Processors and controllers, whether or not combined with memories, converters, logic circuits, amplifiers, clock and timing circuits, or other circuits). These classifications are intended for illustration only and are not intended to be restrictive of the accused products or of products subject to the relief requested.

## VII.   THE DOMESTIC INDUSTRY

7.1.   In accordance with Section 337(a)(2) and (a)(3), a domestic industry exists in the United States in connection with each of the Asserted Patents comprising significant investments in (i) plant and equipment and (ii) labor or capital in the United States in products that practice the Asserted Patents, and substantial investments in exploitation of the Asserted Patents, as the result of the domestic activities of DivX's licensee, Element. Pursuant to Commission Rule 210.12(a)(9)(iv), Complainant has attached as Confidential Exhibit 83 a copy of the license agreement between DivX and Element.

7.2.   Element is an American electronics company that produces and markets televisions. Exhibit 84, Element Website (https://elementelectronics.com/our-company/, accessed September 7, 2020). In 2014, Element established a mass-production TV assembly factory in Winnsboro, South Carolina, which is the only factory of its kind in the United States. *Id.* At the Winnsboro factory, Element assembles certain smart TVs (the "Protected Articles"). *See id.*

7.3.   Element has made, and continues to make, significant and substantial domestic investments in connection with the Protected Articles. *See, e.g.*, Confidential Exhibit 85, at ¶¶ 24-36. As a result of these investments, a domestic industry in the United States exists at least under Section 337(a)(3)(A) due to Element's significant investment in plant and equipment, and under Section 337(a)(3)(B) due to Element's significant employment of labor and capital.

7.4.    In the alternative, such a domestic industry is in the process of being established, as Element is actively engaged in the steps leading to the exploitation of its intellectual property rights, and there is a significant likelihood that an industry will be established in the future. *See, e.g.*, Confidential Exhibit 85, at ¶¶ 8-22, 27, 34-35.

### A.    The Economic Prong of the Domestic Industry Requirement Is Satisfied

7.5.    Pursuant to Commission Rule 210.12(a)(6), a domestic industry under subparts (A) and (B) of Section 337(a)(3) exists by virtue of the activities within the United States of DivX's licensee, Element, including manufacture, assembly, research, product development, and application engineering with respect to the Protected Articles. *E.g.*, Confidential Exhibit 85, ¶¶ 5-36. In the alternative, such a domestic industry is in the process of being established, as Element is actively engaged in the steps leading to the exploitation of its intellectual property rights, and there is a significant likelihood that an industry will be established in the future. *E.g.*, Confidential Exhibit 85, ¶¶ 8-22, 27, 34-35.

7.6.    The Protected Articles in this Investigation are assembled at Element's Winnsboro, South Carolina facility.  *See* Exhibit 84.  Element's (i) significant investment plant and equipment, and (ii) significant employment of labor or capital, with respect to the Protected Articles, is described in greater detail in Confidential Exhibit 85. Visual representations of example Protected Articles are shown in Exhibit 86.

7.7.    In the alternative, a domestic industry is in the process of being established under subparts (A) and (B) of Section 337(a)(3) with respect to Element's activities in the United States, including domestic investments in existing products and products scheduled for release in the future. *E.g.*, Confidential Exhibit 85, ¶¶ 8-22, 27, 34-35. Thus, in addition to Element's already significant existing domestic industry, there is a significant likelihood that the domestic industry requirement will also be satisfied in the future.

**B.      The Technical Prong of the Domestic Industry Requirement Is Satisfied**

7.8.    On information and belief, Protected Articles assembled by Element practice each of the Asserted Patents.

7.9.    Pursuant to Commission Rule 210.12(a)(9)(ix), claim charts and explanatory information for an exemplary Protected Article that currently practices at least one exemplary claim of each Asserted Patent accompany this Complaint. *See* Confidential Exhibit 87 (Domestic Industry Claim Chart for '297 Patent), Confidential Exhibit 88 (Domestic Industry Claim Chart for '486 Patent), Confidential Exhibit 89 (Domestic Industry Claim Chart for '141 Patent), Confidential Exhibit 90 (Domestic Industry Claim Chart for '749 Patent). Pursuant to Commission Rule 210.12(a)(9)(x), Exhibit 86 contains visual representations of representative Protected Articles.

**1.      Practice of the '297 Patent**

7.10.   Pursuant to Commission Rule 210.12(a)(9)(ix), Exhibit 87 is a claim chart that discloses how Protected Articles assembled by Element practice at least one exemplary claim of the '297 Patent.

**2.      Practice of the '486 Patent**

7.11.   Pursuant to Commission Rule 210.12(a)(9)(ix), Exhibit 88 is a claim chart that discloses how Protected Articles assembled by Element practice at least one exemplary claim of the '486 Patent.

**3.      Practice of the '141 Patent**

7.12.   Pursuant to Commission Rule 210.12(a)(9)(ix), Exhibit 89 is a claim chart that discloses how Protected Articles assembled by Element practice at least one exemplary claim of the '141 Patent.

### 4. Practice of the '749 Patent

7.13.    Pursuant to Commission Rule 210.12(a)(9)(ix), Exhibit 90 is a claim chart that discloses how Protected Articles assembled by Element practice at least one exemplary claim of the '749 Patent.

## VIII.  RELATED LITIGATION

8.1.    Complainant is also asserting all Asserted Patents against one or more of the proposed Respondents in district court proceedings before the United States District Court for the District of Delaware, and the United States District Court for the Eastern District of Texas, styled as: *DivX, LLC v. LG Electronics Inc., et al.*, 1:20-cv-01202 (D. Del.); *DivX, LLC v. MediaTek Inc., et al.*, 1:20-cv-01203 (D. Del.); *DivX, LLC v. Samsung Electronics Co., Ltd., et al.*, 2:20-cv-00301 (E.D. Tex.) ("Related Litigation"). No responsive pleading has been filed in any of these district court proceedings. In addition, for the sake of completeness, while not necessarily the same subject matter under Commission Rule 210.12(a)(5), DivX has asserted the '486 Patent in two actions in the Central District of California, against parties that are not proposed Respondents in this Investigation: (1) *DivX, LLC v. Netflix, Inc.*, 2:19-cv-01602 (C.D. Cal.); and (2) *DivX, LLC v. Hulu, LLC*, 2:19-cv-01606 (C.D. Cal.).

8.2.    Pursuant to Commission Rule 210.12(a)(5), DivX states that, other than the litigations specified above, to DivX's knowledge, the alleged unfair methods of competition and unfair acts, or the subject matter thereof, are not, and have not been, the subject of any court or agency litigation.

## IX.  RELIEF REQUESTED

9.1.    WHEREFORE, by reason of the foregoing, Complainant respectfully requests that the U.S. International Trade Commission:

(a)     Institute an immediate investigation pursuant to Section 337 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1337(a)(1)(B)(i) and (b)(1) with respect to violations of Section 337 based upon the importation, sale for importation, and sale after importation into the United States by the proposed Respondents of certain video processing devices, components thereof, and digital smart televisions containing the same, that infringe one or more of the asserted claims of U.S. Patent Nos. 8,832,297; 10,212,486; 10,412,141; and 10,484,749.

(b)     Find a violation of Section 337 based on said unlawful acts;

(c)     Issue a permanent limited exclusion order under 19 U.S.C. § 1337(d)(1) barring from entry into the United States all infringing video processing devices, components thereof, and digital smart televisions containing the same manufactured by or on behalf of, or imported by or on behalf of, each of the Respondents or their affiliates;

(d)     Issue permanent cease-and-desist orders, under 19 U.S.C. § 1337(f), directing each respondent to cease and desist from the sale for importation, importation, sale after importation, distribution, offering for sale, promoting, marketing, advertising, testing, demonstrating, warehousing inventory for distribution, solicitation of sales, programming, repairing, maintaining, using, transferring, and other commercial activity relating to infringing video processing devices, components thereof, and digital smart televisions containing the same;

(e)     Impose a bond upon Respondents who continue to import infringing articles, including infringing video processing devices, components thereof, and digital smart televisions containing the same, during the 60 day Presidential review period per 19 U.S.C. §1337(j); and

(f)     Grant such other and further relief as the Commission deems just and proper based on the facts determined by the investigation and the authority of the Commission.

Dated: September 10, 2020

Respectfully Submitted,

_____
Michael T. Renaud
James W. Wodarski
Adam S. Rizk
Marguerite McConihe
Matthew A. Karambelas
Jessica L. Perry
Nana Liu
MINTZ LEVIN COHN FERRIS
 GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 02111
Tel: (617) 542-6000
Fax: (617) 542-2241
www.mintz.com


Aarti Shah
MINTZ LEVIN COHN FERRIS
 GLOVSKY AND POPEO PC
701 Pennsylvania Avenue NW
Suite 900
Washington, DC 20004
Tel: (202) 434-7300
Fax: (202) 434-7400

*Counsel for Complainant DivX, LLC*

## VERIFICATION OF COMPLAINT

I, Noel Egnatios declare, in accordance with 19 C.F.R. § 210.12(a)(1), as follows:

1. I am General Counsel at DivX, LLC and I am duly authorized to sign this Complaint;

2. I have read the Complaint and I am aware of its contents;

3. The Complaint is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of the investigation or related proceeding;

4. To the best of my knowledge, information and belief founded upon reasonable inquiry, claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

5. The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 10, 2020

Noel Egnatios
General Counsel
DivX, LLC