# EXHIBIT A

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

**UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.**

**Before the Honorable MaryJoan McNamara
Administrative Law Judge**

| | |
|---|---|
| **In the Matter of**<br><br>**CERTAIN VIDEO PROCESSING DEVICES, COMPONENTS THEREOF, AND DIGITAL SMART TELEVISIONS CONTAINING THE SAME** | **Investigation No. 337-TA-1222** |

**DECLARATION OF THEODORE J. ANGELIS IN SUPPORT OF
RESPONDENT REALTEK SEMICONDUCTOR CORPORATION'S
<u>MOTION FOR SANCTIONS</u>**

I, Theodore J. Angelis, declare as follows:

1. I am a lawyer with K&L Gates LLP and served as counsel for Realtek Semiconductor Corporation ("Realtek") in Investigation No. 337-TA-1222.

2. I have personal knowledge of the facts set forth in this declaration.

3. On October 30, 2020, Realtek served responses to DivX's interrogatories. In those responses, Realtek provided notice that "DivX's complaint alleged infringement against Realtek based on assertions that a reasonable pre-filing investigation would have revealed to be incorrect." Attached hereto as **Exhibit 1** is a true and correct copy of Realtek's response to Interrogatory No. 1, which explains why DivX's claims are frivolous.

4. On November 17, 2020, Realtek sent a detailed letter explaining why DivX's "complaint rests upon false statements and lacks the evidentiary support that Commission Rule 210.4(c) requires." Attached hereto as **Exhibit 2** is a true and correct copy of Realtek's November 17, 2020 notice letter. Attached hereto as **Exhibit 3** is a true and correct copy of DivX's November 24, 2020 response letter.

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

5.      Among the reasons DivX gave for pursuing claims against Realtek, for infringement of the '297 and '141 patents, is that  , which might infringe.  When it made those allegations, however, DivX knew that ███████████████████████.  Indeed, on December 23, 2020, █████████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████"  A true and correct copy of ████████ is attached hereto as **Exhibit 4**.

6.      DivX refused to dismiss its claims for infringement of the '141 and '297 patents even though Realtek continued to warn DivX—for example during meet and confer sessions— that it had no basis for pursuing those claims.

7.      DivX's actions forced Realtek to incur significant fees and costs defending against those claims.  For example, Realtek took a leading role in defending against the claims in the '297 and '141 patents, including arguing claim terms from the '141 patent at the February 11 *Markman* hearing, which were the subject of extensive argument and discussion with the ALJ.

8.      DivX finally agreed, on February 23, 2021, to dismiss its claims against Realtek for infringement of the '297 and '141 patents.  Realtek did not oppose termination, but noted that its "non-opposition is without prejudice to requesting relief under Commission Rules 210.4 and 210.25."  A true and correct copy of Realtek's email is attached hereto as **Exhibit 5**.

9.      In that email, Realtek once again emphasized its intention to pursue sanctions, if DivX refused to dismiss its claims.  Realtek intended to pursue sanctions, not only because of the baselessness of the asserted claims, but also because of DivX's actions during settlement discussions that had recently occurred, especially in December 2020 and February 2021.

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

10.     In particular, on December 18, 2020, outside counsel for DivX and Realtek held a settlement conference.  I attended that conference, as did my colleague Jay Chiu.  Outside counsel Adam Rizk was the primary speaker for DivX.  During that conference, ████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

11.     Counsel for DivX stated that ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████.

12.     The meeting became heated at this point, when it became clear that DivX was seeking to ████████████████████████████████████████████

████████████████████████████████████████████████████████

Realtek strongly rejected and opposed DivX's efforts to ████████████████████

████████████████████

13.     Counsel for DivX, at that point, admitted that he understood that Realtek was unwilling to pay for a license, understood Realtek's position that the action against it was frivolous, and understood that Realtek would be seeking to recover its defense costs.  DivX, in turn, threatened to seek sanctions and defense costs against Realtek.  We responded that DivX had failed

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

to show it had any basis for its claims, so Realtek would continue to fight the claims and pursue recovery of its fees and costs.

14.     In February 2021, DivX compounded and further revealed its sanctionable conduct during additional settlement discussions.  In particular, DivX asked for a call, during which it offered to ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████

15.     Realtek responded that it would agree to ███████████ only if it could bring its sanctions motion against DivX for DivX's improper actions.  Realtek even offered to allow both sides to bring their respective motions, if DivX believed it could justify seeking sanctions.

16.     DivX refused, and it continued forward with its claims until the eve of the hearing, forcing Realtek to incur millions of dollars in attorneys' fees and costs.  On the eve of the evidentiary hearing and after DivX had misused the ITC action to improperly obtain discovery, DivX once again offered to ████████████████████████████████████████████

████████████████████████████████  Realtek again refused.  Nonetheless, DivX dismissed all claims against Realtek at, literally, the last possible minute.  It indicated late in the day on Saturday, July 3, 2021, that it would seek to withdraw all claims against Realtek and filed its motion on July 4, 2021, just before the hearing was set to begin on July 6.

17.     The discussion above regarding the frivolousness of DivX's claims focused on the '297 and '141 patents.  The claims related to alleged infringement of the DRM patents—the '486 patent and the '749 patent—were equally frivolous and were likewise brought for the improper purpose of ████████████████████████████████████████████████████████

███████████████████████

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

18.     Realtek addressed the baselessness of DivX's claims related to alleged infringement of the '486 and '749 patents in its October 30 discovery responses (Exhibit 1) and in its November 17, 2020 letter (Exhibit 2).  DivX's justification for its claims again focused on speculation related to demo boards Realtek displayed at the CES show in Law Vegas (Exhibit 3). Discovery further confirmed that the demo boards shown at CES did not have any of the accused functionality.  Attached hereto as **Exhibit 6** is a true and correct excerpt of Realtek's Fourth Supplemental Responses to DivX's First Interrogatories confirming that the demo boards in question " ███████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████████ . Yet DivX still refused to dismiss its claims.

19.     Realtek therefore prepared and filed, on March 7, 2021, a Rule 11 motion in the co-pending District Court case.  A true and correct copy of that motion is attached hereto as **Exhibit 7**.  After Realtek served DivX with its Rule 11 motion in the district court proceeding, DivX requested and received a stay of the District Court case, over Realtek's opposition.  DivX's unusual request to stay *its own* lawsuit—which it had voluntarily chosen to initiate contemporaneously with this Investigation—was evidently driven by DivX's desire to avoid having Realtek's Rule 11 motion heard and exposing that DivX pursued its baseless claims for an improper purpose.

20.     After the ALJ's March 12, 2021 claim construction ruling, in Order No. 40, there was no doubt that DivX's claims against Realtek were baseless. DivX, however, did not abandon its claims for infringement of the DRM patents.  Instead, DivX improperly pushed forward with the case and used Dr. Reinman's expert report, served on April 8, 2021, to abandon its ██████ theory and assert a previously undisclosed theory.  The timing of this new theory was not an

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

accident.  On April 6, 2021, Respondents had sent a sanctions notice, pursuant to Commission

Rule 210.4(d)(1)(i) and 210.4(g), informing DivX of the intention to seek sanctions.  A true and

correct copy of that letter is attached hereto as **Exhibit 8**.  DivX's new ███████ theory was

DivX's "defense" to the Respondents' renewed showing that DivX's contentions for the

deciphering limitation were frivolous.  Attached hereto as **Exhibit 9** is a true and correct copy of

DivX's response to Respondents' notice, which (for the first time) relied on ███████ to

justify DivX's now-frivolous claims.

I declare under the penalty of perjury of the laws of the United States that the information

in this declaration is true and correct to the best of my knowledge.

Dated: October 4, 2021                          */s/ Theodore J. Angelis*
                                                Theodore J. Angelis

CERTIFICATE OF SERVICE

I hereby certify that copies of the forgoing, DECLARATION OF THEODORE J. ANGELIS IN
SUPPORT OF RESPONDENT REALTEK SEMICONDUCTOR CORPORATION'S MOTION
FOR SANCTIONS, has been served upon the following parties as indicated below on this 4th
day of October, 2021.

| | |
|---|---|
| The Honorable Lisa R. Barton<br>Secretary to the Commission<br>U.S. International Trade Commission<br>500 E. Street, S.W.<br>Washington, D.C. 20436 | [X] EDIS Electronic Filing<br>[ ] Via Hand Delivery<br>[ ] Via Overnight Carrier<br>[ ] Via Electronic Mail<br>[ ] Via U.S. First Class Mail |
| The Honorable MaryJoan McNamara<br>Administrative Law Judge<br>**U.S. International Trade Commission**<br>500 E. Street, S.W., Room 317<br>Washington, DC 20436<br>McNamara337@usitc.gov | [ ] Via Hand Delivery<br>[ ] Via Overnight Carrier<br>[X] Via Electronic Mail<br>[ ] Via File Transfer Protocol (FTP)<br>[ ] Via U.S. First Class Mail |
| Adam S. Rizk<br>**MINTZ LEVIN COHEN FERRIS GLOVSKY AND POPEO PC**<br>One Financial Center<br>Boston, MA 02111<br><br>Email: DivX-ITC@mintz.com<br><br>Counsel for Complainant: DivX, LLC | [ ] Via Hand Delivery<br>[ ] Via Overnight Carrier<br>[X] Via Electronic Mail<br>[ ] Via File Transfer Protocol (FTP)<br>[ ] Via U.S. First Class Mail |
| Lyle B. Vander Schaaf<br>**BRINKS GILSON & LIONE**<br>1775 Pennsylvania Avenue, NW<br>Suite 900<br>Washington, DC 20006<br>Tel: (202) 296-8700<br>Fax: (202) 296-8701<br><br>Email: TCL-1222@brinksgilson.com<br>Email: TCL-1222@crowell.com<br>Email: jeremy.peterson@pvuslaw.com | [ ] Via Hand Delivery<br>[ ] Via Overnight Carrier<br>[X] Via Electronic Mail<br>[ ] Via File Transfer Protocol (FTP)<br>[ ] Via U.S. First Class Mail |

| | |
|---|---|
| Counsel for Respondents: TCL Corporation, TCL Technology Group Corporation, TCL Electronics Holdings Limited, TTE Technology, Inc., Shenzhen TCL New Technologies Co. Ltd., TCL King Electrical Appliances (Huizhou) Co. Ltd., TCL MOKA International Limited, and TCL Smart Device (Vietnam) Co., Ltd. | |

/s/ *Michael D. France*
Michael D. France

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 1

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON DC

Before the Honorable MaryJoan McNamara
Administrative Law Judge

| | |
|---|---|
| In the Matter of<br><br>CERTAIN VIDEO PROCESSING<br>DEVICES, COMPONENTS THEREOF,<br>AND DIGITAL SMART TELEVISIONS<br>CONTAINING SAME | Investigation No. 337-TA-1222 |

**RESPONDENT REALTEK SEMICONDUCTOR CORP.'S OBJECTIONS AND
RESPONSES TO COMPLAINANT DIVX, LLC'S FIRST SET OF INTERROGATORIES
TO RESPONDENT REALTEK SEMICONDUCTOR CORP. (NOS. 1-39)**

Pursuant to 19 C.F.R. §§ 210.27 and 210.29, Respondent Realtek Semiconductor Corp. ("Realtek") hereby objects and responds to Complainant DivX, LLC's ("DivX") First Set of Interrogatories to Respondent Realtek Semiconductor Corp., Nos. 1-39 ("Interrogatories").

## PRELIMINARY STATEMENT

1.    Realtek provides these objections and responses without prejudice to its right to assert additional objections and amend or supplement any or all of the information contained in its responses as additional facts are ascertained, analyses are made, research is completed, and contentions are asserted.

2.    Realtek's objections and responses herein are made without waiving or in any way intending to waive, and fully preserving:

a.    All questions as to competency, relevancy, materiality, privilege, and admissibility as evidence, for any purpose, the responses herein or the subject matter of those responses, in any part of this Investigation, including the hearing, or in any other action;

seems extensive information that goes beyond the information necessary to identify a person, entity, document, product, or thing.  Realtek further objects to the extent it seeks information that is not within Realtek's possession, custody, or control.

20.     Realtek objects to the definition of "Person" as overly broad and unduly burdensome, and seeking information that is neither relevant to the claims or defenses in this Investigation nor reasonably calculated to lead to the discovery of admissible evidence because it seeks information regarding a broad range of entities or individuals associated with that person.  Realtek further objects to the extent it seeks information that is not within Realtek's possession, custody, or control.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each Realtek Product that is an SoC. Include in Your identification, for each SoC, all unique identifiers used by Realtek and/or Third Parties to differentiate each such SoC from other Realtek Products, including without limitation, a description of the nomenclature of how each identifier relates to the product family, product generation, product series, product type, version number, and model year, and at least the following information: (a) the product family; (b) the commercial name; (c) the model number; (d) the model year; and (e) the internal code name, in the format shown in the exemplary table below:

| Product Family | Commercial Name | Model Number | Model Year | Internal Codename |
|---|---|---|---|---|
| (e.g., TV system-on-chip) | (e.g., LG Quad Core Processor) | (e.g., LGE9551-AS2/ Realtek RTD287o) | (e.g., 2017) | |

### RESPONSE TO INTERROGATORY NO. 1:

Realtek incorporates the entirety of its Preliminary Statement and General Objections by reference. Realtek objects to this Interrogatory because Realtek does not provide the products that DivX's complaint identifies as infringing, and DivX does not provide any evidence that it does, making discovery regarding Realtek's actual products impermissible under 19 C.F.R. § 210.27(b), (d). Realtek further objects to this Interrogatory as overly broad, unduly burdensome,

disproportionate, irrelevant to the subject matter of this Investigation, and unlikely to lead to the discovery of admissible evidence because "Realtek Product" is defined to include devices other than those used by the named Respondents in digital smart televisions imported into the United States. ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

   Subject to and without waiving the foregoing objections, Realtek responds as follows:

   DivX's complaint alleges infringement against Realtek based on assertions that a reasonable pre-filing investigation would have revealed to be incorrect. For example, and without limitation, DivX alleges that (1) Realtek provides "client application[s]," (Exhibit 50), "playback application[s]" (Exhibit 55 and Exhibit 65), or "application[s]" (Exhibit 60) that cause a processor to perform recited steps, when DivX knows that other entities, such as Netflix, provide those applications; and (2) Realtek provides a product with "a non-volatile memory storage containing an application for causing the processor to perform steps," when DivX knows that other entities, such as Samsung, provide that memory. DivX's discovery requests ask Realtek to identify all of the SoCs it provides without having made any showing that Realtek's SoCs are sufficient to support any act of infringement. That is improper, not least because Realtek cannot reasonably or meaningfully respond until DivX identifies a theory of infringement that allows Realtek to identify the functionality accused and therefore the actual products accused. DivX's allegations about "Realtek Products" that do not exist, and that any reasonable pre-filing investigation would have made clear do not exist, cannot serve as the basis for a request to identify all of Realtek's SoCs.

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 2

# K&L GATES

Theodore J. Angelis
theo.angelis@klgates.com

T +1 206 370 8101
F +1 206 623 7022

November 17, 2020

**By Email and Overnight Courier**

Michael T. Renaud
Mintz, Levin, Cohn, Ferris, Glovsky, and Popeo, P.C.
One Financial Center
Boston, MA 02111
mtrenaud@mintz.com

Re:     DivX's False Allegations Against Realtek Semiconductor Corp. in *Certain Video Processing Devices, Components Thereof, and Digital Smart Televisions Containing the Same*, Inv. No. 337-TA-1222 (U.S.I.T.C).

Dear Mr. Renaud:

This letter formally notifies DivX, LLC ("DivX"), and its counsel, that DivX's complaint rests upon false statements and lacks the evidentiary support that Commission Rule 210.4(c) requires. Respondent Realtek Semiconductor Corp. ("Realtek") demands that DivX dismiss its claims against Realtek. If it does not, Realtek will ask the ALJ to impose sanctions.

As you know, Commission Rule 210.4(c) requires Complainants to certify that, "to the best of the [certifying] person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [t]he claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law [and] [t]he allegations and other factual contentions have evidentiary support or, if specifically so identified are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." 19 C.F.R. § 210.4(c). "If any portion of a representation is found to be false, frivolous, misleading, or otherwise in violation of paragraph (c), a sanction may be imposed." 19 C.F.R. § 210.4(d).

Here, DivX's claims lack the required "evidentiary support" because they rest upon assertions DivX knows, or should know, to be false. The false allegations are fundamental to DivX's direct and indirect infringement claims against Realtek. Accordingly, DivX's claims against Realtek

lack the required grounding in fact and in law. If DivX refuses to withdraw and dismiss its claims, Realtek will seek sanctions under Commission Rule 210.4(c), (d).

## I.   DivX's False Statements Confirm that It Failed to Conduct an Adequate Pre-Filing Inquiry Required by Law.

Although DivX provided a claim chart for each asserted patent, the claim charts falsely attribute hardware and software components to Realtek that any reasonable, pre-filing inquiry would have revealed Realtek does not provide. DivX's false statements are inexcusable given its long history in the industry and the knowledge gained from its ongoing litigation against Netflix and Hulu involving alleged infringement of one of the same patents. As DivX knows, Realtek sells system-on-a-chip ("SoC") hardware. Yet DivX falsely alleges, without basis, that Realtek provides the streaming applications (such as those offered by Netflix) and the television ("TV") main boards its claims require.

- Realtek does not design or provide the accused TV main boards. The claim charts allege that "Realtek supplies customers such as LG with the design of the entirety of the 'main board' hardware or 'chassis' that is used to run the Realtek supplied software stack." *Id.* at 8. Again, DivX should know, from its long history in the industry and the pre-filing investigation, that Realtek does not design or supply the TV main boards at issue in this investigation, and does not supply any "software stack" of accused applications.

- Realtek does not provide the accused applications. The patents at issue claim an allegedly novel "client application" or "playback application." In a baseless effort to assert infringement, DivX's claim charts allege that "Realtek provides customers, such as LG, a platform of integrated hardware and software that runs video processing tasks used on televisions." *Id.* at 2. Yet DivX knows that Realtek does not provide the accused software applications. Indeed, DivX previously sued Netflix and Hulu for infringement of one of the same patents at issue here, showing that DivX is fully aware that third party software from Netflix, Hulu, and others contains the allegedly infringing functionalities. DivX knows that Realtek does not provide such applications and that its allegations to the contrary are false.

- DivX willfully misrepresents the document it quotes. DivX's claim charts falsely allege that "Realtek provides customers with 'applications,' including 'Ultra High Definition Media Player' and 'OTT Streaming Player.'" *Id.* at 18. These are among the most egregious misstatements in the charts. The "applications" referenced in the quoted document are not software applications, but rather hardware products or implementations that a *third party* could potentially develop using Realtek's general purpose SoC. This is evident from the hardware "applications" the quoted document identifies, such as DTV

Set-top box, and DTV Set-top box with PVR. "Ultra High Definition Media Player," and "OTT Streaming Player" are similarly generic descriptions of potential hardware implementations (or applications) for a general purpose Realtek SoC. In context, it is unmistakably clear that Realtek is not referring to, nor does it provide, a software application of the type required by the claims. DivX knows that Realtek provides no such applications, but it quotes the documents cited in a deliberately misleading way, to create a false impression.

- <u>Realtek does not provide the memory that stores the accused applications</u>. The falsity of DivX's allegations is also illustrated in the allegation that Realtek provides memory modules plainly labeled as coming from a third party:  "[T]he Realtek Product includes the Samsung KLM4G1FETE 4Gb eMMC memory." *Id.* at 23. DivX knows that Realtek does not supply the accused TV main boards or the memory contained therein.

Realtek gave DivX a chance to try to justify its false statements. In particular, Realtek served Interrogatory Nos. 21 to 33, which asked DivX to provide the evidentiary support for its allegations. In response, DivX has refused to provide a single fact to support any of its allegations. *See* Complainant DivX, LLC's Objections and Responses to Realtek's First Set of Interrogatories to Complainant DivX, LLC (Nos. 1-33) at 31-55. That refusal underscores the baselessness of DivX's claims.

Had DivX performed any reasonable pre-suit investigation, it would necessarily have concluded that Realtek does not manufacture, assemble, or provide the TV main board or any other hardware in the accused LG smart television other than the RTD287o SoC. Moreover, Realtek does not provide the accused software applications. Indeed, DivX is well aware that other parties it has already sued for infringement, such as Netflix and Hulu, provide the alleged "software" and "applications" identified in the claim charts. Among other things, DivX knows that Realtek does not provide the "System S/W," "TV System Design," and "Design Infra[Structure]" applications,[1] "uMediaServer,"[2] "webOS" operating system,[3] and streaming applications, including Netflix,[4] "dash.js,"[5] and "parser"[6] alleged to be the accused applications. And, as explained

---

[1] Compl. Pub. Ex. 50 at 3; Pub. Ex. 55 at 3; Pub. Ex. 60 at 3; Pub. Ex. 65 at 3.

[2] Compl. Pub Ex. 50 at 18; Pub. Ex. 55 at 17; Pub. Ex. 60 at 15–16; Pub. Ex. 65 at 17.

[3] Compl. Pub. Ex. 50 at 10, 12, 14–18, 24–27; Pub. Ex. 55 at 9–10, 13–19, 23–25, 30, 35–36, 53–54, 89–90; Pub. Ex. 60 at 9–10, 13–16, 19–21, 28, 30, 45, 81; Pub. Ex. 65 at 9–10, 13–18, 23–25, 29, 35–36, 48–49, 62–63, 91.

[4] Compl. Pub. Ex. 50 at 24, 42–44, 56–58, 61, 69, 81–83, 89, 96; Pub. Ex. 55 at 20–21, 23; Pub. Ex. 60 at 19; Pub. Ex. 65 at 20–21, 23.

[5] *See, e.g.*, Compl. Pub. Ex. 50 at 35–42; Pub. Ex. 60 at 33–42.

3

above, the "Ultra High Definition Media Player" and "OTT Streaming Player" "applications"[7] that DivX falsely characterizes as Realtek software are actually references to accused software products third parties could hypothetically develop.

## II.    DivX's Infringement Allegations Are Baseless, and DivX Must Dismiss its Complaint Against Realtek.

### A.   DivX's Direct Infringement Claims Are Baseless.

DivX alleges that Realtek directly infringes the asserted patents. *See, e.g.*, Compl. ¶¶ 1.10, 3.43. As detailed above, DivX has no basis for that allegation, and it knows those allegations are untrue. Realtek does not provide the "playback device" and associated limitations required by the asserted claims for all four asserted patents, the "client application" and associated limitations required by the '297 patent, or the "non-volatile storage containing a playback application" and associated limitations required by the '486, '141, and '749 patents. DivX's conclusory allegations to the contrary are false, as detailed above.

Therefore, DivX's allegations that Realtek directly infringes any of the four asserted patents are baseless and cannot be maintained consistent with DivX's obligations under Commission Rule 210.4(c). *See Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985) ("It is also well settled that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device."). DivX must immediately dismiss these claims.

### B.   DivX's Indirect Infringement Claims Are Baseless.

DivX's allegations of contributory and induced infringement, *see, e.g.*, Compl. ¶ 5.30, are equally baseless and cannot be maintained consistent with DivX's obligations under Commission Rule 210.4(c).

In order to prove that Realtek induces infringement of any of the asserted patents, DivX must have evidentiary support for its allegation that Realtek actively encouraged infringement, knowing that the acts so induced constituted patent infringement *and* that the encouraging acts actually resulted in direct patent infringement. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016). Here, DivX's conclusory

---

[6] Compl. Pub. Ex. 55 at 29, 35; Pub. Ex. 65 at 29, 35.

[7] Compl. Pub. Ex. 50 at 7, 18–19, 28; Pub. Ex. 55 at 6, 19, 26–27; Pub. Ex. 60 at 6, 16, 22–23; Pub. Ex. 65 at 6, 18–19, 26–27.

allegations fail to offer a sliver of evidentiary support for the allegation that Realtek induces infringement.

      1.  <u>DivX Allegations of Pre-Filing Notice Are Baseless</u>.

Regarding notice of the alleged infringement, DivX relies on a letter it allegedly sent a day before initiating this Investigation and the related district court case. However, DivX knew that its letter—even if delivered—would not be received by Realtek before DivX filed its complaints because courier services from the United States to Taiwan take multiple days for delivery. DivX therefore knows its allegations of advance notice are false.

      2.  <u>DivX Has No Evidence Realtek Encouraged or Instructed Others to Infringe</u>.

Moreover, the allegations in the complaint are insufficient to show Realtek has actively encouraged infringement. DivX relies on the fact that Realtek demonstrated, at CES 2020, a "range of connectivity, multimedia, and consumer electronics solutions." Compl. ¶ 5.30. The fact that Realtek products are used in smart televisions is woefully insufficient to show active encouragement to practice each element of the asserted claims. DivX's generic allegation lacks any effort to link Realtek's statements to the alleged infringement, and DivX utterly fails to provide evidence that Realtek encouraged anyone to use its SoCs in an infringing manner. DivX's allegations that retailers, such as Best Buy, demonstrate products containing Realtek SoCs (*id.* ¶ 5.30) is even weaker. DivX has not alleged a single fact that could support the conclusion that any infringing actions by Best Buy (which are not identified), were somehow induced or encouraged by Realtek. Finally, DivX knows that its automatic download allegations, *see* Compl. ¶¶ 5.30, 5.34, are false. DivX knows—and its pre-filing investigation undoubtedly confirmed—that Realtek does not initiate or encourage any download of the software that allegedly infringes. Tellingly, DivX provides not a shred of evidence to support its download allegations.

      3.  <u>DivX Has No Evidence Realtek Contributes to Others' Infringement</u>.

DivX similarly cannot sustain claims of contributory infringement. Again, DivX's allegations of advance notice rest upon a letter Realtek did not receive, and would not have received before DivX commenced litigation. And DivX does not offer any evidence that Realtek contributes to infringement. Other than repeating the statutory requirement for such infringement, which is not evidence, DivX says only that the "automatic download and/or activation" of a smart television infringes. *Id.* ¶ 5.34. As shown above, DivX knows Realtek has no role in such activities. DivX also alleges that Realtek's work on "researching, developing, manufacturing, selling of various integrated circuits and related application software," constitutes contributory infringement. *Id.* But DivX does not identify a single Realtek integrated circuit or application that is especially made or especially adapted for infringement. Moreover, to support a claim for contributory

<div align="center">5</div>

infringement, DivX must have some evidence that Realtek's SoCs lack substantial non-infringing uses. The document DivX quotes actually refutes any such allegation, showing that Realtek's SoCs are a part of ordinary, non-infringing uses of "Smart TVs." *Id.* Accordingly, DivX's allegations regarding contributory infringement are baseless.

<div align="center">*      *      *</div>

We are always reluctant to identify claims as frivolous and baseless. Here, however, we cannot overlook the fact that DivX's complaint provides no factual basis for its allegations, and based on DivX's long history in the industry and its pre-filing investigation, it knows that its allegations are false. The claims against Realtek must be dismissed. Please let us know if you would like to discuss any of the issues raised in this letter.

Sincerely,

   */s/ Theodore J. Angelis*

Theodore J. Angelis

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 3

**Michael T. Renaud**
617 348 1870
MTRenaud@mintz.com



One Financial Center
Boston, MA  02111
617 542 6000
mintz.com

# MINTZ

*MAY CONTAIN REALTEK CONFIDENTIAL BUSINESS INFORMATION – SUBJECT TO PROTECTIVE ORDER*

November 24, 2020

**VIA EMAIL**

Theodore J. Angelis, Esq.
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104-1158
Realtek-337-1222@klgates.com

Re:     *Certain Video Processing Devices, Components Thereof, and Digital Smart Televisions Containing the Same;* Investigation No. 337-TA-1222

Dear Counsel,

We were disappointed to receive your letter dated November 17, 2020, in which Realtek accused DivX of filing claims against Realtek when DivX "knows that its allegations are false." Realtek's accusations are without merit. The truth of the matter is that DivX conducted a thorough pre-suit investigation of the facts, and to the best of DivX's knowledge at the time, upon information and belief, the allegations in the complaint were true and accurate. As advocates for our clients in an adversarial process, we will often disagree about the facts, but to accuse another law firm and its client of knowingly filing false claims represents a significant departure from the high standards of professionalism we have come to expect from your firm. Realtek's inflammatory accusations lack any legitimate basis whatsoever and do not promote cooperation between the parties or streamline the issues in this investigation. We demand that Realtek stop wasting the parties' time with unfounded and unproductive assertions and instead participate in this investigation in the cooperative and professional manner required by the Commission Rules and the Ground Rules. *See, e.g.*, G.R. 3 (requiring parties to "make intensive good faith efforts to promptly commence and respond to discovery" and holding that "it is unacceptable for a party to unilaterally limit the scope of discovery" as defined by the notice of investigation).

Realtek's accusations are not only unfounded but also reflect a surprising misunderstanding of ITC process and procedure. DivX filed its complaint with the Commission on September 10, 2020. After examining DivX's complaint for sufficiency and compliance with the applicable rules, OUII recommended that the Commission institute an investigation, which it did on October 14, 2020. In other words, the Commission found that the allegations in the complaint, if proven, are sufficient to state a claim against Realtek, which now has the opportunity to engage in discovery and establish its defenses to DivX's claims. *See, e.g., Certain Inkjet Ink Cartridges with Printheads and Components Thereof*, Inv. No. 337-TA-723, Order No. 20, at 4 (Dec. 23, 2010) ("[T]he Commission has examined the Complaint and has found the allegations . . . to be sufficient to commence an investigation and allow discovery.").

BOSTON     LONDON     LOS ANGELES     NEW YORK     SAN DIEGO     SAN FRANCISCO     WASHINGTON

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.

**MINTZ**



November 24, 2020
Page 2

Stripped of its inflammatory rhetoric, Realtek's argument amounts to a disagreement over facts. If Realtek believes DivX's allegations are incorrect, as litigants in adversarial proceedings often do, it should file a motion for summary determination after the parties have the opportunity to take discovery and fully develop the factual record. Likewise, DivX should have the opportunity to explore Realtek's allegations and defenses through discovery. Indeed, the authority cited on the first page of your letter supports that conclusion. *See* 19 C.F.R. § 210.4(c) (requiring Complainants to certify that "[t]he allegations and other factual contentions have evidentiary support or, if specifically so identified are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.").

On the merits, Realtek's representations about the nature of its business are incomplete in a way that matters. Realtek claims that DivX's detailed claim charts "falsely attribute hardware and software components to Realtek that any reasonable, pre-filing inquiry would have revealed Realtek does not provide" within the SoC itself. *See* Letter dated Nov. 17, 2020, at 2. However, Realtek admits that it *does* provide the SoC identified in DivX's complaint (the RTD287o SoC) to customers such as Respondent LG. *See* Realtek's Response to the NOI and Complaint, at ¶ 5.39. And Realtek admits in its responses to DivX's interrogatories that it provides demo boards to its customers, including Respondent LG and TCL, and demonstrates and displays its products at trade shows. *See*, *e.g.*, Realtek's Response to DivX's Interrogatory No. 3; Realtek's First Supplemental Response to DivX's Interrogatory No. 1.

It is well known that Realtek's demo boards and products on display at trade shows contain the hardware and software components that Realtek claims to be lacking in its standalone SoCs. For example, one of Realtek's partners, Promwad, describes in a blog post the configuration of a development board – the "Hercules 32-bit OTT" – that Realtek provided in connection with the RTD1395 SoC. *See* https://www.cnx-software.com/2020/08/27/hercules-ott-realtek-rtd1395-4k-android-stb-development-board/. According to Promwad, Realtek the system contains "2 GB RAM and [is] pre-installed [with] Android 9 OS." *Id.* Furthermore, the Hercules OTT board "is an Android IPTV box that plays videos of any format[] with a maximum resolution of 4K. Streaming services such as Youtube, Netflix, etc. are supported via Dash and HLS." *Id.* Indeed, at Computex 2018 in Taipei, Realtek's product manager, Mr. Gary Lee, used a combination of demo boards and fully-assembled televisions to display and demonstrate the capabilities of the RTD1395 SoC. https://www.youtube.com/watch?v=oDzfbNmMkIA. Realtek held similar closed door displays and demonstrations at CES 2018-2020 in Las Vegas. *See* https://www.realtek.com/en/press-room/news-releases/item/realtek-to-demonstrate-full-range-of-connectivity-multimedia-and-consumer-electronics-solutions-at-2020-ces.

Realtek addresses none of this in its letter. Instead, Realtek's strategy is to take the position that its own demo boards and trade show activities are outside of the scope of this investigation. Using as a bootstrap the false premise that the complete systems that it provides to customers or displays and demonstrates at tradeshows are somehow outside the scope of the investigation, and without providing any detailed discovery about the internal structure, function, and operation of its SoCs, Realtek alleges that DivX could not possibly prove that Realtek's standalone SoCs by themselves directly infringe the asserted patent claims. Realtek's unilateral limitation on the scope of discovery to exclude systems products is untenable, contrary to Commission precedent and the Ground Rules governing this investigation, and must be withdrawn immediately.

*MAY CONTAIN REALTEK CONFIDENTIAL BUSINESS INFORMATION – SUBJECT TO PROTECTIVE ORDER*

**MINTZ**



November 24, 2020
Page 3

Realtek's printed circuit boards, including the demo boards, and any products containing the same that Realtek demonstrates and/or displays at trade shows, are squarely within the scope of the NOI. The NOI is unequivocal, and identifies printed circuit board assemblies for use in digital smart TVs, associated software and firmware, and smart televisions containing the same, as explicit categories of accused products. There is no exclusion in the NOI for demo boards, or the software and/or firmware provided in connection with the demo boards, or the smart TVs Realtek has on display at trade shows. Furthermore, the fact that the demo boards and products at trade shows may include memory components or software sourced from third parties does not preclude a finding of infringement or otherwise absolve Realtek of its obligation to participate and cooperate in discovery.

Specifically, in connection with its decision to institute this investigation, the Commission published a notice of investigation, dated October 14, 2020, that defines the scope of this investigation as:

> "video processing devices, consisting of printed circuit board assemblies for use in video processing in digital smart televisions and associated software and/or firmware, components thereof, consisting of integrated circuits containing video processors and associated software and/or firmware, and digital smart televisions containing the same, consisting of digital smart televisions containing such video processing devices and/or components."

As noted in the Ground Rules, the parties are not free to define the issues to be decided in this investigation or unilaterally decide which issues are the proper subject of discovery. G.R. 3; *see also Certain Subsea Telecommunications Systems and Components Thereof*, Inv. No. 337-TA-1098, Order No. 20, at 5-6 (June 28, 2018). The Commission's notice of investigation defines the scope of this investigation, and that scope is broader than Realtek apparently believes.

Realtek also argues that it does not provide the "playback device" required by the claims. This argument might be relevant if the NOI were limited to the SoC by itself, which it is not. As discussed above, the NOI squarely encompasses Realtek's demo boards and products on display at trade shows.  But even if the NOI was so limited, Realtek is uniquely positioned to provide the detailed technical documents and source code that show what claim limitations, if any, are found in the SoC itself versus what claim limitations, if any, are found in the demo boards and products on display at trade shows. For example, as indicated in a diagram below excerpted from one of the claim charts attached to DivX's complaint, depending on the implementation, the Microsoft Playready client (*e.g.*, SL2000 or SL3000) and video player may be implemented entirely in the SoC itself, in the SoC and operating system (OS), or in the SoC, OS, and third party application (*e.g.*, Netflix, Amazon, etc.). *See* Public Exhibit 55, at 89. Counsel's argument that Realtek's SoCs do not include the video player or Playready client, and therefore are incapable of direct infringement, is not a substitute for fact discovery. And Realtek's failure, after over one month of discovery, to at least produce the detailed technical documents and source code for its SoCs frustrates DivX's ability to identify what limitations are present in the SoC itself versus the other components of Realtek's products. In any event, Realtek's argument is at best premature and can only be decided on a well-developed record after the parties have had at least the opportunity to undergo claim construction, and the ALJ has had the opportunity to issue a *Markman* order.

*MAY CONTAIN REALTEK CONFIDENTIAL BUSINESS INFORMATION – SUBJECT TO PROTECTIVE ORDER*

**MINTZ**



November 24, 2020
Page 4



*See* Public Exhibit 55, at 89.

Similarly, Realtek's arguments do not support the withdrawal of indirect infringement allegations. DivX's allegations with respect to both direct and indirect infringement were sufficient for the Commission to institute the investigation, and thus DivX should be afforded the opportunity to further develop its allegations through discovery.  *See*, *e.g.*, *Certain Inkjet Ink Cartridges with Printheads and Components Thereof*, Inv. No. 337-TA-723, Order No. 20, at 4 (Dec. 23, 2010) ("Refusing to provide discovery is not a proper method for contesting an allegation.").

Instead of cooperating fully in the discovery process and setting out to prove its defenses and assertions based on a full factual record, Realtek has unfortunately begun this investigation with unsupported accusations against DivX and this law firm. DivX demands that Realtek immediately withdraw its accusations and begin cooperating professionally and completely in the full scope of this Investigation, as defined by the Commission, including by working together cooperatively to identify the facts at issue in the matter. If Realtek still refuses to cooperate fully in this investigation, DivX will have no choice but to request the ALJ's assistance.

Best Regards,

Michael T. Renaud
*Counsel to Complainant DivX, LLC*
cc:      DivX-ITC@mintz.com

*MAY CONTAIN REALTEK CONFIDENTIAL BUSINESS INFORMATION – SUBJECT TO PROTECTIVE ORDER*

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 4



**KEKER
VAN NEST
& PETERS**

Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
keker.com

**Jennifer A. Huber**
(415) 773-6668
jhuber@keker.com

**CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER**

December 23, 2020

**VIA FEDERAL EXPRESS AND EMAIL**

DivX, LLC
Legal Department
4350 La Jolla Village Dr. Ste. 950
San Diego, CA 92122

DivX, LLC
c/o The Corporation Trust Company
Corporation Trust Center, 1209 Orange St.
Wilmington, DE 19801

Joshua Graham
DivX, LLC
4350 La Jolla Village Drive
Suite 950
San Diego, California 92122, U.S.A.
joshua.graham@divx.com

Re:    *Certain Video Processing Devices, Components Thereof, and Digital Smart Televisions
Containing the Same, Inv. No. 337-TA-1222*
*DivX, LLC v. Samsung Electronics Co., Ltd. et al, Case No. 2:20-cv-00301 (E.D. Tex.)*
*DivX, LLC v. LG Electronics, Inc. et al, Case No. 1:20-cv-01202 (D. Del.)*
*DivX, LLC v. MediaTek Inc. et al, Case No. 1:20-cv-01203 (D. Del.)*
*DivX, LLC v. Netflix, Inc., Case No. 2:19-cv-01602 (C.D. Cal.)*
*DivX, LLC v. Hulu, LLC, Case No. 2:19-cv-01606 (C.D. Cal.)*

To Whom It May Concern:

We represent



1626051.v2

December 23, 2020
Page 2

**CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER**



December 23, 2020
Page 3

CONFIDENTIAL BUSINESS INFORMATION,
SUBJECT TO PROTECTIVE ORDER



Should you wish to discuss this matter further, please direct all communication to us, ███████
outside counsel for these issues.

Sincerely,

KEKER, VAN NEST & PETERS LLP

Jennifer A. Huber

AL:blc

A copy of this letter has also been sent to the following:

1626051.v2

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

December 23, 2020
Page 4

Michael T. Renaud
Mintz Levin Cohn Ferris Glovsky
& Pompeo PC
One Financial Center
Boston, MA 02111
mtrenaud@mintz.com
Counsel for DivX, LLC in 337-TA-1222

Rovi Guides, Inc.
c/o Rovi Corporation
Media Studios North
2233 North Ontario Street
Burbank, California 91504, U.S.A.
Attn: SVP, Intellectual Property & Licensing
Facsimile: + 1 (818) 295-6772

Rovi Guides, Inc.
c/o Rovi Corporation
Media Studios North
2233 North Ontario Street
Burbank, California 91504, U.S.A.
Attn: Legal Department, EPG Licensing
Facsimile: + 1 (818) 295-6772

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 5

| | |
|---|---|
| **From:** | Angelis, Theo |
| **Sent:** | Wednesday, February 24, 2021 10:46 AM |
| **To:** | Karambelas, Matthew; [Service]Samsung-DiVX ITC; 1222-LG-Finnegan; TCL-1222 @brinksgilson.com; Realtek-337-1222; qe-mtk-divx-itc@quinnemanuel.com |
| **Cc:** | DivX-ITC |
| **Subject:** | RE: 337-TA-1222: Notice of Motion for Partial Termination as to Certain Claims as to LG and Realtek |

Matt:

Thank you for your email.  Realtek does not oppose termination of all asserted claims from the '141 and '297 patents against Realtek, *i.e.* claims 1-6, 9-11, and 14-15 of the '297 patent and claims 1-3 and 5-11 of the '141 patent.  Please note that Realtek's non-opposition is without prejudice to requesting relief under Commission Rules 210.4 and 210.25.

Assuming this termination is allowed, and in light of the prior notice of mootness, can you please confirm that the only operative charts against Realtek are B2, B3, D2, and D3?

Best regards,
Theo

**K&L GATES**

**Theodore J. ("Theo") Angelis**
K&L Gates LLP
925 4th Avenue, Suite 2900
Seattle, WA 98104
Phone: (206) 370-8101 (direct)
Fax: (206) 370-6006
theo.angelis@klgates.com
www.klgates.com

**From:** Karambelas, Matthew <MAKarambelas@mintz.com>
**Sent:** Tuesday, February 23, 2021 11:36 AM
**To:** [Service]Samsung-DiVX ITC <ServiceSamsung-DiVXITC@fr.com>; 1222-LG-Finnegan <1222-LG-Finnegan@finnegan.com>; TCL-1222@brinksgilson.com; Realtek-337-1222 <Realtek-337-1222@klgates.com>; qe-mtk-divx-itc@quinnemanuel.com
**Cc:** DivX-ITC <DivX-ITC@mintz.com>
**Subject:** 337-TA-1222: Notice of Motion for Partial Termination as to Certain Claims as to LG and Realtek

**External Sender:**

Counsel for Respondents,

DivX intends on filing a motion to terminate the Investigation-in-part with respect to claim 14 of the '297 Patent as to LG, claims 1-6, 9-11, and 14-15 of the '297 Patent as to Realtek, and claims 1-3, and 5-11 of the '141 Patent as to Realtek.  Please let us know if you oppose.

Best regards,

Matt

**Matthew Karambelas**
*Associate*

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center, Boston, MA 02111
+1.617.348.1831
MAKarambelas@mintz.com | Mintz.com



---

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments
to this message are intended for the exclusive use of the addressee(s)
and may contain confidential or privileged information. If you are not
the intended recipient, or the person responsible for delivering the
email to the intended recipient, be advised you have received this
message in error and that any use, dissemination, forwarding, printing,
or copying is strictly prohibited. Please notify the Mintz, Levin, Cohn,
Ferris, Glovsky and Popeo sender immediately, and destroy all copies
of this message and any attachments.

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 6

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON DC

Before the Honorable MaryJoan McNamara
Administrative Law Judge

| | |
|---|---|
| In the Matter of<br><br>CERTAIN VIDEO PROCESSING<br>DEVICES, COMPONENTS THEREOF,<br>AND DIGITAL SMART TELEVISIONS<br>CONTAINING SAME | Investigation No. 337-TA-1222 |

**RESPONDENT REALTEK SEMICONDUCTOR CORP.'S
OBJECTIONS AND FOURTH SUPPLEMENTAL RESPONSES
TO COMPLAINANT DIVX, LLC'S FIRST SET OF INTERROGATORIES
TO RESPONDENT REALTEK SEMICONDUCTOR CORP.**

Pursuant to 19 C.F.R. §§ 210.27 and 210.29, Respondent Realtek Semiconductor Corp. ("Realtek"), by its attorneys, hereby provides its Objections and Fourth Supplemental Responses to Complainant DivX, LLC's ("DivX") First Set of Interrogatories to Respondent Realtek Semiconductor Corp. ("Interrogatories").

## PRELIMINARY STATEMENT

Realtek incorporates by reference its Preliminary Statement and General Objections set forth in its Responses and Objections to DivX First Set of Interrogatories (Nos. 1–39), served on October 30, 2020.

## SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1:

Identify each Realtek Product that is an SoC. Include in Your identification, for each SoC, all unique identifiers used by Realtek and/or Third Parties to differentiate each such SoC from other Realtek Products, including without limitation, a description of the nomenclature of how each identifier relates to the product family, product generation, product series, product type, version number, and model year, and at least the following information: (a) the product family; (b)

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

| Date of CES Show | Realtek Model Number | Realtek Employees at CES Show |
|---|---|---|
| ████████ | ██████ | ████████ |
| ████████ | ████ | ████████ |

████████████████████████████████

████████████████████████████████

███████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████

Pursuant to 19 C.F.R. §210.29(c), Realtek identifies: ITC1222-REALTEK_031612 - 031826; ITC1222-REALTEK_032097 - 032364; and ITC1222-REALTEK_033060 - 034212.

Realtek reserves its right to supplement its response as necessary or appropriate under 19 C.F.R. § 210.27(f), which may include the identification of additional responsive, nonobjectionable, non-privileged documents pursuant to 19 C.F.R. § 210.29(c), to the extent such documents exist and can be located after a reasonable search.

**THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 (Dec. 24, 2020):**

Realtek incorporates its prior response and objections to this Interrogatory, but even though Realtek intends to seek appropriate relief and contends that Realtek lacks the necessary evidentiary support for its claims, Realtek confirms (for this interrogatory and all interrogatories) that it is not withholding any discovery based on its objections that Realtek does not provide the products that DivX's complaint identifies as infringing, and DivX does not provide any evidence that it does, making discovery regarding Realtek's actual products impermissible under 19 C.F.R. § 210.27(b), (d). Nor is Realtek withholding any discovery based on its objection that DivX's allegations about "Realtek Products" that do not exist, and that any reasonable pre-filing investigation would have

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

made clear do not exist, cannot serve as the basis for a request to identify all of Realtek's SoCs. Nor is Realtek withholding discovery on the grounds that DivX's claims against Realtek lack the required evidentiary support and are propounded for the improper purposes of harassing Realtek, as outlined in Realtek's initial response to this Interrogatory and in Realtek's November 17, 2020 letter.

Subject to and without waiving the foregoing objections, Realtek supplements its prior response as follows:



**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

|  |  |  |  |
|---|---|---|---|
| ████ | ████ | ████ | ████ |
| ██ | ██ | ██ | ███ |
|  | ██ | ██ | ███ |
|  | ██ | ██ | ██ |
|  | ██ | ████ | ██ |
|  | ██ | ██ | ██ |
|  | ████ | ██ |  |
|  | ███ | ███ |  |
|  |  | ████ |  |

Pursuant to 19 C.F.R. § 210.29(c), Realtek refers to the following documents:  ITC1222-REALTEK_036319 - ITC1222-REALTEK_036321; ITC1222-REALTEK_036306 - ITC1222-REALTEK_036318; ITC1222-REALTEK_036699 - ITC1222-REALTEK_036705; ITC1222-REALTEK_037229 - ITC1222-REALTEK_037238.

Regarding installation instructions, instructions for use, or records of Customers' use, and pursuant to 19 C.F.R. § 210.29(c), Realtek refers to the following documents:  ITC1222-REALTEK_037840 - ITC1222-REALTEK_037860; ITC1222-REALTEK_037864 - ITC1222-REALTEK_037873; ITC1222-REALTEK_041152 - ITC1222-REALTEK_041168; ITC1222-REALTEK_059887 - ITC1222-REALTEK_059922; ITC1222-REALTEK_059933 - ITC1222-REALTEK_059971; ITC1222-REALTEK_059990 - ITC1222-REALTEK_060016; ITC1222-REALTEK_109670-ITC1222 - REALTEK_109703; ITC1222-REALTEK_031612 - ITC1222-REALTEK_031826; ITC1222-REALTEK_032097 - ITC1222-REALTEK_032311; ITC1222-REALTEK_032325 - ITC1222-REALTEK_032460; ITC1222-REALTEK_036322 - ITC1222-REALTEK_036373; ITC1222-REALTEK_057861 - ITC1222-REALTEK_059867; ITC1222-REALTEK_033060 - ITC1222-REALTEK_034212.

503995236 v1

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

Realtek reserves its right to supplement its response as necessary or appropriate under 19 C.F.R. § 210.27(f), which may include the identification of additional responsive, nonobjectionable, non-privileged documents pursuant to 19 C.F.R. § 210.29(c), to the extent such documents exist and can be located after a reasonable search.

**FOURTH SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12 (Jan. 18, 2021):**

Realtek incorporates its prior responses and objections to this Interrogatory.  Subject to and without waiving the foregoing objections, Realtek supplements its prior response as follows:

The ███████████████████████████████████████████

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

REALTEK FOURTH SUPPLEMENTAL RESPONSES TO COMPLAINANT'S FIRST SET OF
INTERROGATORIES (NOS. 1–39)

503995236 v1

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

Realtek reserves its right to supplement its response as necessary or appropriate under 19 C.F.R. § 210.27(f), which may include the identification of responsive, nonobjectionable, non-privileged documents pursuant to 19 C.F.R. § 210.29(c), to the extent such documents exist and can be located after a reasonable search.

**INTERROGATORY NO. 13:**

Describe in detail Realtek's use and testing of each Realtek Product in the United States.

**RESPONSE TO INTERROGATORY NO. 13:**

Realtek incorporates the entirety of its Preliminary Statement and General Objections by reference. Realtek objects to this Interrogatory because Realtek does not provide the products that DivX's complaint identifies as infringing, and DivX does not provide any evidence that it does, making discovery regarding Realtek's actual products impermissible under 19 C.F.R. § 210.27(b), (d). Realtek further objects to this Interrogatory as overly broad, unduly burdensome, disproportionate, irrelevant to the subject matter of this Investigation, and unlikely to lead to the discovery of admissible evidence because "Realtek Product" is defined to include devices other than those used by the named Respondents in digital smart televisions imported into the United States. Realtek further objects to this Interrogatory as vague and nonsensical because "Realtek Product" is defined as products that have been or will be supplied to a "Customer," and the definition of "Customer" in paragraph 8(b) of the Definitions is nonsensical because, among other reasons, it identifies companies as components. In addition, the definitions of "Realtek Product" and "Customer" cannot be reconciled because the definition of "Customer" refers to Third Parties that sell "at least one product that incorporates a Realtek Product." Because the definitions refer to each other, their scope is impossible to understand. Realtek further objects to this Interrogatory on the basis that it seeks burdensome discovery about technologies unrelated to the claimed video processing and DRM technology and therefore is outside the permissible scope of discovery under

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

## <u>VERIFICATION</u>

I, CHANG, YI-SHU, hereby state that I am Vice President of Realtek Semiconductor Corp. ("Realtek") and am authorized to sign this verification on behalf of Realtek.  I have read **RESPONDENT REALTEK SEMICONDUCTOR CORP.'S OBJECTIONS AND FOURTH SUPPLEMENTAL RESPONSES TO COMPLAINANT DIVX, LLC'S FIRST SET OF INTERROGATORIES TO RESPONDENT REALTEK SEMICONDUCTOR CORP.**, and declare that, based upon reasonable inquiry and with the assistance of various individuals with knowledge of the facts stated herein, the foregoing Responses are true and correct.  As such, I declare that, in accordance with 19 C.F.R. § 210.29(b)(2), and under the penalty of perjury under the laws of the United States of America, that to the best of my knowledge, information, and belief, the foregoing response is true and correct.

Dated: January 19, 2021

_Chang, Yi-Shu_ _____

CHANG, YI-SHU

Vice President

Realtek Semiconductor Corp.

503954157 v1

**CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER**

# EXHIBIT 7

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIVX LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>LG ELECTRONICS INC., LG ELECTRONICS U.S.A., INC. and REALTEK SEMICONDUCTOR CORP.,<br><br>                    Defendant. | C.A. No. 20-1202-CFC-JLH |

**DEFENDANT REALTEK SEMICONDUCTOR CORPORATION'S**
**MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11**

*Of Counsel:*

Theodore Angelis
K & L Gates LLP
925 4th Avenue, Suite 2900
Seattle, WA 98104
(206) 623-7580

Jay Chih-Fan Chiu
K & L Gates LLP
1 Park Plaza, Twelfth Floor
Orange County, CA 92614
(949) 253-0900

Jason Engel
K & L Gates LLP
70 West Madison Street, Suite 3300
Chicago, IL 60602-4243
(312) 807-4263

ASHBY & GEDDES
John G. Day (#2403)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P. O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

*Attorneys for Defendant Realtek*
*Semiconductor Corp.*

**CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**

Robert J. Benson
Orrick, Herrington & Sutcliffe LLP
2050 Main Street, Suite 1100
Irvine, CA 92614-8255
(949) 567 6700

Christopher J. Higgins
Orrick, Herrington & Sutcliffe LLP
1152 15th St NW
Washington, DC 20005
(202) 339-8418

March 7, 2021

**CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**

## I.     INTRODUCTION

Plaintiff DivX LLC's ("DivX") infringement claims against Defendant Realtek Semiconductor Corp. ("Realtek") are baseless.  Any reasonable pre-suit investigation would have revealed that Realtek's accused products do not, and indeed cannot, infringe the patents at issue in this litigation.  DivX knew this before filing its lawsuit, which is why DivX's Complaint obfuscates the Realtek product at issue.  DivX accuses what it calls the "Realtek video processing system," but Realtek provides no such system.  It sells general-purpose, television systems-on-a-chip ("SoC") to makers of smart televisions.  DivX does *not* allege that Realtek's SoCs, and the software Realtek provides to LG in connection with those SoCs, collectively meet the claim elements. Instead, DivX relies on the use of Realtek's SoCs in connection with third-party hardware and software.  *See id.*  As DivX knows, however, Realtek does not make, use, sell, or import the allegedly infringing technologies.  It is the TV brands that do so.  DivX's direct infringement claims are therefore baseless.

DivX's indirect infringement allegations are equally baseless.  Fact discovery in the co-pending ITC investigation has all but concluded, yet DivX has not come forward with any evidence that Realtek has induced or contributed to the acts alleged to be infringing.  DivX's Complaint shows that its indirect infringement theories were baseless when pleaded, and discovery in the parallel ITC action has removed all doubt.  Continued pursuit of those claims violates Rule 11.

DivX's actions expose its Complaint for what it is:  A cynical and improper ploy to assert frivolous claims against Realtek to make it easier to obtain discovery.  DivX hopes to keep Realtek in the case long enough to obtain party discovery and then turn its attention to the television brands that use the technology allegedly at issue.  DivX gambles that it will face no consequences for asserting baseless claims, brought for this improper purpose.  But Rule 11 is not so forgiving. DivX's baseless lawsuit, pursued for an improper purpose, violates Rule 11 of the Federal Rules

**CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**

of Civil Procedure and merits sanctions.  Realtek's counsel does not seek relief under Rule 11 lightly, but this is the rare case in which such sanctions are necessary to punish, deter, and compensate.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

DivX commenced this action on September 9, 2020, alleging infringement of U.S. Patent Nos. 8,832,297 (the "'297 patent"); 10,212,486 (the "'486 patent"); 10,412,141 (the "'141 patent"); and 10,484,749 (the "'749 patent") (collectively, "the Asserted Patents").  *See* D.I. 1.  On November 19, 2020, the Court stayed this case with respect to Defendants LG Electronics Inc. and LG Electronics U.S.A., Inc., pending the outcome of a co-pending investigation at the International Trade Commission ("ITC").  D.I. 15.  On February 5, 2021, the Court granted DivX's motion for alternative service, permitting DivX to serve Realtek through its ITC counsel.  D.I. 19.  That service was returned executed on February 10, 2021.  D.I. 20.  Realtek responded to DivX's complaint on March 2, 2021.  D.I. 25.

## III.    SUMMARY OF THE ARGUMENT

DivX knows that Realtek's products—including the RTD287o SoC identified in the Complaint—cannot infringe the Asserted Patents.  To mask this reality, it falsely represents that there is some other, made-up device it calls "the Realtek video processing system."  There is no such system.  DivX and its attorneys know that Realtek does not provide any "video processing system."  It sells processing chips, known as SoCs, which undeniably lack several crucial elements of the asserted claims, including the claimed "applications" and "non-volatile storage."  Tellingly, the allegations in the Complaint identify *non-Realtek products* as containing the claimed software or memory and performing the claimed steps.  Thus, DivX's own Complaint defeats its claims against Realtek and demonstrate its knowledge that Realtek does not infringe the Asserted Patents. DivX's decision nonetheless to file this lawsuit violates Rule 11.

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

DivX's actions in the ITC confirm the baselessness of its direct infringement claims. Indeed, in the ITC, DivX has belatedly conceded that it has no case against Realtek for two of the four Asserted Patents—the streaming video patents—and has announced its intention to seek dismissal of those claims. Here, however, DivX continues to maintain those same frivolous allegations. For the other two patents, which involve Digital Rights Management ("DRM") technology, Realtek has provided extensive discovery in the ITC, but DivX has come forward with no facts to support its allegations of direct infringement. And the facts developed in the ITC confirm what DivX knew or certainly should have known at the outset of this case: Realtek does not make, use, sell, or import the accused technology.

DivX's indirect infringement claims are equally baseless. Again, DivX has abandoned all claims for two of the four asserted patents in the ITC, but maintains them here. Such conduct violates Rule 11. For the other two patents, DivX has known from the outset of this case that Realtek does not encourage its customers to infringe the Asserted Patents, and its products are capable of substantial non-infringing uses. If there were any doubt, discovery in the ITC action removed it. DivX's decision nonetheless to maintain its indirect infringement allegations violates Rule 11.

The obvious baselessness of DivX's claims merits sanctions. DivX's attorneys clearly failed to conduct a reasonable pre-suit investigation and satisfy themselves that Realtek's product infringes the Asserted Patents, as required by Rule 11. It has forged ahead with meritless claims despite knowing that they cannot prevail and being repeatedly apprised of the impossibility of their allegations. This Court should dismiss DivX's claims against Realtek with prejudice and award Realtek its costs and attorneys' fees to deter future similar conduct.

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

## IV.    STATEMENT OF FACTS

DivX accuses Realtek of infringement of patents related to adaptive-bitrate streaming (the '297 patent), DRM (the '486 and '749 patents), and "trick play" (the '141 patent) technologies. *See* D.I. 1.  Although DivX misleadingly refers to "Realtek video processing system[s]," DivX's theories of direct and indirect infringement appear to stem from Realtek's sale of general-purpose, television SoCs to manufacturers of smart televisions.  *See id.* ¶¶ 40–48, 57–58; 77–78; 97–98; 117–118.  Notably, DivX does not allege that Realtek's SoCs themselves meet the claim elements, instead relying on the use of Realtek's SoCs in connection with other third-party hardware and software.  *See id.*

On October 16, 2020, prior to execution of service on Realtek in the present litigation, the ITC instituted an investigation based on DivX's complaint against several Respondents, including Defendants in this case, asserting infringement of the same patents under the same general theories of infringement.  *In the Matter of Certain Digital Video-Capable Devices and Components Thereof*, Inv. No. 337-TA-1224.  The co-pending ITC investigation has proceeded expeditiously. At the outset of the investigation, Realtek provided DivX with a notice letter explaining, in detail, the baselessness of DivX's claims and announcing its intention to seek sanctions if DivX did not seek dismissal.  *See* Angelis Decl. Ex. 1.  Fact discovery in the ITC investigation in now all-but-complete, with fact discovery closing on March 12, 2021.  Angelis Decl. ¶¶ 4-5 & Ex. 3.  In other words, DivX now has a complete factual record.  Through the discovery process, DivX has received the requested information to support its infringement theories.  That information confirmed what was obvious at the outset of the case: there is no basis for DivX's claims against Realtek.  Indeed, DivX has belatedly announced that it is terminating the ITC investigation against Realtek for two of the four asserted patents, dropping its claim relating to the '297 and '141 patents. Angelis Decl. ¶ 6 & Ex. 4.  Nonetheless, DivX has not withdrawn those claims in this case.  For

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

the other two patents, DivX has not pointed to any evidence of Realtek infringement, either direct or indirect.

## V.   LEGAL STANDARD

Rule 11 of the Federal Rules of Civil Procedure "imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990).  The Rule's central purpose "is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts." *Id.*; *see also Lieb v. Topstone Indus.*, 788 F.2d 151, 147 (3d Cir. 1986) (observing that pleadings that are "frivolous, legally unreasonable, or without factual foundation" violate Rule 11).  Attorneys who "fail to make a reasonable inquiry into the legal legitimacy of a pleading" may be subject to sanctions.  *Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 297 (3d Cir. 2010).  The sanction should "suffice[] to deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(4).

In patent cases, the law of the regional circuit applies to the imposition of Rule 11 sanctions. *Power Mosfet Techs., LLC v. Siemens AG*, 378 F.3d 1396, 1406–07 (Fed. Cir. 2004).  In the Third Circuit, an attorney whose conduct is not "objectively reasonable under the circumstances" violates Rule 11.  *Ario*, 618 F.3d at 297.  "An inquiry is considered reasonable under the circumstances if it provides the party with an objective knowledge or belief at the time of the filing of a challenged paper that the claim was well-grounded in law and fact." *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994) (internal citations and quotations omitted).  To comply with this standard, an attorney "must conduct a reasonable investigation of the facts and a normally competent level of legal research to support the presentation." *Mary Ann*

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

*Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988).  An attorney may also violate Rule 11 by continuing to promote baseless claims.  *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994).

In patent cases, satisfying Rule 11's requirements "is extremely important" given the complexity and expense associated with such actions.  *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).  The "key factor in determining whether a patentee performed a reasonable pre-filing inquiry is the presence of an infringement analysis."  *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2004).  Thus, a reasonable pre-suit investigation requires an attorney to (1) "apply claims of each and every patent that is being brought into the lawsuit to an accused [product]," and (2) "satisfy himself that a proper construction of the claims . . . permits argument that each element of the claims appears in the accused [products]."  *Judin v. United States*, 110 F.3d 780, 783 (Fed. Cir. 1997).  Failure to perform either of these steps "should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions."  *View Eng'g*, 208 F.3d at 986.  Upon the filing of a Rule 11 motion, the burden shifts to the patentee to demonstrate that its pre-suit investigation was reasonable.  *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007); *see also View Eng'g*, 208 F.3d at 986 ("In bringing a claim of infringement, the patent holder, if challenged, must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement.").

## VI.    ARGUMENT

### A.    DivX's Direct Infringement Claims Are Frivolous and Reveal a Failure To Conduct a Reasonable Pre-Filing Investigation

DivX's Complaint and its allegations in the co-pending ITC investigation demonstrate that DivX did not conduct a reasonable investigation of the facts, as required by Rule 11.  To directly infringe, DivX must have some reasonable basis for alleging that Realtek makes, uses, sells, or

**CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**

imports, in the United States, a product that satisfies all of the claim elements.  But DivX knows that its direct infringement claims are frivolous for at least three reasons: (1) DivX knows that Realtek does not ███████████████████████████████████████ as DivX alleges; (2) DivX knows that Realtek does not make, use, sell, or import the accused LG "application" that allegedly performs the claimed steps; and (3) DivX knows that Realtek does not make, use, sell, or import the non-volatile storage that allegedly contains the accused application(s), as three of the patents require.

>1.     **DivX's Counsel Know that Realtek Does Not Provide LG (or Anyone Else) a "Video Processing System" with the Hardware Necessary To Satisfy the Claims**

The asserted claims require a playback application that requires certain hardware components.  *See* D.I. 1  ¶¶ 55, 75, 95, 115.  DivX's Complaint alleges that these elements are satisfied by the "Realtek video processing system" "comprising a main board hardware and integrated operating system, middleware, [and] application program . . . manufactured, and packaged for LG by Realtek." *Id.* ¶ 57.  DivX conjured those allegations out of whole cloth.  The Complaint notably lacks any product name, product number, or supporting exhibit identifying the fanciful "Realtek video processing system."  And for good reason: no such system exists.  Realtek sells television SoCs.  It does not sell, manufacture, or package main boards for LG or anyone else.  The Complaint nods to this fact by acknowledging that the only Realtek component in the made-up "video processing system" is Realtek's "RTD287o SoC." *Id.*  But DivX nonetheless builds its infringement case around this made up allegation.  At a minimum, this allegation reflects the utter absence of an adequate pre-filing investigation and pursuit of claims DivX knows have no factual basis.

**CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**

Realtek pointed out this failing in a sanctions letter it sent in November 2020.  Angelis

Decl. Ex. 1.  In response, DivX said that it was accusing Realtek's demo boards.[1]  But as DivX

knows, the only demo boards ever present in the United States: (1) ████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████.  Unsurprisingly, in

the ITC, DivX was unable to come up with any infringement theory directed to Realtek's demo

boards.  In sum, DivX's claims were frivolous when filed and remain frivolous today.

### 2.    DivX's Counsel Know that Realtek's SoCs and Demo Boards Lack the Alleged "Application"

Each of the Asserted Patents requires a "client application" or a "playback application"

that causes a processor to perform certain actions.  *See* D.I. 1 ¶¶ 56–57, 75, 115.  Realtek's SoCs

do not include, and DivX knows that Realtek does not provide, the software DivX contends

satisfies the "application" elements.  Again, any reasonable pre-suit investigation would have

revealed this fact.  Realtek's theory of infringement in the Complaint is that LG televisions, ████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████  Also, in the ITC investigation, DivX has confirmed that its theory

of infringement is based on LG's software, not Realtek's.[2]  But DivX has not, and could not,

contend that Realtek's SoCs (or Realtek's demo boards) contain the accused LG software, and its

---

[1] *See* Angelis Decl. Ex. 2.  DivX also pointed to chips demonstrated outside the United States, in certain set-top boxes.  *Id.*  Set-top boxes and their chips are not at issue in this litigation or in the ITC investigation.

[2] If DivX tries to rely on an unpleaded, direct infringement theory based on the operating system on Realtek's demo boards, rather the LG software identified in the complaint, those claims likewise are frivolous for multiple reasons. ███████████████████████████████████ ████████████████████████████████████████████████████████████

**CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**

direct infringement allegations based on that software are frivolous.  *See Kahn v. General Motors Corp.*, 135 F.3d 1472, 1476 (Fed. Cir. 1998) (observing that literal infringement requires that every limitation set forth in the claim be present in the accused product).

   3.     **DivX's Counsel Know that Realtek's SoCs Lack the Claimed "Memory"**

DivX's allegations are also frivolous with respect to the memory limitations in three of the Asserted Patents.  The '486, '749 , and '141 patents all require "non-volatile storage" that contains the accused application.  Yet Realtek's SoCs do not include memory that stores the accused applications.  DivX knows this, as shown by its allegations that focus on memory provided by a third-party, Samsung.  *See* D.I. 1 ¶¶ 77, 97, 117 (identifying "the Samsung KLM4G1FETE 4Gb eMMC memory").  Realtek cannot directly infringe by way of a product imported and used by LG that includes memory from Samsung.  DivX's baseless direct infringement allegations against Realtek's SoCs violate Rule 11.

In sum, DivX had no basis for alleging direct infringement at the outset of the case, and it has no basis for doing so now.  Yet Realtek has refused to dismiss its direct infringement claims, even while dismissing claims all claims for two of the asserted patents in the ITC.  Realtek's pursuit of frivolous claims violates Rule 11.

   B.     **DivX's Indirect Infringement Claims Are Frivolous and Reveal a Failure To Conduct a Reasonable Pre-Filing Investigation and the Failure To Dismiss Claims that Discovery in the ITC Has Shown To Be Frivolous**

Discovery in the ITC has shown that Realtek's products do not operate in the manner DivX alleges, yet DivX continues to advance those claims in this Court.  And DivX has always known that Realtek never encouraged others to infringe the Asserted Patents and that Realtek's SoC is capable of substantially non-infringing uses.  Yet it maintains indirect infringement claims in this Court.  To indirectly infringe, DivX must have some reasonable basis for alleging that Realtek

9

**CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**

knowingly and actively induces others to infringe the Asserted Patents.  DivX's indirect infringement are frivolous because: (1) DivX knows that Realtek's products are unrelated to the streaming functionality of the '297 and '141 patents; (2) DivX knows that Realtek's video decoder does not decrypt video, as required by the '486 and '749 patents; (3) DivX knows that Realtek never encouraged any users to infringe the Asserted Patents; and (4) DivX knows that Realtek's SoC is capable of substantial non-infringing uses.

> **1.     DivX's Counsel Know They Have No Claim Against Realtek for Inducing or Contributing to Infringement of the Streaming ('297 and '141) Patents**

DivX's complaint baselessly alleges that Realtek indirectly infringes claims within the '297 and '141 patents.  Those patents relate generally to technology for skipping around within a video that is still downloading, which is sometimes called "trick play" (the '141 patent) and changing the rules for when a video player switches from one video stream to another (the '297 patent). DivX knew when it filed the Complaint that Realtek has nothing to do with the accused functionality.  And discovery in the ITC confirmed that fact.  In its ITC contentions, DivX could not muster a single fact against Realtek to support its indirect infringement claims related to those patents.  Unsurprisingly, DivX also announced that it will seek dismissal of all claims against Realtek for infringement of those patents.  *See* Angelis Decl. Ex. 4.  Yet DivX continues to pursue its frivolous claims here, in violation of Rule 11.

> **2.     DivX's Counsel Know They Have No Claim Against Realtek for Inducing or Contributing to Infringement of the DRM ('486 and '749) Patents**

DivX's allegations that Realtek indirectly infringes the '486 and '749 DRM patents were frivolous when pleaded, and discovery in the ITC has confirmed their baselessness.  Indeed, DivX has not, and cannot, come forward with any facts to support the conclusion that Realtek induced or contributed to others' infringement.  In addition, DivX knew when it filed its Complaint—and

**CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**

discovery in the ITC investigation has confirmed—that its theories of indirect infringement are baseless.  DivX's allegations correctly plead that the video decoder in Realtek's SoCs decodes "decrypted" video.  Complaint ¶¶ 77, 117.  But the patents require that—and their alleged inventiveness depends upon—the *decoder itself* performing the decrypting function.  *See* '486 patent at 11:21-24 (claim 1) and 12:38-41 (claim 15) ("decrypting . . . using the video decoder"); '749 patent at 11:14-16 (claim 1) and 12:18-20 (claim 10) ("decrypting . . . using . . . the video decoder").  At the time of the Complaint, DivX evidently knew that Realtek's video decoder does not decrypt video.  That is why DivX did not plead that it does.  Thus, the Complaint itself exposes the baselessness of DivX's claim.  In addition, discovery in the ITC has confirmed that DivX's claims are baseless. ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████

a.     **DivX's Failure To Offer, and Inability To Offer, Any Evidence of Induced or Contributory Infringement, Standing Alone, Violates Rule 11**

DivX lacks any evidence to support induced or contributory infringement.  DivX's allegations in the Complaint are devoid of facts.  *See, e.g.*, D.I. 1 ¶¶ 43–45.  Likewise, in the ITC action, DivX could not cite a single fact that would support a conclusion of indirect infringement.  Pursuing claims of indirect infringement, in the absence of any facts to support inducement or contributory infringement, violates Rule 11.

The Patent Act provides: "Whoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  To prevail on a claim of induced infringement, a patentee must show that (1) the accused infringer actively encouraged infringement, knowing that the acts induced constituted patent infringement, and (2) the encouraging acts actually resulted in direct patent infringement.  *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d

11

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

1315 (Fed. Cir. 2016).  Mere knowledge of the direct infringer's activities is not enough.  *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006).

DivX has no facts to support the conclusion that Realtek actively encouraged another to infringe the Asserted Patents.  The Complaint alleges that the RTD287o SoC "is designed, manufactured, and packaged for LG by Realtek," *see, e.g.*, D.I. 1 ¶ 57, but as shown above, that allegation is false, and DivX knows it is false.  The Complaint also alleges, in a conclusory manner, and without even identifying Realtek specifically, that "Defendants have induced semiconductor manufacturers to produce components that when incorporated into Defendants' downstream products, enable their infringing behavior."  *Id.* ¶ 58.  But DivX and its attorneys are well aware of the governing cases cited above, which hold that the mere use of technology in a way that might infringe falls well short of the standard for inducement.  DivX cannot, and has not, come forward with any evidence of inducement.  Realtek's November 2020 sanctions letter raised this problem, and DivX's only response was that discovery might support its allegations.  Angelis Decl. Ex. 2.  Discovery is now complete, and DivX has not offered a single fact to support its indirect infringement claims.  Realtek's refusal to dismiss those claims violates Rule 11.

The same is true of contributory infringement.  "To hold a component supplier liable for contributory infringement, a patent holder must show that (a) the supplier's product was used to commit acts of direct infringement; (b) the product's use constituted 'a material part of the invention'; (c) the supplier knew its product was 'especially made or especially adapted for use in an infringement' of the patent; and (d) the product is 'not a staple article or commodity of commerce suitable for substantial noninfringing use.'"  *Arris Group, Inc. v. British Telecomm'ns PLC*, 629 F.3d 1368, 1376 (Fed. Cir. 2011) (quoting 35 U.S.C. § 271(c) and citing *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.,* 609 F.3d 1308, 1316–17 (Fed. Cir. 2010)).  Federal

**CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**

Circuit "case law is clear that [a plaintiff] must show that [the defendant] 'knew that the combination for which its components were especially made was both patented and infringing.'" *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. 2010) (quoting *Golden Blount, Inc. v. Robert H. Peterson Co.,* 365 F.3d 1054, 1061 (Fed. Cir. 2004)). "Where the product is equally capable of, and interchangeably capable of both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1338 (Fed. Cir. 2012).

DivX again has provided absolutely nothing to support its contributory infringement allegations, demonstrating that they, too, are frivolous. The burden of proving that there are no substantial non-infringing uses of Realtek's accused SoCs rests with DivX. *Golden Blount*, 438 F.3d at 1363. DivX has not even attempted to meet its burden. Instead, DivX merely parrots the statutory standard for contributory infringement. DivX utterly fails to address whether the accused DRM technology has substantial non-infringing uses, which is not surprising because DivX's contributory infringement claims are frivolous.

Even if Realtek bore the burden of showing substantial non-infringing uses, DivX's claims would be frivolous. "Where the product is equally capable of, and interchangeable capable of both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1338 (Fed. Cir. 2012). For example, ████████████████████████████████████████

████████████████████████████████████████████

      **b.**      **The Video Decoder Does Not Decrypt; It Processes only Clear (Nonencrypted) Video**

The claims of the '749 and '486 patents require "decrypting the encrypted portion of each . . . frame . . . *using the video decoder.*" *See* D.I. 1 ¶¶ 75, 115 (emphasis added). The video

**CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**

decoder in Realtek's accused SoCs, ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

        ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

        ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████

──────────────────────

[3] ███████████████████████████████████████████████████

███████████████████

**CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**



**CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**



DivX's insistence on maintaining this lawsuit in the face of this evidence violates Rule 11.

> c.    The Parser/Demultiplexer Do Not Provide Cryptographic Material/Information to the Video Decoder

The '486 patent requires "providing each partially encrypted frame [and] the cryptographic material . . . from the parser to a video decoder." '486 patent at 11:9-10. The evidence above,

**CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY**

however, shows that the parser does not provide partially encrypted frames and cryptographic material to the video decoder.  Instead, ███████████████████████████████

████████████████████████████████████████████████████████████

████████████████████  That patent requires "providing the partially encrypted frame [and] the cryptographic information . . . from a demultiplexer to a video decoder."  '749 patent at 11:5-7. Again, ██████████████████████████████████████████████████████

████████████████████████████████  DivX knows that its allegations are baseless.

### C.  DivX's Decision To Sue Realtek To Avoid Third-Party Discovery, Standing Alone, Violates Rule 11.

Rule 11 prohibits bringing claims for an improper purpose.  Fed. R. Civ. P. 11(b).  Here, DivX Sued Realtek—a Taiwanese corporation—to avoid the challenges of third-party discovery. During settlement discussions, DivX revealed its improper motives.  In particular, DivX said that

█████████████████████████████████████████████████████████████

███████████████████████████████████████████.  DivX likewise dismissed all claims against the other SoC provider, MediaTek, that DivX sued in the ITC.  Angelis Decl. Ex. 7.  Given DivX's conduct, there can be no doubt that DivX brought its claims against Realtek for the improper purpose of obtaining discovery that would have been impossible, or at least much more difficult, to obtain through a third-party subpoena.

Litigation filed for an improper purpose is litigation filed in bad faith.  *See Fed. Trade Comm'n v. AbbVie Inc.*, 976 F.3d 327, 370 (3d Cir. 2020).  For the reasons discussed above, DivX knew that its infringement claims against Realtek were objectively baseless.  It chose to file the lawsuit and the ITC action against Realtek anyway and to aggressively seek discovery into Realtek's products incorporated into its co-defendants televisions.  Its willingness to ████████

███████████████████████████████████████████████confirms a bad-faith, improper motive that



CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

needlessly increased the costs of litigation for both parties, and it violates Rule 11.  *See* FED. R. CIV. P. 11(b)(1) (listing examples of improper purposes "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation").

### D.      DivX's Failure to Comply with Rule 11 Merits Sanctions.

As the foregoing discussion demonstrates, DivX's attorneys failed to comply with their Rule 11 obligations in filing this lawsuit.  As such, sanctions—including dismissal of the case in its entirety and payment to Realtek of its costs—are appropriate.

Permissible sanctions under Rule 11 "may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses" directly resulting from the violation.  FED. R. CIV. P. 11(c)(4).  In the Third Circuit, dismissal with prejudice of claims founded on objectively baseless filings is appropriate.  *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1998) ("Other sanctions that could be appropriate . . . include . . . dismissal of baseless claims or defenses").  Further, the Third Circuit has confirmed that, upon finding a Rule 11 violation, the Court has discretion to award attorneys' fees.  *Lieb*, 788 F.2d at 155–56.  Monetary sanctions "combine[] the concepts of deterrence and reimbursement for the wronged party" by "requiring the offending client, lawyer, or both, to pay all or part of the adversary's counsel fees incurred as a result of the violation."  *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987).  The court may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Lieb*, 788 F.2d at 156.

Here, the Court should dismiss DivX's claims with prejudice and award Realtek its attorneys' fees and costs.  DivX filed its complaint without conducting a reasonable pre-suit

CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

investigation, resulting in objectively baseless infringement allegations.  DivX, in fact, has no factual or legal basis to support its claims, and dismissal is appropriate to put an end to this meritless suit and deter DivX and others from shunning their professional duties to the Court.  *See, e.g.*, *Vehicle Operation Techs. LLC v. Am. Honda Motor Co., Inc.*, 67 F.Supp.3d 637, 653 (D. Del. 2014).  DivX's decision to press on with its claims against Realtek is especially egregious given the discovery DivX has received in the co-pending ITC investigation, which led to DivX partially terminating the investigation against Realtek with respect to the '297 and '141 patents but pressing forward with those patents here.

The Court should award Realtek its reasonable attorneys' fees and costs incurred to date as a means to deter others from engaging in the same conduct and to compensate Realtek for its efforts in defending DivX's continued baseless claims.  *See In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 388 (3d Cir. 1997) (noting that "the time, effort, and resources expended in bringing sanctionable conduct to light would have been unnecessary had the sanctionable conduct never occurred" and stating that these "costs are as much a harm to a party in the litigation as is the delay in the litigation or the substantive prejudice caused by the conduct").

## VII.    CONCLUSION

For the reasons set forth above, Realtek respectfully requests that the Court dismiss DivX's claims against Realtek and award Realtek its costs and fees.

<div style="margin-left: 40%;">

K&L GATES LLP

/s/ *Theodore J. Angelis*
Theodore J. Angelis
925 4th Avenue, Suite 2900
Seattle, WA 98104
(206) 623-7580
theo.angelis@klgates.com
*Attorneys for Defendant*
*Realtek Semiconductor Corp.*

</div>

## **PROOF OF SERVICE**

I am employed in the County of San Francisco, State of California by a member of the Bar of this Court.  I am over the age of 18 and not a party to the within action.  My business address is 4 Embarcadero Center, Suite 1200, San Francisco, CA 94111.

 On March 7, 2021, I served the document(s) described as:

DEFENDANT REALTEK SEMICONDUCTOR CORPORATION'S
MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11

DECLARATION OF THEODORE J. ANGELIS IN SUPPORT OF DEFENDANT REALTEK
SEMICONDUCTOR CORPORATION'S MOTION FOR SANCTIONS UNDER FED. R. CIV.
P. 11; and EXHIBITS 1-7

on the parties to this action named on the attached service list by the method described below.

| | |
|---|---|
| | (By Personal Service) I caused a true and correct copy of said document(s) to be served by hand to the addressee(s) on the attached service list, with the name and address of the person served shown on the envelope. |
| **X** | (By Electronic Transmission) I transmitted a true and correct copy of said document(s) by electronic mail to the offices of the addressee(s) on the attached service list.  I did not receive within a reasonable time after the transmission any message or other indication that the transmission was unsuccessful. |
| | (By Overnight Delivery) I enclosed a true and correct copy of said document(s) in an envelope/package provided by an overnight delivery carrier addressed to the addressee(s) on the attached Service List, sealed it, and placed it for collection and overnight delivery following the ordinary business practices of K&L Gates LLP.  I am readily familiar with K&L Gates LLP's practice of collecting and processing correspondence for overnight delivery.  On the same day that correspondence is placed for collection and overnight delivery, it is collected by an overnight delivery carrier.  Delivery fees are pre-paid or provided for in accordance with the ordinary business practices of K&L Gates LLP. |
| | (By U.S. Mail)  I enclosed a true and correct copy of said document(s) in an envelope addressed to the addressee(s) on the attached service list and placed it for collection and mailing following the ordinary business practices of K&L Gates LLP.  I am readily familiar with the firm's practice of collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service with postage fully prepaid at Palo Alto, California. |

Executed on March 7, 2021 at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Perry C. Brooks

SERVICE LIST

| | |
|---|---|
| Brian E. Farnan<br>Michael J. Farnan<br>Rosemary Jean Piergiovanni<br>**Farnan LLP**<br>919 North Market Street<br>12th Floor<br>Wilmington, DE 19801<br>(302) 777-0300<br>(302) 777-0301 (fax)<br>bfarnan@farnanlaw.com<br>mfarnan@farnanlaw.com<br>rpiergiovanni@farnanlaw.com<br><br>Counsel for Plaintiff: DivX, LLC | Adam S. Rizk<br>Matthew A. Karambelas<br>Michael T. Renaud<br>**Mintz Levin Cohen Ferris Glovsky and Popeo PC**<br>One Financial Center<br>Boston, MA 02111<br>(617) 542-6000<br>MAKarambelas@mintz.com<br>ARizk@mintz.com<br>MTRenaud@mintz.com |

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 8

**K&L GATES**

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**

April 6, 2021

Theodore J. Angelis
theo.angelis@klgates.com

T +1 206 370 8101
F +1 206 623 7022

**By Email**

Michael Renaud
Mintz Levin Cohen Ferris Glovsky & Popeo PC
One Financial Center
Boston, MA 02111
Email: DivX-ITC@mintz.com

Re:    Certain Video Processing Devices, Components Thereof, and Digital Smart Televisions
        Containing the Same, Inv. No. 337-TA-1222

Dear Counsel:

Respondents are deeply concerned about DivX's refusal to dismiss claims premised on infringement of U.S. Patent No. 10,212,486 when discovery and Order No. 40 have shown those claims to be frivolous.  We are providing notice now so that DivX can consider the issues we raise prior to serving its expert reports.  By abandoning frivolous claims, DivX can avoid unnecessary work for Judge McNamara, for Respondents, and for Complainants.

**I.      DivX Has No Good-Faith Basis for Asserting Infringement Based on Video De-coder Limitations in the '486 Patent**

Respondents write, pursuant to Commission Rule 210.4(d)(1)(i) and 210.4(g), to put DivX on notice that they intend to pursue relief, under Commission Rule 210.4, because DivX continues to assert the '486 patent even though the evidence adduced indisputably shows that the "video decoder" limitations cannot be met.

Claim 1 of the '486 patent requires that "each partially encrypted frame, the cryptographic material for each partially encrypted frame, and the block reference for each partially encrypted frame" be provided "to a video decoder" and requires decrypting "using the video decoder."  To date, DivX has failed to identify any evidence showing that these limitations are met.  In fact, the evidence overwhelmingly shows the contrary is true.  And yet, it appears DivX maintains it has a basis for continuing its suit based on the '486 patent.

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**

When DivX served its Complaint and the corresponding exemplary claim charts, it identified certain "video decoders."  For example, DivX alleged that "the Realtek SoC contains a general purpose CPU (ARM CPU), a secure engine, as well as a dedicated subsystem for providing hardware acceleration of video processing, including without limitation, hardwired video decoders."  *E.g.*, Complaint Ex. 54 at 12.  DivX alleged that "[t]he RealTek SoC provides hardware acceleration of video and audio processing, including without limitation, a hardwired MFD (G1 Decoder), G2 Decoder, and HEVC Decoder video decoders."  *E.g., id.* at 54.

Now that fact discovery is complete, DivX surely knows that the "video decoders" referred to in its Complaint and the corresponding exemplary claim charts do not receive any encrypted video data and are not used in the decryption of any video data.  Indeed, all of the evidence supports these facts.  In each of Respondents' Accused Products, as well as the domestic industry products, it is undisputed that

DivX has been aware of this evidence for several weeks now.  Moreover, DivX seems to implicitly acknowledge all of this by failing to identify both in its initial infringement charts or any of the supplemental infringement charts what specifically satisfies the "video decoder" limitation in the "providing" step that must be used to perform the "decrypting" step.  This is further compounded by the fact that the same claimed "video decoder" must perform the "decoding" step.  In light of the evidence in DivX's possession and its failure to identify any good-faith position in its infringement contentions showing what corresponds to the "video decoder," DivX's continued assertion of these claims is necessarily frivolous.

As you know, DivX carries the burden of proving infringement.  And DivX's responsibility under 19 CFR §210.4 prevents it from advancing frivolous positions.

If DivX continues to force Respondents to defend against such frivolous infringement allegations, Respondents will seek sanctions, including at a minimum the recovery of its attorney fees and expenses.

### II.   DivX Has No Good-Faith Basis for Asserting Infringement Based on Deciphering Limitations in the '486 Patent

Respondents also write, pursuant to Commission Rule 210.4(d)(1)(i) and 210.4(g), to put DivX on notice that they intend to pursue relief, under Commission Rule 210.4, because DivX continues to assert the '486 patent even though the evidence adduced indisputably shows that the "deciphering" limitations cannot be met.  DivX cannot show infringement under the ALJ's constructions.

April 6, 2021

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**

Judge McNamara construed "deciphering" as "performing a procedure to unscramble data to make it readable to the intended audience, where the procedure does not require an outside source, such as a key." Order 40 at 61. Judge McNamara also adopted the parties' agreed construction of decrypting as "procedure that requires the use of an external input for at least one step in the procedure, such as a key, in order to access secure data." *Id.* at 33.

DivX has failed to clearly identify the operations it accuses of satisfying the "deciphering" limitation. From what Respondents can gather, DivX has three alternative theories:  Each of these theories is frivolous.

3

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**



4

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**



\*   \*   \*

Because the evidence in this case shows, contrary to DivX's expectations in its Complaint, that the video decoder plays no role in the decrypting process, DivX's contentions to the contrary have been unequivocally refuted.  DivX's claims have become frivolous, and under Commission Rule 210.4, DivX may not pursue claims that have become frivolous.  Likewise, under the claim constructions in Order 40, DivX's prior theories regarding "deciphering" have become frivolous.  DivX may not maintain theories that are contrary to the claim construction.  If DivX does not come forward, by April 9, with a reasonable basis for continuing to assert claims under the '486 patent in light of the information in this letter, Respondents may individually or as a group serve a motion for sanctions.

Very truly yours,

By___s/ Theodore J. Angelis_____
    Theodore J. Angelis
K&L Gates LLP
925 Fourth Ave., Suite 2900
Seattle, WA  98104-1158
E-mail:  theo.angelis@klgates.com

Counsel for Respondent Realtek
Semiconductor Corporation

By___s/ Benjamin K. Thompson_____
    Benjamin K. Thompson
Fish & Richardson P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, GA 30309
Email: ServiceSamsung-DivXITC@fr.com

Counsel for Respondents Samsung
Electronics Co., Ltd., Samsung Electronics
America, Inc. and Samsung Electronics
HCMC CE Complex Co. Ltd.

---

[1] Notably, the first time DivX appears to explicitly equate the unwrapping decryption procedure with deci-phering is in its Supplemental Appendices B3 and D3 served on March 16, 2021, after Respondents' non-infringement contentions were served.  This supplementation on its face is late and improper.

5

April 6, 2021

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION**

By  s/ Christopher Blackford
   Christopher Blackford
Finnegan, Henderson, Farabow, Garrett &
Dunner LLP
901 New York Avenue, NW
Washington, DC 20001
Email: 1222-LG-Finnegan@finnegan.com

Counsel for Respondents LG Electronics Inc.
and LG Electronics USA, Inc.

By  s/ Lyle Vander Schaaf
   Lyle Vander Schaaf
Brinks Gilson & Lione LLP
1775 Pennsylvania Avenue, Suite 900
Washington, DC 20006

Counsel for Respondents TCL Corporation,
TCL Technology Group Corporation, TCL
Electronics Holdings Limited, TTE
Technology, Inc., Shenzhen TCL New
Technologies Co. Ltd., TCL King Electrical
Appliances (Huizhou) Co. Ltd., TCL MOKA
International Limited, and TCL Smart Device
(Vietnam) Co., Ltd.

April 6, 2021

CONFIDENTIAL BUSINESS INFORMATION, SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 9

**Michael J. McNamara**
617 348 1884
MMcNamara@mintz.com



One Financial Center
Boston, MA  02111
617 542 6000
mintz.com

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION – SUBJECT TO PROTECTIVE ORDER**

April 8, 2021

<u>VIA EMAIL</u>

Theodore J. ("Theo") Angelis
K&L Gates LLP
925 4th Avenue, Suite 2900
Seattle, WA 98104
Phone: (206) 370-8101 (direct)
Fax: (206) 370-6006
theo.angelis@klgates.com

Cc: Counsel of Record for Respondents

Re:   *Certain Video Processing Devices, Components Thereof, and Digital Smart Televisions Containing the Same;* Investigation No. 337-TA-1222

Dear Theo:

It appears from your letters to DivX, and Realtek's motion practice in the district court action, that Respondents understand both DivX's contentions and the bases for those contentions. Your letter alleges that DivX has violated Commission Rules 210.4(d)(1)(i) and 210.4(g) because DivX cannot carry its evidentiary burden that the Accused Products include (1) a video decoder and (2) perform the step of deciphering.  Respondents' arguments are wrong, and are based upon their interpretation of a claim construction, which cannot form the basis of a violation of Commission Rules 210.4(d)(1)(i) and 210.4(g).  Even if a claim construction precluded infringement, which is unequivocally not the case here, a party may argue that a court's construction is too restrictive and it is an appealable issue. As a result, courts have found that a plaintiff's refusal to submit to a defendant's insistence that there is no infringement is not sanctionable conduct. *See, e.g.*, *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-cv-00764-WCB-RSP, 2014 U.S. Dist. LEXIS 146092, at *10 (E.D. Tex. Oct. 14, 2014).  If Respondents continue on this path, DivX will pursue its fees for opposing this motion practice.

In the current case, the evidence produced by Respondents clearly establishes infringement.

## 1.  Respondents' Products Infringe the Video Decoder Limitation of the Asserted Claims

The video decoder as described and claimed in the '486 Patent is present in each of the Accused Products.  The video decoder of the '486 Patent must be able to receive certain information and perform the process of "decrypting" and "decoding."  The evidence produced by Respondents shows that the Accused Products receive the relevant information and include hardware and/or software that performs both functions.

The term video decoder refers to hardware and/or software that can be configured to decrypt and decode a video stream.  The '486 Patent provides the following description of a video decoder: "a video decoder configured to **decrypt** the elementary bitstream using the

**MINTZ**



April 8, 2021
Page 2

cryptographic information and ***decode*** the elementary bitstream for rendering on a display device." '486 Patent, 3:27-30. Claim 1 of the '486 Patent is in perfect agreement with this description and requires the following:

> providing each partially encrypted frame, the cryptographic material for each partially encrypted frame, and the block reference for each partially encrypted frame from the parser to a video decoder;
> …
> decrypting the encrypted portion of each partially encrypted frame based upon the frame key for each partially encrypted frame using the video decoder; and
> decoding each decrypted frame for rendering on a display device using the video decoder.

'486 Patent, 11:9-12 and 11:21-26. The claim and the specification of the '486 Patent make clear that the video decoder of the '486 Patent performs both decryption and decoding of video. The Accused Products meet the plain and ordinary meaning of the term "video decoder."

Respondents did not seek construction of the term "video decoder" and have not identified any intrinsic evidence that would alter the plain and ordinary meaning of the term video decoder to one of ordinary skill in the art after reading the '486 Patent. *See, e.g.*, Joint Claim Construction Chart at 2, 7-8 (Jan. 12, 2021).

As is clear from your motion practice in the district court action and your letter, Respondents understand what DivX has accused of infringing the video decoder of the Asserted Claims of the '486 Patent. DivX has identified hardware and/or software that receives certain information, performs decryption, and performs decoding. *See, e.g.*, DivX's Initial Infringement Contentions at Appendices B1-B5 (Feb. 8, 2021 (and supplemental appendices thereto)). Each of the Respondents have provided evidence that shows the Accused Devices include hardware and/or software that is capable of receiving cryptographic information, decrypting a video stream, and decoding the elementary bitstream that has been decrypted for rendering on a display device. *See, e.g.*, '486 Patent, 3:27-30 and 10:54-11:26; *see also, e.g.*, DivX's Initial Infringement Contentions at Appendices B1-B5 (Feb. 8, 2021 (and supplemental appendices thereto)).

Respondents have not provided any credible evidence that the Accused Products do not have a video decoder as claimed by the '486 Patent. Nothing in the claim nor the record requires the same hardware and/or software to perform both functions of decrypting and decoding.

Respondents' sole argument for non-infringement of the video decoder limitation of the Asserted Claims of the '486 Patent appears to be that Respondents label a part of the Accused Products as a "video decoder," so DivX cannot point to additional hardware and/or software to satisfy the language of the Asserted Claims. Respondents' position is not tenable. DivX does not agree that the hardware and/or software that performs decryption and decoding is "logically and physically separate," as, e.g., information that is decrypted by the decryption hardware is sent to the decoding hardware. It is revealing that Respondents do not provide a single case citation in their letter supporting the argument that a combination of hardware and/or software that are related and communicate, but are (according to Respondents' characterization) "logically and physically separate" cannot meet a single claim element. *Cf., e.g., Dolby Labs., Inc. v. Lucent Techs., Inc.*, No. C-01-20709 JF (RS), 2003 U.S. Dist. LEXIS 27905, at *49 (N.D. Cal. Nov. 18,

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION – SUBJECT TO PROTECTIVE ORDER**

**MINTZ**



April 8, 2021
Page 3

2003) (construing the "rate loop processor" element as "a 'processor (hardware and/or software) that operates to meet the required bit rate for a given application'" (emphasis added)); *Bos. Sci. Corp. v. Cook Grp., Inc.*, Civil Action No. 15-980-LPS-CJB, 2016 U.S. Dist. LEXIS 177053, at *9-14 (D. Del. Dec. 22, 2016) (adopted by 2017 U.S. Dist. LEXIS 146118 (D. Del. Sep. 11, 2017)) (construing the claim element "a control element including a connector element" and finding that "the specification does not clearly preclude an embodiment in which the connector element and the remainder of the control element are 'structures that are separate but still connected together.' (D.I. 57 at 21)  As Plaintiffs correctly note, 'the specification is silent as to whether the ball connector is formed integrally with the control wire or is separately constructed and subsequently attached to the control wire.' (*Id.*) And so, there is no indication that the patent excludes embodiments in which, for example, a control wire and connector element that are multiple, distinct structures nevertheless 'are glued together in the course of manufacturing[,]' are bolted together, or have hooks connecting them. (Tr. at 28)."); *see also DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-cv-00764-WCB-RSP, 2014 U.S. Dist. LEXIS 146092, at *10 (E.D. Tex. Oct. 14, 2014).

It is undisputable that each of the Accused Products includes hardware and/or software that receives cryptographic material, performs decryption, and, in turn, decodes the unencrypted data, as identified in DivX's contentions.  That is all that the claims require of a video decoder as defined by the claims.  If Respondents sought a construction of the term video decoder that specified that a video decoder could not perform decryption or that a single piece of hardware must perform deciphering, decryption, and decoding, those arguments should have been presented to the Court during claim construction.  No such argument was made, likely because it flies in the face of the plain language of the intrinsic evidence and common sense.

## 2.  Respondents Products Satisfy the Deciphering Requirement of the Asserted Claims

The Accused Products infringe the deciphering limitation of the Asserted Claims.  Respondents' letter provides specific information about DivX's contentions.  The level of detail provided therein shows that DivX has more than satisfied its disclosure requirement, and Respondents understand the allegation.  As is even more clear here, Respondents' arguments rise and fall on the interpretation of the Court's claim construction.  As such, no violation of the Commission Rules or sanctionable conduct could have taken place.

DivX's contentions provide notice on the infringement of deciphering under DivX's and Respondents' proposed construction.  Respondents identify DivX's theory that in ███████████████ ██████████████████████████████████ as one of the ways that the Accused Products infringe.  Respondents are correct in that DivX does allege that the generation of a ███████████████ includes deciphering as required by the claims.  ███████████████████████████ █████████████

To the extent Respondents are trying to interpret ALJ McNamara's claim construction order to somehow preclude ██████████████████████████████████████████████████████████ ███████████████, we disagree.  ALJ McNamara's claim construction order only requires that an outside source cannot be used to decipher the input data and not that the input data itself cannot be a key. ███████████████████████████████████████████████████████

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION – SUBJECT TO PROTECTIVE ORDER**

**MINTZ**



April 8, 2021
Page 4

████████████████████████████████████████████████████████████ No
outside source is used.  Respondents' apparent position – that the ████████ constitutes an
"outside source" and therefore cannot satisfy the construction of deciphering - is a distortion of
ALJ McNamara's claim construction order, and repugnant to the arguments that you personally
made at the Markman hearing that the claim phrase "deciphering a frame key" requires the key
to be applied as an input to the deciphering unit.  Under Respondents' apparent circular
argument, the claim language could never be satisfied because a key could never be
deciphered.

DivX has satisfied its obligations under Commission Rules 210.4(d)(1)(i) and 210.4(g).  The
evidence produced in this case is sufficient to demonstrate infringement by each of the
Respondents.  If Respondents insist on going down this path, DivX will seek its fees for
opposing this frivolous motion.


Sincerely,

*/s/ Michael J. McNamara*
Michael J. McNamara

*Counsel to Complainant*
*DivX, LLC*

cc:     DivX-ITC@mintz.com
        All counsel of record

**CONTAINS CONFIDENTIAL BUSINESS INFORMATION – SUBJECT TO PROTECTIVE ORDER**

**United States International Trade Commission**
**Investigation No. 337-TA-1222**
***Certain Video Processing Devices, Components Thereof, and Digital Smart Televisions***
***Containing the Same***

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

I, Todd M. McGrath, hereby certify that on April 8, 2021, true and correct copies of the foregoing were served on the parties listed below:

| | |
|---|---|
| *Counsel for Respondents Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., and Samsung Electronics HCMC CE Complex, Co,, Ltd.*<br><br>Thad C. Kodish<br>FISH & RICHARDSON P.C.<br>1180 Peachtree Street NE, 21st Floor<br>Atlanta, GA 30309<br>Telephone: (404) 892-5005<br>Facsimile: (404) 892-5002<br>Email: ServiceSamsung-DivXITC@fr.com | ☐ Via Hand Delivery<br>☐ Via Federal Express Overnight Delivery<br>☐ Via First Class Mail, Postage Prepaid<br>☒ Via Electronic Mail |
| *Counsel for Respondents LG Electronics Inc. and LG Electronics U.S.A., Inc.*<br><br>Smith R. Brittingham IV<br>Finnegan, Henderson, Farabow,<br> Garrett & Dunner LLP<br>901 New York Avenue, NW<br>Washington, DC 20001<br>Tel: (202) 408-4000<br>Fax: (202) 408-4400<br>Email: 1222-LG-Finnegan@finnegan.com | ☐ Via Hand Delivery<br>☐ Via Federal Express Overnight Delivery<br>☐ Via First Class Mail, Postage Prepaid<br>☒ Via Electronic Mail |
| *Counsel for Respondents TCL Corporation, TCL Technology Group Corporation, TCL Electronics Holdings Limited, TTE Technology, Inc., Shenzhen TCL New Technologies Co. Ltd., TCL King Electrical Appliances (Huizhou) Co. Ltd., TCL MOKA International Limited, and TCL Smart Device (Vietnam) Co., Ltd.*<br><br>Lyle B. Vander Schaaf<br>BRINKS GILSON & LIONE<br>1775 Pennsylvania Avenue, NW<br>Suite 900<br>Washington, DC 20006 | ☐ Via Hand Delivery<br>☐ Via Federal Express Overnight Delivery<br>☐ Via First Class Mail, Postage Prepaid<br>☒ Via Electronic Mail |

**United States International Trade Commission**
**Investigation No. 337-TA-1222**
*Certain Video Processing Devices, Components Thereof, and Digital Smart Televisions*
*Containing the Same*

| | |
|---|---|
| Telephone: (202) 296-8700<br>Email: TCL-1222@brinksgilson.com | |
| *Counsel for Respondent Realtek Semiconductor Corp.*<br><br>Theodore J. Angelis<br>K&L Gates LLP<br>925 Fourth Avenue, Suite 2900<br>Seattle, WA 98104<br>Tel: (206) 623-7580<br>Fax: (206) 623-7022<br>Emails: theo.angelis@klgates.com<br>Realtek-337-1222@klgates.com | ☐ Via Hand Delivery<br>☐ Via Federal Express Overnight Delivery<br>☐ Via First Class Mail, Postage Prepaid<br>☒ Via Electronic Mail |

*/s/ Todd M. McGrath*
Todd M. McGrath
Legal Specialist
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA 02111
Telephone: (617) 348-3040

# EXHIBIT B

CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

**UNITED STATES INTERNATIONAL TRADE COMMISSION**
**WASHINGTON, D.C.**

**Before the Honorable MaryJoan McNamara**
**Administrative Law Judge**

| | |
|---|---|
| **In the Matter of** | |
| **CERTAIN VIDEO PROCESSING DEVICES, COMPONENTS THEREOF, AND DIGITAL SMART TELEVISIONS CONTAINING THE SAME** | **Investigation No. 337-TA-1222** |

**MEMORANDUM IN SUPPORT OF RESPONDENT REALTEK**
**SEMICONDUCTOR CORPORATION'S MOTION FOR SANCTIONS**

CONTAINS CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER

## **EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| - | Declaration of Theodore J. Angelis in Support of Respondent Realtek Semiconductor Corporation's Motion for Sanctions |
| 1 | 2020.10.30 Excerpts from Realtek's Responses to DivX First set of Interrogatories (Nos 1-39) |
| 2 | 2020.11.17 Letter from Realtek to DivX re DivX Notice |
| 3 | 2020.11.24 Letter from DivX to Realtek in Response to Realtek Letter Dated 2020.11.17 |
| 4 | 2020.12.23 Letter from Google LLC to DivX Infringement Allegations Related to Google Products |
| 5 | 2021.02.24 E-mail from Realtek to DivX re Notice of Motion of Partial Termination |
| 6 | 2021.01.18 Realtek's Objections and Fourth Supplemental Responses to DivX's First Set of Interrogatories |
| 7 | 2021.03.07 Realtek's Motion for Sanctions Under Fed. R. Civ. P. 11 |
| 8 | 2021.04.06 Letter from Realtek to DivX re '486 Patent |
| 9 | 2021.04.08 Letter from DivX to Realtek in Response to Realtek Letter Dated 2021.04.06 |

Respondent Realtek Semiconductor Corp. ("Realtek") respectfully moves for sanctions against Complainant DivX LLC ("DivX") and its counsel for their actions in violation of the Commission Rules, including 19 C.F.R. §§ 210.4 and 210.25, as well as Ground Rule 3.[1]

DivX engaged in at least four courses of sanctionable conduct, each of which independently warrants sanctions:  (1) DivX intentionally violated the ALJ's Order No. 40, which (had DivX followed it) would have ended this Investigation as to Realtek no later than March 2021; (2) DivX provided false representations, and false and misleading testimony, to the ALJ in an effort to avoid sanctions and keep its claims against Realtek alive; (3) DivX abused the Section 337 process as part of a scheme to divide the companies in the supply chain and use the threat of litigation costs to extort settlement payments from intermediate suppliers; and (4) DivX pursued claims against Realtek it knew to be frivolous for the improper purpose of obtaining discovery from a Taiwanese corporation that is otherwise outside of the Commission's jurisdiction.

From the outset of this Investigation, Realtek repeatedly warned DivX—in letters, in formal sanctions notices sent pursuant to § 210.4, and in its discovery responses—that DivX's claims were frivolous and brought for improper purposes.  Although DivX responded to each of Realtek's letters, and weakly denied the assertion that its claims were frivolous, DivX's statements provide no justification for its meritless claims, and its actions confirm that DivX knew that its claims against Realtek were brought solely to evade the Commission's rules and were designed to extort money from Realtek and its customers.  Indeed, DivX expressly stated, before claim

---

[1] Although DivX withdrew its claims against Realtek, the ALJ retains jurisdiction to consider sanctions for misconduct that occurred before dismissal.  *Walker v. Health Int'l Corp.*, 845 F.3d 1148, 1155 (Fed. Cir. 2017) ("[A]fter the merits of a case are dismissed, a district court retains jurisdiction over whether to grant sanctions."); *ED Capital, LLC v. Bloomfield Inv. Res. Corp.*, 316 F.R.D. 77, 80-81 (S.D.N.Y. 2016) (stating that the court retains jurisdiction to determine appropriateness of sanctions after underlying action is dismissed).

construction, that it ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████     On the eve of the evidentiary hearing—as expected—DivX dismissed all claims against Realtek, even though Realtek refused to forego its sanctions motion.  DivX's actions vividly underscore the fact that DivX had no intention of prosecuting its frivolous claims against Realtek and that its claims against Realtek were pretextual, frivolous, and sanctionable.

## I.      STATEMENT OF FACTS

### A.      DivX's Pursuit of Frivolous Claims Against Realtek

In DivX's complaint, there was no evidence—and no basis provided—for supporting the assertion that Realtek has anything to do with the accused technology.  First, for two of the technologies at issue, adaptive-bitrate streaming (in the '297 patent) and "trick play" (in the '141 patent), it was undisputed that such technologies were created and implemented—not by Realtek—but by video streaming companies, such Netflix and Amazon, or by TV makers, such as LG, Samsung, and TCL.  Indeed, in the complaint, DivX had no evidence to connect Realtek's technology with the MPEG-DASH and HLS technology identified as infringing.  *See* Complaint Exs. 50, 55, 60, 65.

On October 30, 2020, Realtek provided discovery responses highlighting that DivX's claims for infringement had no basis in factor or law.  Angelis Decl. Ex. 1 (reproducing the information and warnings within Realtek's first responses to DivX's Interrogatories.).  Soon

---

[2]  Realtek is reluctant to reveal settlement discussions, but when such discussions show sanctionable misconduct, they are admissible in a motion for sanctions.  *See* FRE 408(b); *see also, e.g.*, *Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 313 (E.D. Va. 2004) ("While the Rule itself does not expressly indicate that a motion for sanctions qualifies as 'another purpose' such that the rule of exclusion does not apply here, courts in this and other circuits have considered settlement documents when reviewing a motion for sanctions.") (collecting cases).

thereafter, on November 17, 2020, Realtek sent a detailed and forceful letter notifying DivX that its "complaint rests upon false statements and lacks the evidentiary support that Commission Rule 210.4(c) requires."  Angelis Decl. Ex. 2.  In its letter, Realtek carefully identified the components DivX identified as infringing for the '297 and '141 patents, such as the "uMediaServer, webOS operating system, and streaming applications, including Netflix, dash.js, and parser," and Realtek explained that DivX knows that others, "such as Netflix and Hulu," provide the accused applications.  *Id.*  Realtek further stated that it had given "DivX a chance to try to justify its false statements," but "DivX ha[d] refused to provide a single fact to support any of its allegations."  *Id.*

In response, DivX pointed to Realtek demo boards used in the United States and speculated that ███████████████████████████████████████████████████████████████ ███████████████████████████████████████  ███████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████  DivX nonetheless refused to dismiss its claims for infringement of the '297 and '141 patents, despite ongoing warnings that those claims were frivolous.

DivX asserted the '297 and '141 patents against Realtek until February 23, 2021, when it belatedly agreed to dismiss them.  *See* Angelis Decl. Ex. 5 (February 23, 2021 email from DivX counsel indicating an intention to dismiss all claims against Realtek from the '141 and '297 patents).  DivX's actions forced Realtek to incur significant fees and costs defending against those claims.  *Id.* ¶ 7.  Indeed, as the ALJ will recall, Realtek took a leading role in defending against the claims in the '297 and '141 patents, including arguing claim terms from those patents at the February 11 *Markman* hearing.  *Id.*; *see also* Feb. 11, 2021 Markman Hrg. Tr. at 259:5-268:4,

278:24-285:16, 291:13-292:8, 295:16-296:17 (Realtek's counsel handling argument, and follow-ups, for disputed terms from the '141 patent).  When DivX finally dismissed its claims for infringement of the '297 and '141 patents against Realtek, Realtek did not oppose termination, but explained that its "non-opposition is without prejudice to requesting relief under Commission Rules 210.4 and 210.25."  Angelis Decl. ¶ 8 & Ex. 5.

Second, with respect to the Digital Rights Management ("DRM") patents (the '486 and '749 patents), DivX knew that Realtek did not provide the accused playback devices.  To the contrary, Realtek's role was limited to helping implement well-known DRM technologies (such as AES-CTR) from third parties, ███████████████████████████████████████████

████████████████████████████████████████.  As mentioned above, Realtek provided DivX with a notice letter at the outset of the Investigation explaining, in detail, the baselessness of DivX's claims and announcing its intention to seek sanctions if DivX did not seek dismissal.  *See* Angelis Decl. Ex. 2.  Again, DivX's response was that Realtek demo boards displayed at the Consumer Electronics Show in Las Vegas ("CES") might have Netflix, YouTube, or other software on them that uses the accused DRM technology.  *Id.* Ex. 3 (Nov. 24 response letter).[3]
Discovery, of course, confirmed that ████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████   Yet DivX still refused to dismiss its claims.

---

[3] DivX also puzzlingly referred to an unaccused product, in a totally different platform (*i.e.* not in a television), used outside of the United States in Taipei.  Angelis Decl. Ex. 3, at 2.  That, obviously, was outside the scope of the Investigation and could not provide the absent factual support.

Realtek therefore went forward with a Rule 11 motion in the co-pending District Court case, which it served on March 7, 2021.  Angelis Decl. Ex. 7 (reproducing a copy of Realtek's motion.)  That motion focused on three fundamental failings in DivX's claims.  First, the direct infringement claims rest upon demo boards DivX knew did not include the allegedly infringing technology and, █████████████████████████.  *Id.* Ex. 7 at 8 (explaining that the demo boards "███████████ "lacked any ability to perform the accused streaming video functions," "did not utilize DRM," and "lacked the applications DivX has identified as infringing"); *id.* Ex. 4 ██████████████████████  Second, the indirect infringement allegations were frivolous because DivX had not (and could not) offer any evidence that Realtek had induced or contributed to others' infringement and because the video decoder in Realtek's products did not decrypt video.  *Id.* Ex. 7 at 9-17.[4]  Third, DivX's offer to dismiss the case in exchange for agreement to continue to provide discovery vividly demonstrated that it brought the case solely to circumvent territorial limitations on discovery rather than any legitimate intention to pursue claims against Realtek.  *Id.* Ex. 7 at 17-18.

After Realtek served DivX with its Rule 11 motion in the district court proceeding, DivX requested and received a stay of the proceeding.  *Id.* ¶ 19.  Notably, Realtek opposed the stay.  DivX's unusual request to stay *its own* lawsuit—which it had voluntarily chosen to initiate contemporaneously with this Investigation—was driven by DivX's desire to avoid having Realtek's Rule 11 motion heard and exposing that DivX pursued its baseless claims for an improper purpose.  *Id.*

### B.  DivX's Efforts to Extort Realtek and Realtek's Customers

---

[4] Realtek's argument regarding the video decoder was vindicated at trial, when TCL showed that, in the Realtek chips, ████████████████████████████████████████████
████████████████████████████████████████████
████████

DivX revealed its true intentions during a December 18, 2020 settlement conference with Realtek.  Angelis Decl. ¶ 10.  During that settlement conference, counsel for Realtek ███████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████ Realtek strongly objected and ultimately reiterated its intention to seek sanctions and recovery of fees and costs incurred.  *Id.* ¶ 13.  DivX responded that it would seek sanctions and defense costs against Realtek.  *Id.*

**C.      DivX's Pursuit of Claims Against Realtek for the Improper Purpose of Obtaining Discovery**

DivX revealed its further, improper motive for pursuing its frivolous claims just before the February 11 *Markman* hearing.  DivX contacted Realtek and said that it would dismiss all claims against Realtek, ████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████ Realtek said it would agree to dismissal only if it could bring its sanctions motion against DivX for DivX's improper actions.

*Id.* ¶ 15.   Realtek even offered to allow both sides to bring their respective motions, if DivX believed it could justify such a motion.  *Id.*  DivX refused, and it continued forward with its claims until the eve of the hearing, forcing Realtek to incur millions of dollars in attorneys' fees and costs. *Id.* ¶ 16.   On the eve of the evidentiary hearing and after DivX has misused the ITC action to improperly obtain discovery, DivX once again offered ████████████████████████████ ████████████████████████████████████████████ *Id.*  Realtek again refused.  *Id.*  Nonetheless, as evidently had been its plan from the start, DivX dismissed all claims against Realtek at, literally, the last possible minute, *see id.* ¶ 16, laying bare DivX's plan to use frivolous claims to obtain discovery and then to dismiss on the eve of trial.

   D.   **DivX's Intentionally Misleading Testimony In Support of its Untimely ████ ██████ Theory of Deciphering**

       On February 8, 2021, DivX provided infringement contentions.  Those contentions made no reference to "█████████" as DivX's theory of deciphering.  To the contrary, as the ALJ would later recount when precluding testimony related to the ██████ theory, DivX had pursued a "'█████████" throughout fact discovery.  ████████████████████████ ████████████████████████████████████████████ ████████████   For reference, the ██████ is highlighted in green below on a DivX demonstrative slide from the evidentiary hearing, CDX-0043C-120:



As the ALJ would later explain, the "████████" theory was a "material change" from the prior "███████ theory. *See* TCL Motion To Strike Objectionable Demonstratives of Dr. Glenn Reinman and Preclude Related Testimony at 1-2 (reproducing the ALJ's guidance regarding her ruling on Respondents' MIL No. 2, Motion Docket 1222-052, and stating that, on April 8, 2021, DivX accused, for the first time, that "███████████████████████████████ █████████████████████ and DivX therefore "materially changed its focus and theory"). The newly accused portion of the AES decryption procedure is represented by ██████████ ████████████████████████████████████████ ████████████████

DivX plainly abandoned its old ███████ theory in favor of the new █████████ theory because of the ALJ's *Markman* order. The ALJ issued her *Markman* order on March 12, 2021. That ruling confirmed what DivX knew from start: It had no claim against Realtek. Specifically, the ALJ construed "deciphering" as "performing a procedure to unscramble data to make it readable to the intended audience, where the procedure does not require an outside source, such as a key." Order No. 40 at 61. The ALJ also adopted the parties' agreed construction of decrypting as a "procedure that requires the use of an external input for at least one step in the procedure, such

as a key, in order to access secure data." *Id.* at 33.  Those rulings precluded DivX's ████████

████████  theories from satisfying the "deciphering" limitation.  DivX should therefore have

immediately dropped its operative "deciphering" theories for the '486 and '749 patents, as Order

40 required.  Order No. 40 at 26-27.

The ALJ's *Markman* order confirmed what should have been obvious at the outset of the

case:  There is no basis for DivX's claims against Realtek.  DivX, however, would not abandon its

claims for infringement of the DRM patents even after its operative theory had failed.  Instead,

DivX improperly pushed forward with the case and used Dr. Reinman's expert report, served on

April 8, 2021, to abandon its ██████ theory and transition to a previously undisclosed theory.

The facts show that the timing of this "new theory" was not an accident.  As noted, DivX

disclosed it on April 8, 2021.  Angelis Decl., Ex. 4 (CX-2912C, ¶¶ 99-110, 115, 117).  That was

just two days after DivX received Respondents' April 6, 2021 renewed notice that they would be

pursuing sanctions, and it was DivX's "defense" to the Respondents' renewed showing that

DivX's contentions for the deciphering limitation were frivolous.  Angelis Decl. Exs. 8, 9.

Because the new, ██████ theory was untimely, Realtek moved *in limine* to preclude

it on June 7, 2021, and the ALJ granted that motion on July 1.  *See* TCL Motion To Strike

Objectionable Demonstratives of Dr. Glenn Reinman and Preclude Related Testimony at 2-3

(reproducing the ALJ's guidance explaining her ruling on Respondents' MIL No. 2, Motion

Docket 1222-052); Respondents' Motion in Limine No. 2 To Exclude Complainant DivX's

Untimely Infringement Theory for the '486 Patent (June 7, 2021).  The ALJ sent the parties an

email explaining her ruling that "DivX is precluded from introducing testimony, arguments or

opinion with respect to the '486 patent that its ██████' theory satisfies the limitation of

'deciphering a frame key for each partially encrypted frame . . . .'"  *Id.*  The ALJ likewise stated

that ▮▮▮▮▮▮ was a new theory first disclosed "on April 8, 2021, long after the February 8, 2021 contention deadline, and after the close of the extended fact discovery of March 26, 2021." *Id.*  The ALJ also explained, in detail, why the ▮▮▮▮▮▮ theory was "not what DivX argued before the March 12, 2021 *Markman* construction Order issued or in its February 8, 2021 infringement contentions."  *Id.* at 3.  Moreover, she explained why she rejected DivX's argument that its "old '▮▮▮▮▮' theory" is "tied into" "its and Dr. Reinman's April 8, 2021 disclosure" of the "▮▮▮▮▮▮" theory.  *Id.*

DivX moved for reconsideration, and the ALJ denied that motion on July 1, 2021.  The ALJ explained that she had advised counsel for several years, and had amended her ground rules, because there were "too many infringement contentions . . . that aren't explicit enough."  *See* July 1, 2021 Hearing Tr. 28:16-18.  She also reiterated her ruling (summarized in her prior email communication), explaining that DivX had not disclosed a ▮▮▮▮▮ theory and would therefore be limited to "its first infringement theory."  *Id.* at 28:5.  DivX would be allowed only to explain "what constitutes the ▮▮▮▮ theory, which was what was initially argued."  *Id.* at 29:1-6.  The ALJ went on to hold that the relief Respondents had sought in precluding the ▮▮▮▮▮▮ theory was "narrowly framed and focused."  *Id. at* 28:18-19.  Accordingly, the ALJ denied the motion for reconsideration and clarified that DivX would only be allowed to put in the ▮▮▮▮▮ theory disclosed in its contentions.  *Id.* at 29:23–25.  The ALJ also recognized that there could be a factual dispute about whether DivX had disclosed its ▮▮▮▮▮ theory as part of its ▮▮▮▮ theory, so she would allow DivX to try to demonstrate at the evidentiary hearing that it had disclosed its ▮▮▮▮▮ theory as part of its ▮▮▮▮ theory.

The ALJ's ruling on Respondents' MIL No. 2, and her ruling on reconsideration—that DivX had not disclosed ▮▮▮▮▮▮ as a theory of deciphering—are very well supported.

DivX's unpersuasive argument that it had disclosed ███████████ with respect to code used in Realtek chips is based on the diagram below.  Far from containing the "explicit" disclosures the ALJ explained that contentions require, *see* July 1, 2021 Hearing Tr. at 28:16-18, the diagram identifies more than 50 components and has *absolutely no* narrative ████████████████



The only disclosure remotely related to "█████████" is one filename—███████████████—in the diagram above and in a distant, massive string citation.  CX-2927C.0240.  Disclosing that filename is far from an "explicit" disclosure that infringement contentions require.  The ALJ properly held these disclosures did not put Realtek on notice of ███████████ as a theory of deciphering. *See supra* p. 9-10 (referring to the ALJ's initial ruling and ruling on reconsideration).  Although DivX had supplemented its February 8 contentions, on approximately March 15, 2021, to add a reference to the file ████████████████████ it again failed to say anything about ███ ███████.  Indeed, citation to the █████████████ does not even confirm that █████████ is at issue, as Dr. Reinman conceded on cross-examination.  Tr. (Reinman) at 865:22-866:1

(responding, when asked whether the ███████████ performs ██████████ "*[a]mong other things*, but it certainly does include the ██████████" (emphasis added)).

For the products that use █████████, DivX relied on a similar diagram, but that diagram is even more deficient. It does not even identify the file that actually performs ██ ████ Comparing the diagram disclosed with the diagram used at the hearing confirms the lack of disclosure. As the second diagram below shows, the diagram DivX provided with its contentions does not even list the file that performs ████████



- 12 -



The suggestion that Diagram 1 put Realtek on notice is undeniably false.  Indeed, DivX was forced to admit on cross-examination that the ██████ diagram above does not even identify the source code that performs ████████████, *see* Tr. (Reinman) 875:14-878:21, and the contentions involving TVs with █████ chips likewise fail to mention ███████████ or identify function that performs ████████████ ███████████████████████████████ ████████████████████████████████████████████ ██████████████████████████

---

[5] There is a citation in DivX's contentions to a page range that includes—but is not coextensive with—the █████████ code, but that citation is within a lengthy string citation that says nothing about ███████████ CX-2923C.0221.

The ALJ, in denying reconsideration, allowed DivX to present evidence that it disclosed ███████ as a theory of deciphering when disclosing its ██████ theory.  *See supra* p. 10-11.  But DivX had no such evidence.  Rather than conceding the issue, and saving the parties substantial fees and costs, or relying only on what was supportable, DivX provided false and misleading representations and testimony at the evidentiary hearing.  In particular, DivX presented false and misleading testimony, stating that: (1) it had been pursuing ███████ as a theory of deciphering since at least February 4, 2021, and (2) it had disclosed everything it could regarding ███████ theory, and it could not disclose specifics because it had not received the discovery necessary.  The record shows that those representations and testimony are contrary to the facts.

1.  **DivX Was Not Pursuing** ████████ **as Its Deciphering Theory Prior to the March 12, 2021** *Markman* **Order, as Shown by Its Failure to Even Seek** ██████ **Code from** ██████ **Before that Date**

The evidence shows that DivX concocted its ████████ theory in mid-March 2021.  Dr. Reinman testified that the precise implementation details of ████████ were *critical* to his infringement analysis, but he was forced to admit on cross-examination that he did not investigate ██████ ███████ implementation prior to the *Markman* order.  In particular, Dr. Reinman testified on direct examination that █████████████████████████████████ portion was implemented as an external input.  Tr. (Reinman) at 847:7-9.  But he also admitted, on cross-examination, that he "wouldn't know how ███████ worked" without the ██ ██████ code:



Transcript (Reinman) 878:13-21.

If ███████ had been part of DivX's infringement case, it would have asked for the ███████ code.  But Dr. Reinman admitted that he did not even try to obtain the ███████ ███████ code until after the ALJ's claim construction order.  In particular, Dr. Reinman conceded he knew ███████ had ███████ code before February 4.  Tr. (Reinman) 881:1-5.  He also testified that he had open lines of communication with DivX's counsel, "could have *absolutely* suggested things" to include in the contentions, and explicitly and personally worked on the infringement contentions.  Tr. (Reinman) at 882:17-883:8 (emphasis added); Tr. (Reinman) at 890:20-22 (Dr. Reinman agreeing that he "help[ed] DivX prepare infringement contentions for this case").  Yet DivX did not name the ███████ ███████ code in its contentions,[6] and DivX did not even *request* the ███████ source code from ███████ until March 22, 2021,

---

[6] Dr. Reinman said he had no recollection of whether ███████s ███████ code was cited in the contentions.  Tr. (Reinman) at 878:8-12.  In fact, DivX's contentions show that it did not identify the ███████ ███████ code by name or say anything about ███████ █ ███████.  *See, e.g.*, CX-2927.0191 to .0223.

well after the ALJ's claim construction ruling on March 12 and well after the contentions supplementation on March 15.  Tr. (Reinman) at 880:3-25.

      **2.**      **DivX Provided False Representations and Testimony When Stating That Discovery Problems Prevented it from Disclosing** ███████████

DivX provided false or intentionally misleading testimony when it represented that discovery problems prevented it from disclosing its ███████ theory for TVs that contains Realtek SoCs.[7]  DivX's arguments rest on three representations by DivX's counsel and Dr. Reinman:  (1) DivX did not have the ████ Assembly Code for ██████████ until March 1; (2) regardless of when DivX had the ████ Assembly Code, DivX had no reason to look at that code prior to March 1; and (3) DivX needed the ████ Assembly Code to be able to disclose ███ ████████ as its theory of deciphering.  Each of those representations is false.

DivX represented, at trial, that it did not have the relevant ████ Assembly Code (██ ██████████) until March 1, and it was only then that Dr. Reinman could "find" ██████████ in that code.  DivX's deceptive question, and the first part of Dr. Reinman's answer, are below:

---

[7] Realtek has already shown above, *see supra* pp. 14-15, that DivX could have, but did not, disclose ██████████ as an infringement theory for TVs with MediaTek SoCs.  This section shows that DivX's statements and testimony regarding ███████████ functionality in the Realtek chips were likewise false.



*Id.* at 785:23-786:6. In reality, the ▮▮▮ Assembly Code was made available far earlier, as Dr. Reinman was forced to admit. In particular, Dr. Reinman conceded on cross-examination, that he had reviewed that same assembly code no later than February 4. *Id.* at 863:11-868:13, *id.* at 870:3-11; RDX-0036.2 to RDX-0036.8 (showing that DivX requested and reviewed the ▮▮▮ Assembly Code (▮▮▮▮▮▮) no later than February 4 and it was hand delivered in hard copy no later than February 8.)

When confronted with that information, Dr. Reinman provided a second piece of deceptive testimony on this issue. He falsely testified that he had no reason to examine that ▮▮▮ Assembly Code prior to March 1 because "there was no way to know that [its ▮▮▮▮▮▮] functions were used." Tr. (Reinman) at 864:20-22. But again, Dr. Reinman was forced to concede on cross-examination that he knew by February 4 that the *same* ▮▮▮ Assembly Code at issue was used to perform ▮▮▮▮▮▮ in LG televisions with Realtek chips. Tr. (Reinman) at 870:18-871:8.

Confronted with this contradiction, he pretended not to remember the LG televisions and suggested that he and DivX had explicitly disclosed k███████ for the relevant LG televisions.  Tr. (Reinman) at 871:3-8.  That, too, was false.  The LG contentions do not even mention the ███ Assembly Code when discussing deciphering.  CX-2920C.0158-.0181.

In an effort to overcome these falsehoods, Dr. Reinman pretended that the issue regarding the ███ Assembly Code was whether he should have assumed that TCL Android televisions used the same code that LG television used to perform ████████.  Tr. (Reinman) at 871:13-20. That was an attempt at misdirection.  DivX and Dr. Reinman knew that the ███ Assembly Code at issue was used to perform ███████ n certain LG televisions no later than February 4, but DivX said nothing about that code, or ███████, in its contentions regarding *any* televisions. Nothing would have changed if Dr. Reinman had known that same code was also used for ███ ███████ in TCL Android televisions.

Dr. Reinman's suggestion, at the hearing, that the use of the ███ Assembly Code in the LG televisions was irrelevant is especially misleading and untruthful because Dr. Reinman *explicitly relied on* LG's use of that same ███ Assembly Code as purported support of his opinions regarding other televisions, namely the ██████████ televisions.  In particular, Dr. Reinman admitted on cross examination that he relied on the ███ Assembly Code as used in the LG televisions—which the parties referred to at the hearing as the 3150 Realtek source code— as "exemplary" and as alleged proof that ████████████ (with Realtek SoCs) allegedly practiced the '486 patent.  Tr. (Reinman) at 901:5-24.

Finally, there was a third deception—that DivX needed the ███ Assembly Code to disclose ███████ as a theory of deciphering.  As shown above, DivX tried to blame the delay in production of certain code (which *did not* include the ███ Assembly Code itself) as a

justification for the failure to disclose ███████████  *See supra* pp. 16–18.  But Dr. Reinman

testified that he had Realtek's RTL code in January 2021, and Realtek's technical witness was

examined on that code at his January 22 deposition.  Tr. (Reinman) 778:25-779:19.  Dr. Reinman

testified that, in his view, the RTL showed the allegedly infringing ████████.  Tr. (Reinman)

at 903:13-904:10 (emphasis added) (identifying the RTL code as one of "multiple implementations

that all would infringe *were they used*.").  Thus, Dr. Reinman had everything he needed to disclose

████████ by January 2021.

Moreover, Dr. Reinman conceded on cross-examination that he had relied on *publicly*

*available* pseudocode from 2003 to support his ████████ theory.  In particular, Dr. Reinman

testified that his report relies upon and reproduces portions of 2003 "pseudocode that would be

used for ████████."  Tr. (Reinman) at 883:21-24; *id.* at 885:22-886:20; CX-1361.0001.

He also testified that he was aware of that 2003 document, and the pseudocode he cited, well before

this investigation started.  Tr. (Reinman) at 890:11-19.  He easily could have disclosed that ███

████████ if implemented as he expected, was infringing, but he chose not to do so.  DivX's

representations that it could not have disclosed ████████ earlier, and Dr. Reinman's

testimony, were intentionally false and misleading.

## II.     LEGAL STANDARD

### A.     The Commission's Sanctions Rules

Commission Rule 210.4(c) imposes a duty of candor upon all attorneys and parties who

appear before the Commission.  By presenting a complaint to the Commission, an attorney or party

certifies that it "is not being presented for any improper purpose" and the "allegations and other

factual contentions have evidentiary support."  19 C.F.R. § 210.4(c).  "If any portion of a

representation is found to be false, frivolous, misleading, or otherwise in violation of paragraph (c), a sanction may be imposed." 19 C.F.R. § 210.4(d).

Indeed, before alleging patent infringement, a party and its counsel must "conduct a reasonable inquiry into the law and facts . . . to certify that the claims contained therein are not frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Q-Pharma, Inc. v. The Andrew Jergens Co.*, 360 F.3d 1295, 1300–01 (Fed. Cir. 2004); *In the Matter of Certain Light-Emitting Diode Products And Components Thereof*, Inv. No. 337-TA-947, Notice Regarding Issuance Of Public Version Of Final Initial Determination And Recommended Determination On Remedy And Bond (Sept. 2, 2016) (McNamara, J.) (granting sanctions where pleadings contained deliberate untruths and misstatements).

If there is a violation of the duties imposed by 19 C.F.R. § 210.4, an aggrieved party may file a motion for sanctions. 19 C.F.R. § 210.25.  Sanctions are particularly appropriate in a patent cases involving false representations and improper purposes because such cases "can be an expensive proposition," and "[d]efending against baseless claims of infringement" "subjects the alleged infringer to undue costs"—"precisely the scenario Rule 11 contemplates."  *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000).

The ALJ also has the inherent power to police misconduct before her.  *See* 19 C.F.R. § 210.4(d)(1)(ii) ("The administrative law judge or the Commission may enter an order *sua sponte* describing the conduct that appears to violate paragraph (c) of this section"); *Certain Dental & Orthodontic Scanners & Software*, Inv. No. 337-TA-1144, Order No. 38 (Oct. 16, 2019) (ordering complainant to show cause why it should not be sanctioned for requiring respondent to spend time responding to frivolous motions).

- 20 -

**B.      Ground Rules and Sanctions for Violations**

In addition to the admonition in Order No. 40 to drop unsupportable claims, Order No. 40

incorporated the requirement in the Ground Rules that specifically instructs parties to drop claims

that have become meritless in light of the claim construction.   In particular, Ground Rule 29

provides that parties "should file a notice on EDIS within seven (7) business days when any issue

… becomes moot, or is being dropped."  G.R. 2.9.  Violation of the Ground Rules is grounds for

imposing sanctions.  *See Certain Infotainment Systems, Components Thereof, and Automobiles*

*Containing the Same*, Inv. No. 337-TA-1119, USITC Pub. 674291, Order No. 32 at 8 (Apr. 29,

2019) (ordering Respondents show cause for "why they should not be sanctioned for violation of

Commission Rule 210.4(c)(2) and the ground rules.).

## III.    DISCUSSION

**A.      DivX's Pursuit of its Untimely ▮▮▮▮▮ Deciphering Theory Willfully Violated Order No. 40 and Therefore Warrants Sanctions**

When the ALJ issued Order No. 40, her *Markman* order, DivX's "▮▮▮▮ deciphering

theory was no longer viable.  *See supra* pp. 8–9.  Order No. 40 expressly precluded DivX from

changing its infringement theory and required DivX to drop all theories that had become moot.

*See* Order No. 40 at 26-27.  However, DivX did not drop its non-viable theory, so Respondents

sent sanctions papers on April 6, 2021.  Angelis Decl. Ex. 8.  Two days later, on April 8, 2021,

DivX first articulated its new "▮▮▮▮▮" theory of deciphering.  As the ALJ properly held,

this was an entirely new theory.  *See supra* pp. 9–10.  DivX's new theory was a transparent

response to, and attempt to circumvent, the ALJ's *Markman* order and an improper refusal to

abandon a non-viable infringement theory in hopes of avoiding sanctions.

DivX's improper and untimely ▮▮▮▮ theory of deciphering forced Realtek to incur

millions of dollars in attorneys' fees and costs after Realtek served its sanctions papers on April 6,

- 21 -

2021.  DivX was on notice, no later than that March 12, 2021 *Markman* order, that it had no viable theory of infringement remaining for the only patent asserted against Realtek.  (Indeed, Dr. Reinman conceded at trial that all of the theories disclosed in DivX's contentions had been abandoned after Order No. 40.  *See* Tr. (Reinman) at 897:4-8 (confirming that DivX abandoned the ███████ theory).  DivX's decision nonetheless to move forward with its claims violated Commission rules and caused significant harm to Realtek.  Had DivX properly abandoned its ██ ███████ theory on April 6, 2021, all claims against Realtek would have been dismissed, and DivX could have avoided sanctions with respect to pursuing this untimely ███████ theory. DivX's misconduct is worthy of punishment, and substantial sanctions are necessary to deter such misconduct in the future and to educate the ITC bar.

Court routinely award sanctions when a party pursues claims that are baseless and/or frivolous in light of an adverse claim construction.  In *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327-28 (Fed. Cir. 2013), the Federal Circuit held that Rule 11 sanctions and fees under § 285 are authorized when a party pursues an unjustifiable theory after claim construction has precluded that theory.  *Id.* at 1327-28; *see also id.* ("[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim construction.").[8]

DivX should never have filed its claims against Realtek, but regardless, it was certainly obligated to reevaluate, and to be honest about, the claims it had pursued and the impact of Order No. 40 on those claims.  DivX knew—after Realtek sent its letter on April 6—that refusing to

---

[8] *Taurus IP* was decided under the pre-*Octane Fitness* standard, which required both objective baselessness *and* subjective bad faith.  726 F.3d at 1326-27.  Accordingly, its discussion of 35 U.S.C. § 285 referenced and applied Rule 11 authority.  *See generally id.* at 1327 (relying on the discussion of sanctionable misconduct under Rule 11 in *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012) to determine whether to award fees).

dismiss its complaint against Realtek risked sanctions because Order No. 40 precluded the only theory actually disclosed.  It nonetheless persisted until the eve of trial, causing Realtek to incur significant attorneys' fees and costs.  The ALJ should therefore award sanctions in the amount of at least all fees and costs incurred after April 6, 2021, until dismissal, with respect to DivX's pursued of untimely ███████ deciphering theory against Realtek.

   **B.    DivX's Attempt to Conceal its Violation of Order No. 40 by Providing False Representations and Testimony Further Warrants Sanctions**

DivX continued its pattern of sanctionable conduct by offering false and misleading representations designed to conceal its violation of Order No. 40.  First, DivX falsely asserted that it had been pursuing ███████ as its deciphering theory prior to the Order No. 40, when the record flatly disproves that assertion.  Second, DivX made false and misleading statements, and presenting false testimony, stating that it lacked the discovery necessary to disclose ███████ as a theory of infringement.  Again, as the record shows, DivX had overwhelming volumes of evidence that it could have used to disclose they ███████ theory, if DivX had been pursuing it.  This deceptive conduct independently warrants sanctions in the amount of at least all fees and costs incurred after April 6, 2021, until dismissal.

   **1.    DivX Provided False or Misleading Testimony That It Was Pursuing ███ ███ as a Theory of Infringement Prior to the ALJ's *Markman* Order**

Although the ALJ properly concluded that DivX did not disclose ███████ as a theory of infringement until April 8, 2021, the ALJ allowed DivX to try to convince her that DivX had been pursuing ███████ as an alternative theory, and DivX's disclosure of its ███████ theory included a disclosure of the ███████ theory in February. *See supra* p. 10.  Rather than responding truthfully, DivX concocted a false narrative and presented it both before, and during, the hearing.

As shown above, Dr. Reinman agreed that he "wouldn't know how ████████ worked in the ██████ SoCs" without the ██████ RTL code.  *See supra* pp. 14–15.  He also testified that he had open lines of communication with DivX's counsel, "could have *absolutely* suggested things" to include in the contentions, and explicitly and personally worked on the infringement contentions.  *See supra* p. 15.  Yet DivX did not cite the ██████ code in its contentions, and DivX did not even *request* the ██████ source code from ██████ until March 22, 2021, well after the ALJ's claim construction ruling on March 12 and well after the contentions supplementation on March 15.  *See supra* pp. 15–16.  If DivX had actually been pursuing a ██ ██████ theory before the *Markman* order, there can be no doubt that DivX and Dr. Reinman would have requested the code that was necessary for him "to know how ██████ worked." Tr. (Reinman) 878:18-21.  DivX and Dr. Reinman would also have cited that code in their initial contentions, as they did at the hearing.  *See supra* pp. 11–14 (contrasting the diagram from the contentions, which does not mention ██████ and does not cite the ██████ ██████ code, with the diagram from the hearing, which does).  The failure to request ██████ ██ ██████ code, and the failure to discuss it in the contentions, shows that DivX did not begin pursuing ██████ n until after Order No. 40.

In addition, Dr. Reinman's expert report was quite detailed.  It relied on ██████ functionality discussed in a wide variety of code and public documents.  All of that code, and all of those documents, were fully available to Dr. Reinman in early February 2020.  *See supra* pp. 16–19.  Dr. Reinman had access to the pseudocode on which he relied since 2003.  *See supra* p. 19.  Dr. Reinman had access to the Realtek RTL code on which he relied, and testimony regarding that code, no later than January 22, 2021.  *See supra* pp. 18–19.  And he had the ████ Assembly Code, and knowledge that it was used ██████, no later than February 4,

2021.  *See supra* pp. 16–18.  Indeed, Dr. Reinman testified that he viewed the ███ Assembly Code produced in early February as "exemplary."  *See supra* p. 18.  Yet the contentions did not discuss ███████ in a single one of these sources.

The only logical conclusion is that—after Order No. 40—DivX concocted a new theory and decided to try to deceive the ALJ into believing that theory was previously disclosed.  To do so, it deliberately offered false and misleading testimony.  Offering false testimony to secure a litigation advantage is the epitome of sanctionable misconduct.  *See, e.g.*, *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 920-21 (Fed. Cir. 2012) (affirming district court's decision that plaintiffs engaged in litigation misconduct due to, *inter alia*, bringing objectively baseless suit and relying on improper expert testimony); *Flexiteek Americas, Inc. v. Plasteak, Inc*., No. 12-60215-CIV, 2016 WL 7497485, at *18 (S.D. Fla. Feb. 4, 2016), *report and recommendation adopted as modified*, No. 12-60215-CIV, 2016 WL 7508240 (S.D. Fla. Mar. 31, 2016) (finding that plaintiffs prolonged litigation and pursued claims through rejected expert testimony after adverse claim construction, and granting appropriate sanctions).

## 2. DivX Provided False or Misleading Testimony Stating That It Could Not Disclose ███████ Prior to March 1, 2021

DivX's second set of false and misleading representations and testimony relate to its purported explanation for failing to disclose ███████ as an infringement theory.  DivX falsely suggested that all of its failures to disclose the ███████ theory were attributable to a delay by the remote source code provider in providing certain source code related to one subset of TVs at issue in the case, *i.e.* ███████ that include Realtek chips.  *See supra* pp. 16–19.  Of course, that explanation has nothing to do with TVs that include ███████ chips.  DivX made no effort to find out how those chips performed ███████ until March 22, belying its false testimony that discovery was the reason it could not disclose ███████  *See supra* pp. 14–16.

DivX made three false arguments as to why it could not have explained its ███████ theory in its contentions: (1) DivX did not have the ████ Assembly Code until March 1; (2) DivX had no reason to look at the ████ Assembly Code prior to March 1; and (3) DivX needed the ████ Assembly Code to be able to disclose ████████ as its theory of deciphering.  As shown above and below, each of those representations is false.  *See supra* pp. 14–19.

        a.       *DivX falsely represented that it did not have the ████ Assembly Code prior to March 1, 2021*

DivX's representations that it did not have the relevant ████ Assembly Code until March 1, and only at that time was able to "find" the allegedly infringing ████████ functionality, is baseless.  Dr. Reinman expressly conceded that he had and reviewed that same assembly code no later than February 4.  *See supra* pp. 17–18.

        b.       *DivX falsely represented that it did not know that the ████ Assembly Code was relevant to ████████ prior to March 1, 2021*

When confronted with information showing that he had the ████ Assembly Code by February 4, 2021, Dr. Reinman pivoted to a second piece of deceptive testimony.  He falsely testified that he had no reason to examine that code prior to March 1 because "there was no way to know that [its ████████] functions were used."  Tr. (Reinman) at 864:20-22.  But again, Dr. Reinman was forced to abandon that false assertion on cross-examination because he knew by February 4 that the same ████ Assembly Code was used in ████████ with Realtek chips.  *See supra* pp. 17–18.

In an effort to further misdirect the ALJ, he falsely suggested that—although he did not recall specifically—he thinks DivX *did* provide detailed ████████ contentions for the ████ ████, given that he had the relevant assembly code and all the connective code.  *See supra* pp. 17–18.  That, too, is false.  The ████ contentions contain no such detailed description.  *See supra* p. 18.

Had DivX disclosed ██████████ as a theory in connection with ██████████, at least there would have been some kind of notice.  Instead, there was none.

Dr. Reinman further sought to misdirect the ALJ by representing that the only issue regarding the lack of disclosure was whether Dr. Reinman should have assumed, without yet having the confirming code, that the ████ Assembly Code was used to perform ██████████ in ██████████ Tr. (Reinman) at 871:13-20.  Whether Dr. Reinman knew that ████ Assembly Code performed ██████████ in the ██████████ before March 1 is a red herring.  He knew, no later than February 4, that the ████ Assembly Code performed ██████████ for the ██████████ but offered no detailed or explicit contentions regarding ██████████.  *See supra* pp. 17–18.

Dr. Reinman's attempt, at the hearing, to suggest that the ████ Assembly Code used in the ██████████ was irrelevant, is especially misleading and untruthful, because Dr. Reinman *explicitly relied on* the use of that code in the ██████████ to support his infringement arguments for an entirely different set of products, the ██████████ with Realtek chips.  *See supra* p. 18.  In other words, he tried to have it both ways:  He testified that the ██████████s' use of the ████ Assembly Code was *not* enough to allow him to disclose ██████████ as a theory of deciphering for any television—including ██████████—but it was somehow enough to show that the ██████████ with Realtek chips infringe.[9]  *See supra* pp. 16–19.  In short, Dr. Reinman admittedly had all he needed to disclose ██████████ in connection with the ████

---

[9] Dr. Reinman took this position that the ████ Assembly Code was "exemplary" because DivX and he were forced to admit that they have no idea whether, or how, ██████████ with Realtek chips perform ██████████.  DivX never obtained the code that would show whether ██████████, Realtek code, or something else is used for decrypting, and whether hardware or software is used.  Tr. (Reinman) at 896:1-13.  Thus, Dr. Reinman had nothing to show whether the ██████████ with Realtek chips infringe.

Assembly Code as of February 4.  He did not do so because neither he nor DivX were pursuing ████████ as a theory.  His testimony to the contrary was false and a deliberate attempt to mislead.

> c. *All of DivX's and Dr. Reinman's representations were false and misleading because DivX had Realtek's RTL code, and public documents, which Dr. Reinman relied upon at the hearing to disclose the* ██████ *theory timely*

Even putting aside the ████ Assembly Code, DivX was forced to concede at the hearing that, as of January 2021, it had all the information it needed to provide detailed ██████ contentions.  Dr. Reinman testified that:  (1) he had Realtek's RTL code in January 2021 and Realtek's technical witness was examined at his deposition on that code on January 22; and (2) the RTL code instantiates allegedly infringing ████████  *See supra* pp. 18–19.  He therefore conceded that he and DivX easily *could* have described DivX's ██████ theory by reference to Realtek's RTL code.  They did not do so, as the ALJ's order on Respondents' Motion in Limine properly concluded.  *See supra* pp. 9–10.

Dr. Reinman also conceded on cross-examination that he relied on pseudocode publicly-available as of 2003 to support his ██████ theory.  *See supra* p. 19.  In particular, Dr. Reinman testified that his report relies upon and reproduces portions of 2003 "pseudocode that would be used for AES ██████."  Tr. (Reinman) at 883:21-24; *id.* at 885:22-886:20; CX-1361.0001.  He also testified that he was aware of that 2003 document, and the pseudocode he cited, well before this investigation started.  Tr. (Reinman) at 890:11-19.  He easily could have disclosed ██████ as a theory of infringement by relying on the public pseudocode.  And if there were implementation details yet to be received, DivX easily could have said that it was pursuing ██████ as a theory of deciphering subject to confirmation through further discovery.  Instead, it said nothing.

### 3.    Sanctions Are Necessary to Deter Such Deceptive Practices.

As shown above, DivX's pursuit of its improper and untimely ████████ theory of

deciphering is sanctionable.   But moreover, DivX's deceptive practices in advancing its ██

████████ theory are also independently sanctionable.  Sanctions are appropriate under 19 C.F.R.

§ 210.4(c) and (d) not only when a representation is frivolous, but also where it is false or

misleading.  Here, DivX pretended to have pursued, and disclosed, its ████████ theory as part

of its ████████ theory, and then provided false and misleading testimony about its actions.  *See*

*supra* pp. 10–19.  DivX's deception against Realtek persisted until the eve of trial, causing Realtek

to incur significant attorneys' fees and costs.  The ALJ should therefore award additional sanctions

against DivX in addition to all fees and costs incurred after April 6, 2021, until DivX sought

dismissal.

### C.    DivX's Extortion Violates 19 C.F.R. § 210.4 and Warrants Sanctions

DivX's violation of Order No. 40 and attempts to conceal its violation through deception

are emblematic of a greater scheme to use Section 337 in order to improperly extorting known

non-infringers such as Realtek.  More specifically, DivX's conduct was and is designed to use

litigation costs to extort as much payment as possible from intermediate participants in the supply

chain without regard to whether those suppliers—or the products they offer—infringe by

themselves.  DivX's attempt to manipulate the Section 337 process to target Realtek in such a way

further warrants sanctions and is necessary to deter future patentees from abusing Section 337 for

such improper purposes.

### 1.    DivX's Knew Its Infringement Theories Were Baseless

DivX initiated and pursued this Investigation against Realtek with knowledge at all

relevant times that its infringement claims against Realtek were baseless.

*First*, DivX knew its infringement theories against Realtek were baseless from the outset of the Investigation.  As shown above, DivX had no basis for accusing Realtek of infringing the '297 and '141 patents, which address technologies created and used by video streaming companies, such Netflix and Amazon, or TV makers, such as LG, Samsung, and TCL.  *See supra* pp. 2–3.  For the DRM patents, DivX's quixotic attempt to tie its claims to Realtek demo boards was equally baseless because DivX knew that the demo boards did not use any accused streaming video and ████████████████████████████ *See supra* p. 4.  In addition, ████████████████████ ██████████████████████████████████████████████████████.  *See supra* p. 5.  Accordingly, DivX should be required to pay sanctions consisting of the costs of defending against the '141 and '297 claims from the outset of the case until DivX dismissed them.

Also, DivX did not (and could not) present any evidence that Realtek induced or contributed to infringement of the DRM patents.[10]  DivX's theories of infringement were objectively baseless because they depended upon treating an ████ CPU as a part of a MIPS video CPU, when the two CPUs are wholly separate and cannot communicate with one another.  *See supra* p. 5, n. 4.  Thus, DivX should be required to pay sanctions consisting of the costs of defending against the '749 and '486 patents.

*Second*, Order No. 40, and the Court's subsequent rulings, eliminated any remaining doubt concerning Realtek's infringement of the '486 Patent.  As discussed above, Order No. 40 precluded all of DivX's timely theories regarding the '486 Patent's "deciphering" limitation (*i.e.*, its ███████████████████████ theories) and further precluded DivX from changing its infringement theory and required DivX to drop all theories that had become moot.  *See supra* p. 21.  Likewise,

---

[10] DivX did elicit testimony from ████████████████████████████████████████████ ███████████████████████████████████████████████ DivX never did, or could, tie those activities to infringement.

in granting Respondents' Motion in Limine No. 2, the ALJ precluded DivX's new ▬▬▬▬▬ n theory as untimely and explained that it was only disclosed "on April 8, 2021, long after the February 8, 2021 contention deadline, and after the close of the extended fact discovery of March 26, 2021." *See* TCL Motion To Strike Objectionable Demonstratives of Dr. Glenn Reinman and Preclude Related Testimony at 2-3.  And, on DivX's motion, the ALJ refused to reconsider its ruling on Respondents' Motion in Limine No. 2.  *See* July 1, 2021 Hearing Tr. 29:23–25.

In other words, DivX knew that Realtek did not infringe the Asserted Patents under any colorable theory—which was further confirmed by the Court's rulings throughout the Investigation—and yet continued to pursue its claims against Realtek until the eve of trial, when it dismissed Realtek for no consideration whatsoever.  *See supra* pp. 2, 4.  Thus, at a minimum, DivX should be required to pay sanctions consisting of the fees and costs Realtek incurred in defending against DivX's claims from April 6, 2021 to dismissal.

**2.  DivX's Case and Settlement Strategy Was Designed to** ▬▬▬▬▬▬

DivX's conduct demonstrates that it had ulterior motives in pursuing Realtek.  DivX's claims were never about the prevention of unfair competition and the protection of domestic industry as provided for by Section 337.  To the contrary, DivX's actions show a scheme to leverage the costs of defending a Section 337 Investigation to ▬▬▬▬▬▬ ▬▬▬▬▬ without regard for the merits of its claims of infringement against particular ▬▬▬▬ participants.

DivX's improper purposes are revealed by its settlement behavior and its last-minute dismissal.  *See supra* pp. 2, 4, 6–7.  At no point during this Investigation could DivX point to the claimed devices, applications, and functionality within Realtek's products.  *See supra* pp. 2–5. DivX and its counsel sought to extract ▬▬▬▬▬▬▬▬ ,

██████████████████████████████████████ by improperly wielding Section 337 as a cudgel.

For example, DivX's December 2020 settlement discussions with Realtek ████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████ That is exactly how this Investigation played out.  DivX tried to ████████████████████████████████████████, and later obtained what it was actually after from █████████████████████.  Afterward, DivX voluntarily dismissed all remaining claims against Realtek, on the eve of the hearing, choosing to pursue the last remaining TV manufacturer, TCL.

### 3. Tellingly, DivX Requested a Stay of the Corresponding District Court Case After Realtek Sent DivX a Rule 11 Notice in that Case

DivX's conduct in the corresponding district court proceeding is also telling.  Although DivX had voluntarily chosen to pursue its infringement claims against Realtek in parallel proceedings, it moved on its own accord to stay the district court litigation immediately after receiving notice of the Rule 11 motion Realtek intended to file in that case.  *See supra* p. 5.  The timing of DivX's request—which Realtek, who was entitled to such a stay as a matter of right, opposed—was more than coincidental:  DivX wanted to avoid adjudication of Realtek's Rule 11 motion and the risk of having the baselessness of its claims exposed.  *See supra* p. 5.

### D. DivX's Strategy of Pursuing Frivolous Claims To Obtain Third-Party Discovery, and Then Dismissing on the Eve of the Evidentiary Hearing, Standing Alone, Violates 19 C.F.R. § 210.4 and Warrants Sanctions

Commission Rule 210.4(c)(1) prohibits bringing claims for an improper purpose.  Here, DivX brought frivolous claims against Realtek not only ███████████████████████ ██████ but also to avoid the challenges of third-party discovery.  The ITC does not have subpoena power over a foreign non-party when that party has no minimum contact or significant presence in the United States.  *See Certain Personal Computers and Digital Display Devices*, Inv. No. 337-TA-606, Order No. 5 (July 12, 2007).  Realtek, a Taiwanese corporation, does not have sufficient contacts with the United States to bring it within the ITC's subpoena power.  In an end-run around this rule, DivX chose to file the lawsuit and the ITC action against Realtek to seek discovery into Realtek's products incorporated into other Respondents' televisions.

DivX's actions leave no doubt that it pursued its claims for an improper purpose.  Once Realtek made clear it would not be extorted by the threat of litigation costs, DivX offered to ███ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███   When Realtek refused, DivX forced Realtek to incur millions of dollars in fees to defend itself.  DivX's plan was laid bare when it withdrew its complaint against Realtek unilaterally, on the eve of the ████entiary hearing, even after Realtek refused to agree that it would not use dismissal as a basis for sanctions.  *Id.*  DivX's actions confirm that DivX had no real intention of pursuing Realtek as a Respondent.  It was content to either try to ████████████, or if that was not possible, simply to obtain discovery that otherwise would be prohibited by Commission rules and the U.S. Constitution.  DivX's actions needlessly increased the costs of litigation for Realtek, in violation of 19 C.F.R. § 210.4(c).

DivX's actions are deeply concerning.  The ITC is a special forum that exists within a treaty-based international framework.  Complainants may not abuse that process to circumvent the

- 33 -

delicate balance that exists between countries. That balance includes protections against extraterritorial discovery. Yet DivX shredded those rules in service of its own interests, not caring about the repercussions. DivX's claims against Realtek were frivolous, but DivX's decision to pursue claims for an improper purpose is, independently, sanctionable misconduct. *See* 19 C.F.R. § 210.4(c) (providing for sanctions if a complaint is presented for lacks evidentiary support *or* an improper purpose); *Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 313 (E.D. Va. 2004) ("[U]nder Rule 11 a claim's lack of factual or legal basis and plaintiffs' improper purpose in filing a claim are independent and alternative bases for awarding sanctions").

Sanctions, in the form of compensation for attorneys' fees unnecessarily spent, are necessary to deter this conduct in the future and to educate the ITC bar that complainants may not add discovery targets as respondents to circumvent the Commission's territorial limits.

## IV.    CONCLUSION

For the reasons set forth above, Realtek respectfully requests that the ALJ award Realtek its costs and fees.

Dated: October 4, 2021

Respectfully submitted,

K&L GATES LLP

*/s/ Theodore J. Angelis*

Theodore J. Angelis
Jay C. Chiu
Nicholas F. Lenning
K&L GATES LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Tel: 206.623.7580
Fax: 206.623.7022
theo.angelis@klgates.com
jay.chiu@klgates.com
nicholas.lenning@klgates.com

Jason A. Engel
Katherine Allor
Nelson M. Hua
K&L GATES LLP
70 W. Madison St., Suite 3100
Chicago, IL 60602
Tel: 312.372.1121
Fax: 312.827.8000
jason.engel@klgates.com
katy.allor@klgates.com
nelson.hua@klgates.com

Linda C. Odom
K&L GATES LLP
1601 K Street, N.W.
Washington, DC 20006
Tel: 202.778.9000
Fax: 202.778.9100
linda.odom@klgates.com

*Counsel for Realtek Semiconductor
Corporation*

CERTIFICATE OF SERVICE

I hereby certify that copies of the forgoing, MEMORANDUM IN SUPPORT OF
RESPONDENT REALTEK SEMICONDUCTOR CORPORATION'S MOTION FOR
SANCTIONS, has been served upon the following parties as indicated below on this 4th day of
October, 2021.

| | |
|---|---|
| The Honorable Lisa R. Barton<br>Secretary to the Commission<br>U.S. International Trade Commission<br>500 E. Street, S.W.<br>Washington, D.C. 20436 | [X] EDIS Electronic Filing<br>[ ] Via Hand Delivery<br>[ ] Via Overnight Carrier<br>[ ] Via Electronic Mail<br>[ ] Via U.S. First Class Mail |
| The Honorable MaryJoan McNamara<br>Administrative Law Judge<br>**U.S. International Trade Commission**<br>500 E. Street, S.W., Room 317<br>Washington, DC 20436<br>McNamara337@usitc.gov | [ ] Via Hand Delivery<br>[ ] Via Overnight Carrier<br>[X] Via Electronic Mail<br>[ ] Via File Transfer Protocol (FTP)<br>[ ] Via U.S. First Class Mail |
| Adam S. Rizk<br>**MINTZ LEVIN COHEN FERRIS GLOVSKY AND POPEO PC**<br>One Financial Center<br>Boston, MA 02111<br><br>Email: DivX-ITC@mintz.com<br><br>Counsel for Complainant: DivX, LLC | [ ] Via Hand Delivery<br>[ ] Via Overnight Carrier<br>[X] Via Electronic Mail<br>[ ] Via File Transfer Protocol (FTP)<br>[ ] Via U.S. First Class Mail |
| Lyle B. Vander Schaaf<br>**BRINKS GILSON & LIONE**<br>1775 Pennsylvania Avenue, NW<br>Suite 900<br>Washington, DC 20006<br>Tel: (202) 296-8700<br>Fax: (202) 296-8701<br><br>Email: TCL-1222@brinksgilson.com<br>Email: TCL-1222@crowell.com<br>Email: jeremy.peterson@pvuslaw.com | [ ] Via Hand Delivery<br>[ ] Via Overnight Carrier<br>[X] Via Electronic Mail<br>[ ] Via File Transfer Protocol (FTP)<br>[ ] Via U.S. First Class Mail |

| | |
|---|---|
| Counsel for Respondents: TCL Corporation, TCL Technology Group Corporation, TCL Electronics Holdings Limited, TTE Technology, Inc., Shenzhen TCL New Technologies Co. Ltd., TCL King Electrical Appliances (Huizhou) Co. Ltd., TCL MOKA International Limited, and TCL Smart Device (Vietnam) Co., Ltd. | |

/s/ *Michael D. France*
Michael D. France

# EXHIBIT C

**Angelis, Theo**

---

| | |
|---|---|
| **From:** | Rizk, Adam <ARizk@mintz.com> |
| **Sent:** | Thursday, September 29, 2022 3:34 AM |
| **To:** | Angelis, Theo |
| **Cc:** | Renaud, Michael; Lonano, Carly; Caskey, Kristin |
| **Subject:** | RE: DivX District Court Case |

**External Sender:**

**HIGHLY CONFIDENTIAL AND SUBJECT TO FRE 408**

Dear Theo,

Thank you for the call.

█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████

Separately, we are working on a status update to file with the district court, and will send your way shortly.

Thanks,
Adam

---

**From:** Angelis, Theo <theo.angelis@klgates.com>
**Sent:** Tuesday, September 13, 2022 7:38 PM
**To:** Rizk, Adam <ARizk@mintz.com>
**Cc:** Renaud, Michael <MTRenaud@mintz.com>; Lonano, Carly <CLonano@mintz.com>; Caskey, Kristin <KMCaskey@mintz.com>
**Subject:** RE: DivX District Court Case

Adam:

Thank you for your email. I am available tomorrow (September 14) at 1:00 p.m. PT / 4:00 p.m. ET.

Best regards,
Theo

-----Original Message-----
From: Rizk, Adam <ARizk@mintz.com>
Sent: Tuesday, September 13, 2022 1:15 PM
To: Angelis, Theo <theo.angelis@klgates.com>
Cc: Renaud, Michael <MTRenaud@mintz.com>; Lonano, Carly <CLonano@mintz.com>; Caskey, Kristin

<KMCaskey@mintz.com>
Subject: DivX District Court Case


Theo:

Given that the Commission has now affirmed ALJ McNamara's denial of Realtek's sanctions motion, the parties should meet and confer to discuss next steps in the district court proceeding. Please let us know your availability at 4 pm eastern time tomorrow September 14.

Regards
Adam


Adam Rizk
Member

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center, Boston, MA 02111
+1.617.348.4709<tel:+1.617.348.4709>
ARizk@mintz.com<mailto:ARizk@mintz.com> | Mintz.com<https://www.mintz.com/>


_____


STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, or the person responsible for delivering the email to the intended recipient, be advised you have received this message in error and that any use, dissemination, forwarding, printing, or copying is strictly prohibited. Please notify the Mintz, Levin, Cohn, Ferris, Glovsky and Popeo sender immediately, and destroy all copies of this message and any attachments.


This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at
Theo.Angelis@klgates.com<mailto:Theo.Angelis@klgates.com>.-5

_____

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments
to this message are intended for the exclusive use of the addressee(s)
and may contain confidential or privileged information. If you are not

the intended recipient, or the person responsible for delivering the
email to the intended recipient, be advised you have received this
message in error and that any use, dissemination, forwarding, printing,
or copying is strictly prohibited. Please notify the Mintz, Levin, Cohn,
Ferris, Glovsky and Popeo sender immediately, and destroy all copies
of this message and any attachments.

# EXHIBIT D

## Angelis, Theo

| | |
|---|---|
| **From:** | Rizk, Adam <ARizk@mintz.com> |
| **Sent:** | Friday, September 30, 2022 2:10 AM |
| **To:** | Angelis, Theo |
| **Cc:** | Renaud, Michael; Lonano, Carly; Caskey, Kristin |
| **Subject:** | RE: DivX District Court Case |

**External Sender:**

Dear Theo,

It is disappointing that Realtek is unwilling to ███████████████████████████
████████████████████

Will you please confirm that Realtek agrees to reuse of the Commission record in the district court proceeding and that the parties will also agree to cross-use of any discovery responses, document productions, reports, transcripts, etc.?

Finally, Realtek's "grave concerns about the viability of DivX's claims" cannot be squared with the fact that Realtek lost its motion for summary judgment of non-infringement in the ITC proceeding. Given your statement to Mr. Renaud that you no longer believed that Realtek had a good faith basis to allege that DivX did not have a good faith basis to proceed with its infringement claims in view of the ALJ's rulings, K&L Gates should consider stepping down in the event that your client intends on continuing to pursue its unsupportable allegations that DivX's claims "are not well grounded in fact or law, and believes they should not be pursued."

Kind regards,
Adam

**From:** Angelis, Theo <theo.angelis@klgates.com>
**Sent:** Friday, September 30, 2022 1:17 AM
**To:** Rizk, Adam <ARizk@mintz.com>
**Cc:** Renaud, Michael <MTRenaud@mintz.com>; Lonano, Carly <CLonano@mintz.com>; Caskey, Kristin <KMCaskey@mintz.com>
**Subject:** RE: DivX District Court Case

Dear Adam:

Thank you for your email. Regarding the issues you raise below, Realtek does insist upon dismissal with prejudice. Litigation between DivX and Realtek regarding the asserted patents has been ongoing for several years. Dismissal without prejudice is therefore not appropriate. One thing for DivX to consider, as it evaluates a dismissal with prejudice, is that claim preclusion would not apply to future claims against Realtek arising from conduct that occurs after dismissal with prejudice of the pending action. *Brain Life, LLC v. Elekta, Inc.*, 746 F.3d 1045, 1054 (Fed. Cir. 2014). Also, as discussed during our last call, and as we have discussed on many occasions during the pendency of this litigation, Realtek has grave concerns about the viability of DivX's claims, believes they are not well grounded in fact or law, and believes they should not be pursued.

Regarding your second question, Realtek does not have sufficient information regarding its indirect customers' sales, or the universe of DivX's licensees, to provide the type of information discussed as being potentially useful to DivX in determining whether to dismiss with prejudice.

We look forward to reviewing the status update.



**Theodore J. ("Theo") Angelis**
Pronouns:  He/Him
K&L Gates LLP
925 4th Avenue, Suite 2900
Seattle, WA 98104
Phone: (206) 370-8101 (direct)
Fax: (206) 370-6006
theo.angelis@klgates.com
www.klgates.com

---

**From:** Rizk, Adam <ARizk@mintz.com>
**Sent:** Thursday, September 29, 2022 3:34 AM
**To:** Angelis, Theo <theo.angelis@klgates.com>
**Cc:** Renaud, Michael <MTRenaud@mintz.com>; Lonano, Carly <CLonano@mintz.com>; Caskey, Kristin <KMCaskey@mintz.com>
**Subject:** RE: DivX District Court Case

**<u>HIGHLY CONFIDENTIAL AND SUBJECT TO FRE 408</u>**

Dear Theo,

Thank you for the call.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

Separately, we are working on a status update  to file with the district court, and will send your way shortly.

Thanks,
Adam

---

**From:** Angelis, Theo <theo.angelis@klgates.com>
**Sent:** Tuesday, September 13, 2022 7:38 PM

2

**To:** Rizk, Adam <ARizk@mintz.com>
**Cc:** Renaud, Michael <MTRenaud@mintz.com>; Lonano, Carly <CLonano@mintz.com>; Caskey, Kristin <KMCaskey@mintz.com>
**Subject:** RE: DivX District Court Case

Adam:

Thank you for your email. I am available tomorrow (September 14) at 1:00 p.m. PT / 4:00 p.m. ET.

Best regards,
Theo

-----Original Message-----
From: Rizk, Adam <ARizk@mintz.com>
Sent: Tuesday, September 13, 2022 1:15 PM
To: Angelis, Theo <theo.angelis@klgates.com>
Cc: Renaud, Michael <MTRenaud@mintz.com>; Lonano, Carly <CLonano@mintz.com>; Caskey, Kristin <KMCaskey@mintz.com>
Subject: DivX District Court Case

Theo:

Given that the Commission has now affirmed ALJ McNamara's denial of Realtek's sanctions motion, the parties should meet and confer to discuss next steps in the district court proceeding. Please let us know your availability at 4 pm eastern time tomorrow September 14.

Regards
Adam

Adam Rizk
Member

Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center, Boston, MA 02111
+1.617.348.4709<tel:+1.617.348.4709>
ARizk@mintz.com<mailto:ARizk@mintz.com> | Mintz.com<https://www.mintz.com/>

_____

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended for the

exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, or the person responsible for delivering the email to the intended recipient, be advised you have received this message in error and that any use, dissemination, forwarding, printing, or copying is strictly prohibited. Please notify the Mintz, Levin, Cohn, Ferris, Glovsky and Popeo sender immediately, and destroy all copies of this message and any attachments.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Theo.Angelis@klgates.com<mailto:Theo.Angelis@klgates.com>.-5

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, or the person responsible for delivering the email to the intended recipient, be advised you have received this message in error and that any use, dissemination, forwarding, printing, or copying is strictly prohibited. Please notify the Mintz, Levin, Cohn, Ferris, Glovsky and Popeo sender immediately, and destroy all copies of this message and any attachments.

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only.  If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Theo.Angelis@klgates.com.

STATEMENT OF CONFIDENTIALITY:
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information. If you are not the intended recipient, or the person responsible for delivering the email to the intended recipient, be advised you have received this message in error and that any use, dissemination, forwarding, printing, or copying is strictly prohibited. Please notify the Mintz, Levin, Cohn, Ferris, Glovsky and Popeo sender immediately, and destroy all copies of this message and any attachments.